

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| SAIO J. BARZEE (ICN No. 11001866), PRO SE, PLAINTIFF, |
| --- |
| -AGAINST- |
| TOBIAS SHELLEY, Et AL., DEFENDANT(S)     "SEE ATTACHED" |

Civil Complaint Action

CIVIL COMPLAINT

(PRO SE PLAINTIFF-PRISONER)

JURY TRIAL DEMANDED

9:24-cv-1360
M+D/CFH

I.                                LEGAL BASIS FOR CLAIM

This is a civil action seeking relief and punitive damages to defend and protect the rights guaranteed by the constitution of the United States of America.

This action is brought pursuant to 42 U.S.C. section §1983, ensuing from the violation of Plaintiff's Federal Constitutional rights.

The Court has jurisdiction over the action pursuant to 28 U.S.C. §§1331, 1343 (3) and (4), and 2201. This Cause of Action arose in the Northern District of New York. Therefore, venue is proper under 28 U.S.C. section 1391 (b).

This civil action is seeking to sue all of the herein named Defendants in their individual capacities under color of state laws.

II.                                PLAINTIFF"S INFORMATION

Saio J. Barzee, Incarcerated Individual (ICN No. 11001866) ONONDAGA COUNTY JUSTICE CENTER, 555 South State Street, Syracuse, New York 13202-2104.

III.                                PLAINTIFF-PRISONER STATUS

Incarcerated Individual: Waiting pre-trial & trial proceedings, and is a sentenced Parole violator.

IV.                                DEFENDANT(S)' INFORMATION

DEFENDANT #1: (Sheriff) Tobias Shelley, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity & Official Capacity (Injunction Order)

DEFENDANT #2: (Deputy) Connor (badge No. 4197), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

CONTINUATION OF CIVIL COMPLAINT CAPTION:    "SEE ATTACHED"

---

Onondaga County Justice Center Sheriff Tobias Shelley

Onondaga County Justice Center Deputy Connor, Badge No. 4197

Onondaga County Justice Center Deputy Sergeant Marc Sarno, Badge No. 2889

Onondaga County Justice Center Deputy Tineo, Badge No 2940

Onondaga County Justice Center Deputy Alton Apples, Badge No. 2970

Onondaga County Justice Center Deputy Fodaro, Badge No. 4051

Onondaga County Justice Center Deputy William Demko, Badge No. 2573

Onondaga County Justice Center Deputy Sergeant Stone, Badge No. 2965

Onondaga County Justice Center Deputy Sergeant Casey McPartland, Badge No. 2922

Onondaga County Justice Center Deputy Sergeant P. Lorenzo, Badge No. 5262

Onondaga County Justice Center Deputy Gerard Wagner

Onondaga County Justice Center Deputy Sergeant Dustin Saddock, Badge No. 2938

Onondaga County Justice Center Deputy Lieutenant J. Carsten, Badge No. 2836

Onondaga County Justice Center Deputy Koehler

Onondaga County Justice Center Deputy McLaughlin

Onondaga County Justice Center Deputy Cruz

"UNKNOWN NAME" OF THE PRIVATE FOOD SERVICE COMPANY

Onondaga County Justice Center Deputy Sergeant Justin Leubner

Onondaga County Justice Center Deputy Hujdur

Onondaga County Justice Center Deputy Kolakowski

Onondaga County Justice Center Deputy Chief John S. Drapikowski

Onondaga County Justice Center Deputy Ethan Perry

Onondaga County Justice Center Deputy Lieutenant Woods

Onondaga County Justice Center Deputy Lieutenant David Squairs

---

i

CONTINUATION OF CIVIL COMPLAINT CAPTION: PART 2   "SEE ATTACHED"

---

Onondaga County Justice Center Deputy M. Cullen

Onondaga County Justice Center Deputy Daniel Gratien

Onondaga County Justice Center Deputy "JOHN DOE"

Onondaga County Justice Center Deputy Lieutenant "JOHN DOE"

Onondaga County Justice Center Deputy (Chief) Nathan Hawker

Onondaga County Justice Center Deputy Devin Reschke (badge No. 2879)

Onondaga County Justice Center Detective Alexander Hebert (badge No 1891)

Onondaga County Justice Center Captain Jammie Blumer

Onondaga County Justice Center Detective R. Dobrowolski

Onondaga County Justice Center Deputy Stratton

Onondaga County Justice Center Deputy Shaquille Herbert (badge No. 3019)

Onondaga County Assistant District Attorney Patrick Russell Blood (Esq.)

Onondaga County Chief Assistant District Attorney Robert Moran (Esq.)

Onondaga County Court Stenographer Caroline H. McGrath

Onondaga County Detective Sergeant Bergman (Badge No. 1509)

Onondaga County Justice Center Deputy J. Lantry

Onondaga County Justice Center Deputy (Sergeant) P. Picciotto (badge No.2744)

Onondaga County Justice Center Deputy Burns

Onondaga County Justice Center Deputy Conner Hanauer

Onondaga County Justice Center Deputy Windey

Onondaga County Justice Center Deputy Randall Sanderson (badge No.4144)

Onondaga County Court Judge Theodore Limpert

Onondaga County Sheriff's Office DSBA UNION

Commission of Correction (Commissioner) YOLANDA CANTY

Onondaga County Justice Center Deputy Matthew Murphy (badge No, 2846)

---

DEFENDANT #3: (Deputy) Sergeant Marc Sarno (badge No. 2889), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #4: (Deputy) Tineo (badge No.2940), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #5: (Deputy) Alton Apples (badge No. 2970), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #6: (Deputy) Fodaro (badge No. 4051), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #7: (Deputy) William Demko (badge No. 2573), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #8: (Deputy) Sergeant Stone (badge No. 2965), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #9: (Deputy) Sergeant Casey McPartland (badge No. 2922), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #10: (Deputy) Sergeant P. Lorenzo (badge No. 2562), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #11: (Deputy) Gerard Wagner, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #12: (Deputy) Dustin Saddock (badge No. 2938), Onondaga County Justice Center, 555 South State Street, Syracuse, New York 13202-2104; SUED IN: Individual Capacity

DEFENDANT #13: (Deputy) Lieutenant J. Carsten (badge No. 2836), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #14: (Deputy) Kevin Koehler, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #15: (Deputy) McLaughlin, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #16: (Deputy) Cruz, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #17: "UNKNOWN NAME" OF **PRIVATE FOOD SERVICE COMPANY** that is contracted by the ONONDAGA COUNTY SHERIFF"S OFFICE to provides the regular meals for incarcerated individuals being housed within the Onondaga County Justice Center (Not Commissary), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Official Capacity

DEFENDANT #18: (Deputy) Sergeant Justin Leubner, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #19: (Deputy) V. Hujdur, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #20: (Deputy) Kolakowski, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #21: (Deputy) Chief Drapikowski, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #22: (Deputy) Ethan Perry (the Son of Eugene Perry Junior), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #23: (Deputy) Lieutenant Woods, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #24: (Deputy) Lieutenant David Squairs, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #25: (Deputy) M. Cullen, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #26: (Deputy) Daniel Gratien, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #27: (Deputy) "JOHN DOE", ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #28: (Deputy) Lieutenant "JOHN DOE", ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #29: (Chief) Nathan Hawker, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #30: (Deputy) Devin Reschke, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #31: (Detective) Alexander Hebert, Onondaga County Sheriff's Office, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #32: (Captain) Jammie Blumer, Onondaga County Sheriff's Office (Internal Affairs), 407 South State Street, Syracuse, New York 13202-2104, Phone Number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #33: (Detective) R. Dobrowolski, Onondaga County Sheriff's Office (Internal Affairs), 407 South State Street, Syracuse, New York 13202-2104, Phone Number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #34: (Deputy) Stratton, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #35: (Deputy) Shaquille Herbert (badge No. 3019), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #36: (Assistant District Attorney) Patrick Russell Blood (Esq.), Onondaga County District Attorney's Office, 505 South State Street, 4th Floor, Syracuse, New York 1302, Phone number (315) 435-2470; SUED IN: individual Capacity

DEFENDANT #37: (Chief Assistant District Attorney) Robert Moran (Esq.), Onondaga County District Attorney's Office, 505 South State Street, 4th Floor, Syracuse, New York 1302, Phone number (315) 435-2470; SUED IN: individual Capacity

DEFENDANT #38: (Onondaga County Court Stenographer) Caroline H. McGrath, Onondaga County Court stenographer, 505 South State Street, 4th Floor, Syracuse, New York 1302, Phone number (315) 435-2470; SUED IN: individual Capacity

DEFENDANT #39: (Detective) Sergeant Bergman, Onondaga County Sheriff's Office, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #40: (Deputy) J. Lantry, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #41: (Deputy) Sergeant "P. Picciotto" (Badge No. 2744), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #42: (Deputy) Burns, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #43: (Deputy) Conner Hanauer, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #44: (Deputy) Windey, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #45: (Deputy) Randall Sanderson, ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

DEFENDANT #46: (Onondaga County Court Judge) Theodore Limpert, Onondaga County Court Judge, 505 South State Street, Syracuse, New York 13202, phone number (315) 671-1050 (Court Chambers); SUED IN: Individual Capacity

DEFENDANT #47: DSBA UNION, Onondaga County Justice Center Deputies Union, 555 South State Street, Syracuse, New York 13202-2104; SUED IN: OFFICIAL Capacity

DEFENDANT #48: (Commissioner) Yolanda Canty, Commission of Correction, 80 South Swan Street, 12th Floor, Albany, New York 12210; Phone Number 518-485-2346: SUED IN: Individual Capacity

DEFENDANT #49: (Deputy) Matthew Murphy (Badge No. 2846), ONONDAGA COUNTY SHERIFF'S OFFICE, 407 South State Street, Syracuse, New York 13202-2104, Phone number (315) 435-3044; SUED IN: Individual Capacity

V.                          STATEMENT OF CLAIM

PLACE OF OCCURANCE: Onondaga County Justice Center, 555 South State Street, Syracuse, New York 13202-2104

DATES OF OCCURANCE: as stated herein

PREVIOUS LAWSUITS BY PLAINTIFF

Plaintiff asserts that he has filed a previous lawsuit which is still pending within the Southern District of New York under Docket number 7:23-Cv-2328 (PMH) and has filed a previous lawsuit within this Northern District Court before commencing with this Civil Action, see Barzee v. Wilson (case No. 5:24-CV-1237) and has also filed other Civil Action matters, See Barzee v. Yehl and Barzee v. Tyler. Plaintiff has file no other lawsuit (in his name) dealing with the same facts involved in this action or otherwise relating to his punishment except as those issues declared to by Plaintiff is his request to represent Nyquest Allen as his legal representive within this Northern District Court which the Court denied, see Case number (9:24-CV-00332 (LEK/TWD).

FACTS

Plaintiff, Saio Barzee (ICN No. 11001866), commences this Civil Action proceeding as Pro Se and thereafter certifies to the best of his knowledge that, upon information and belief, there are genuine issues to be tried with regard to the following material facts:

BACKGROUND

1.    On Wednesday the 15th day of November 2023 the Plaintiff was wrongfully arrested in the Town of Salina (Mattydale, New York) based off of an allegation that an act was committed which was in violation of Penal law sections §265.02(1) Criminal Possession of a Weapon in the Third Degree, §265.01(B1) Criminal Possession of a firearm, §265.01(1) Criminal possession of a Weapon in the Fourth Degree, and section §120.14(1) Menacing in the second degree.

2.    At some time during the night of Wednesday the 15th day of November 2023 the Plaintiff was thereafter transferred to the Onondaga County Justice Center ( herein as "OCJC"), which is a local Correctional Facility operated under the control and supervision of the Onondaga County Sheriff.

3.    Plaintiff was asked to sign for an Onondaga County Justice Center Handbook prior to actually receiving the Handbook and after the completion of the fingerprinting, and identification stages which are the normal booking procedures required of every detainees to go through upon their initial entry into the "OCJC" facility.

4.    However, the Plaintiff was never afforded an opportunity to thoroughly inspect the Handbook as a result of immediately thereafter being instructed to pack up his belongings inorder to be escorted to a housing unit designated as the orientation housing unit on Pod A of the Second Floor (abbreviated as "Pod 2A").

5.    From the 15th day of November 2023 to the 21st day of November 2023, the Plaintiff was never actually provided with any form of "informational videos and instruction session(s)" while being on reception in the orientation housing unit (which upon information and belief is also known as "OCCF Unit 8") within the "OCJC" Facility as

adequately required pursuant to the Justice Center Handbook designated for Incarcerated individuals under the title of "Reception/Orientation Housing".

6.    At some point Plaintiff asserts, upon information and belief, that he realized that "OCJC" staff members (commonly known as "Deputies") provided him with a handbook that was wrongfully missing pages; and thus Plaintiff was never sufficiently taught of how to operate the kios and the tablet, nor was Plaintiff taught about the rules and procedures which govern the said facility nor of what to expect during the regularly scheduled routines of the facility's daily activities and this is also including what to expect from staff members at the said "OCJC" Facility.

7.    Thereafter, Plaintiff was wrongfully deprived of liberty within the context of a prison environment, as well as lost constitutional guaranteed privileges. Plaintiff asserts that he was wrongfully subjected to emotional and psychological pain as a result of Defendant Tobias Shelley wrongfully failing to properly supervise and train his employees on how to uphold the "OCJC" facility's established policies and customs.

8.    Plaintiff asserts that he had gotten into a verbal disagreement with Defendant (Deputy) Conner (badge No. 4197) on the 21st day of November 2023 which thereafter wrongfully resulted in the Plaintiff being unnecessarily confined in the Special Housing Unit as a form of retaliatory punishment. Plaintiff asserts that initially he was not being of any disturbance to anyone, nor was Plaintiff making any noise and was rather instead just simply standing by his cell door while watching all of the commotion that was transpiring by the mess-hall designated region of his housing Pod, and this being while the Plaintiff was safely secured (and or locked) within his own cell. Plaintiff was written a misbehavior report which exaggerated events in order to wrongfully justify confining the Plaintiff under administration segregation sanctions in the Special Housing Unit of the "OCJC" facility by fabricating that the plaintiff was kicking his cell door and by stating that the Plaintiff unprovokingly started verbally yell out his cell door.

9.    Next, The Plaintiff was wrongfully threatened to be killed by Defendant Marc Sarno (who **claimed to know "what's going on"** and that he would **kill** the Plaintiff and the Plaintiff's **"sister"**). Plaintiff thereafter asserts that he was unnecessarily and wantonly assaulted by the SERT Deputies, where Deputies attempted to further break Plaintiff's already broken right hand while the Plaintiff was laying on top of the mattress with handcuffs keeping Plaintiff's hands mechanically restrained behind his back, and while being surrounded by Defendants Fodaro, William Demko, and Dustin Saddock along with numerous of other deputies within the small confined area in 29 cell of the 5B Floor of the Special Housing Unit (SHU Unit No.#3). Plaintiff adequately asserts that the defendants applied mechanical restraints to keep the Plaintiff's hands cuffed behind his back and that an Emergency Response Belt (ERB) was also applied around the Plaintiff chest area during the entire escorting procedure from 2A to SHU 29 Cell. Plaintiff also asserts that the wrongfully actions committed by the defendants was captured on the video footage recording of the hand held portable camera equipped by the designated EQV as required by facility rules and regulation during every Sheriff's Emergency Response Team movement (S.E.R.T. Movement).

10.    Plaintiff further asserts that the Defendants whom participated in escorting the Plaintiff to 29 Cell of the Special Housing Unit (SHU-3) must be held liable for both their neglectful act of being deliberate indifferent to Plaintiff's pain and suffering because of the fact that there was plenty of time available for the said defendants to stop the assaulter but refused to do so and because of the fact that the said defendants thereafter also failed to report of the wantonly unnecessary infliction of pain upon the Plaintiff as required by law.

11.    Plaintiff asserts that his fractured 4th and 5th metacarpal and fractured MCF Shaft bone that connects his right hand bones to his arm within the wrist region never healed properly as a result of the defendants' egregious act of attempting to break Plaintiff's right hand wrist.

12.    After the wrongfully use of excessive and unnecessary force, Plaintiff also asserts that he had personally told Defendant Dustin Saddock that he wasn't even scared of them even while they were wrongfully using excessive and unnecessary force in attempting to break Plaintiff's already damaged right hand, before then asking Defendant Dustin Saddock "I'm tough right?" Plaintiff asserts that defendant Dustin Saddock then informed the Plaintiff that it was because the Plaintiff was "too stupid to be scared".

13.    Plaintiff asserts that his lack of knowledge of the facility's rules was evidentially presented within the Incident Report filed against the Plaintiff by Defendant Conner (badge no. 4197) on the 21st day of November 2023, which alleged that:

- "During this emergency situation in Pod 2A, A/M Barzee **was given numerous order to stop standing in his doorway** during SERT operation, as was the rest of the Pod. The rest of the Pod complied, however A/M Barzee **continued shouting that it was not a rule that he was not allowed to be standing in his door**, and continued to shout, and refused multiple orders to stop being disrespectful and confrontational towards sworn staff."

- "—CONTINUED—'Stop telling people it's a rule, it ain't a rule!' A/M **Barzee began to kick his door** as well during this process. Inmate handbook section IX Sub Section A 11 States 'Anytime the Sheriff's S.E.R.t. team enters your pod you are to remain on your bunk, unless instructed to do otherwise.' Due to A/M/ Barzee's confrontational actions towards sworn staff, **striking his cell door**, and disregard for rules of the facility, he will also be moved to 5B. Sgt. Sarno and medical notified of both moves."

14.    Meanwhile, Defendant (Sergeant) Marc Sarno filed an Inmate Misbehavior Report/ Hearing Notice that stated:

- "You refused multiple orders from sworn staff at both the Deputy and Supervisory level to 'get off your door' during an emergency situation with S.E.R.T. on the Pod. You became argumentative and disrespectful when the orders were issued. During

your unprovoked and harassing tirade you threatened to 'see' sworn staff 'on the town' and bragged about carrying guns bigger than 'yours.' Your actions caused a disruption facility operations and caused staff to become alarmed for no legitimate purpose."

15.    Plaintiff assert, upon information and belief, that deputies start wrongfully spreading falsified reports about the Plaintiff's criminal case from around the 25th day of November 2023 to the 27th day of November 2023. Plaintiff asserts that the Deputies working within the Onondaga County Justice Center started to also showing other incarcerated individuals slips ("Incarcerated Individual Referral Forms") that Incarcerated Individual Nyequest Allen was submitting to the administration staff. Plaintiff asserts that some of the other incarcerated individuals started showing him the slips and implicating that the Plaintiff should not deal with Nyequest Allen because the said Incarcerated Individual was a "snitch". Plaintiff stated that he had informed the other incarcerated individuals (specifically, Incarcerated Individual Hemingway, Ames Malo and a Jewish Incarcerated Individual (that did not like "Allen" and that was being housed in 12 cell)) that he does not trust the Deputies (especially Defendant Conner whom was also working on the day the slips were shown to the Plaintiff and whom the other Incarcerated Individuals stated gave them the slips as evidence) and that he does not want anything to do with that situation.

16.    Plaintiff asserts, upon information and belief, that he had gotten into a verbal disagreement with Nyequest Allen on the 27th day of November 2023 because of the fact that the said Incarcerated Individual had attempted to ("wrongfully") accuse the Plaintiff for being the individual that was forging the letters by using the said Inmates name. Plaintiff asserts that he had first attempted to defuse the situation by telling "Allen" to leave him out of the situation before he then simply told "Allen" not to be mad at him because he was a "snitch" that was "ratting" on other inmates. Plaintiff further stated that "Allen" sounded stupid because the Plaintiff didn't even know "Allen" prior to this incident and thus could not have possibly known the said Incarcerated Individual's government name. Plaintiff asserts that other Incarcerated Individuals then started arguing with "Allen" for trying to put the blame on the Plaintiff when they already knew that it was actually "Allen" who was doing it and that the Deputies had been showing all of his slips to the incarcerated individuals being housed within the General Housing Unit of the Facility.

17.    Plaintiff asserts that he had submitted an "Incarcerated Individual Referral Form" on Monday November 27th 2023 which stated:

    •    "I am requesting that the camera and audio footage on Pod 2A, on November 21st 2023 from approximately 6:00 pm to 8:00 pm be preserved for my usage at my disciplinary hearing procedure."

18.    Plaintiff asserts that his "Incarcerated Individual Referral Form" was indicated as of being submitted to "Dep Reschke" (Defendant Devin Reschke) but that no further

investigation and or assistance was provided in connection to his request for the said relevant material.

19.    Rather instead, Plaintiff asserts that the "OCJC" Deputies then conducted a random unit search of the entire 5B General Housing area (also known as a "shakedown") later on that same day during the Afternoon shift (C Watch Shift) of Monday November 27th 2023, and that defendant Alton Apples maliciously entered into Plaintiff's cell after the other deputies had searched his cell and wrongfully conducted a second "unsupervised" search with the sole intent of egregiously destroying and or misplacing Plaintiff's legal papers before then thereafter unjustifiably taking some of the Plaintiff's legal papers and placing them into a bag and then existed the cell while the Plaintiff was being housed in 5B-5 cell of the general housing area on Pod B of the fifth floor. Afterwards, Plaintiff asserts that defendant Alton Apples implicated a hidden threat of retaliatory treatment being wrongfully inflicted against the Plaintiff because of the fact that the Plaintiff had complained about the tortful act committed by Defendant Alton Apples.

20.    Subsequently, defendant Tineo thereafter fabricated an Incident Report inorder to cover up for the tortful actions inflicted by defendant Alton Apples and which was wrongfully endorsed by both defendant sergeant P. Lorenzo and defendant Fodaro. The Incident Report alleged that:

-    "At approximately 1515 hours while completing a shakedown of pod 5B General housing Deputy Fodaro and I ordered inmate Barzee, S(11-1866) to exist his assigned cell 5B-5. **Inmate Barzee complied and was pat searched with negative results for contraband**. While searching his cell I observed a county issued sheet rolled in to a ball under the right hand side of his bed. When I retrieved the sheet I observed that it was ripped in several locations. I continued the search of the cell with no findings of further contraband. **After the completion of the search I bagged up the sheet and disposed of it. Inmate Barzee then began yelling out of his cell making false claims that we disposed of his legal work. At no point in time did I dispose of any legal work or paperwork from his cell**. The only items disposed of were the destroyed sheet, toilet paper that he was using to block his vents and several blue latex gloves that he had concealed in his cell in several locations. SGT. Lorenzo notified".

21.    Defendant (Sergeant) P. Lorenzo also prepared an Inmate Misbehavior Report which alleged that:

-    "During a random shakedown of your cell, staff did find a bed sheet rolled up into a ball under your bunk in the corner. When staff unrolled the sheet, it had been ripped in several locations. You also used your issued toilet papers to block the vent in your cell. You also had blue latex gloves, that were concealed in your cell in several locations. You are in violation of the inmate handbook."

22.    Subsequently, Plaintiff declares that he was wrongfully denied of the opportunity to present a sufficient defense at his Formal Disciplinary hearings conduct on Monday the

4th day of December 2023, due to the fact that Plaintiff had not known of how to adequately obtain assistance, relevant evidence and of the rules which govern the Formal Disciplinary hearing procedures. Plaintiff asserts that Hearing officer (defendant) Kolakowski wrongfully informed the Plaintiff that there was no audio for the pods while off record and this being prior to the actual commencement of the said Formal Disciplinary hearing procedure. Plaintiff asserts that he had requested to be provided with the audio of the camera footages on Pod 2A so that he may be able to provide rebuttal evidence on his behalf which would have substantially revealed that it was actually Defendant Conner who was actually verbally disrespectful by calling Plaintiff an idiot and telling Plaintiff to get off of the gate and that the said defendant further escalated the situation by wrongfully threating to maliciously send the Plaintiff to the SHU before actually then thereafter requesting for Plaintiff to be sent to the SHU simply because the Plaintiff had asked for Defendant Conner to give him an explanation as of why would he have to get away from the door in his own cell, and for the Defendant to show him the rule which states as such, because Plaintiff did not see the problem with him being simply by the door especially where he was not involved with the problem that had occurred outside of his cell, and which had also transpired while the Plaintiff was already locked in his cell at the time; and because Plaintiff asserted that he had not been of any disturbance to any of the deputies whom had responded to the Emergency situation because he was silently just simply standing by the door in his own cell.

23.  Plaintiff asserts, upon information and belief, that he is under the assumption that defendant Kolakowski was the said person who conducted his Formal Disciplinary hearing and that the said defendant wrongfully wrote defendant Stratton's name as the hearing officer. Nonetheless, Arguendo, Plaintiff asserts that both Defendants must be held liable for the tortful action inflicted upon him where the said defendants wrongfully deprived the Plaintiff of adequate due process by wrongfully informing the Plaintiff that he could either litigate against the charges and get sentences to the maximum amount of sanctions possible and which would be for at least another two months or the Plaintiff could just simply plea guilty to the charge of "disrespect" under DR # 23-575682 and to the charge of "damage" under DR # 23-583149 in order to receive a sentence of time served.

24.  The Plaintiff was wrongfully confined on December 19th 2023, where the "John Doe" Defendant conclusory alleged that the Plaintiff was fighting with another incarcerated individual within the weight room area of the facility's gym, even though the Defendant never saw the Plaintiff fighting with another incarcerated individuals nor did the defendant give the Plaintiff any direct orders to stop fighting. Also, Plaintiff asserts that the allegations raised by the "John Doe" Defendant are without sound reasoning because of the fact that the facility camera video footage clearly reveals that the Plaintiff had actually already left the weight room are prior to the defendant telling the numerous of other incarcerated individuals that were still in the weight room area that they had to lock in.

25.  However, it should also be noted that the said "John Doe" defendant could not have realistically visualized the weight room area of the gym from where he was seated and

that nobody in the weight room area was fighting prior to nor after the deputy had opened the door to the weight room area. Moreover, evidence of plaintiff's wrongfully confinement is further presented by the fact that it wasn't even the "John Doe" Defendant who wrote the Inmate misbehavior report, but it was rather instead his area supervisor who was not even present on the Pod when the incident occurred. Specifically, Plaintiff asserts that Defendant Sergeant Stone wrongfully aided the "John Doe" Deputy--Defendant in wrongfully confining the Plaintiff in the Special Housing Unit for rule violations that the Plaintiff never violated by Defendant Stone writing an Inmate Misbehavior Report that stated:

- "You were observed by the Deputy engaging in a physical altercation with another inmate. You refused orders to stop your disruptive behavior, causing the Deputy to be alarmed and annoyed. Your actions caused a disruption of the good running order of the facility. These are all violations of the above rules in the inmate handbook."

26.    Plaintiff asserts that deputies had wrongfully encouraged another incarcerated individual whom was also being housed in the same General Housing area as the Plaintiff to attack the Plaintiff on the December 31st 2023. Thereafter Plaintiff asserts that Defendant Sarno had walked up to the other Incarcerated Individuals cell after the fight and had informed the said Incarcerated individual that he was going to "get some Pussy" for him that night. Evidence of the maliciousness of the attack committed by the other incarcerated individual on the behalf of the deputies was clearly presented in the misbehavior report written by Sergeant Sarno which stated that:

- "While assigned to Pod 5B, You Participated in **mutual combat** with another inmate. Deputies ordered you to stop your actions and lock in. you ignored all orders to do so. Your actions caused a disruption to the working order of the facility and for the Deputy to be alarmed."

27.    Plaintiff asserts that Defendant Connor was actually physically present as the pod deputy when the inmate attacked the plaintiff and that the deputy never used any form of force (whether it be chemical or physical) to stop the fight and instead stood by and watched as the much bigger Incarcerated Individual sucker punch and attack the unexpected Plaintiff. Thereafter Defendant Connor then wrote a misbehavior report which stated:

- "On the above date and time, while working my assigned post 5B General Housing. A/M Barzee and A/M Kemp **engaged in a mutual fight** in the day room, exchanging closed fist strikes towards each other. A Code Orange, inmate on inmate fight, was called to central control via my portable radio while also giving orders to the other inmates on the pod to lock in. Responding staff separated and secured both inmates in their cells. Both Inmates were evaluated by medical, and were found to not need further medical treatment."

28.    Defendant Alton Apples had responded to the Code Orange and had tackled the Plaintiff for no apparent reason and then wrote an Incident report which stated that:

- "On the above date and time while conducting a tour in 5B, a code orange (two inmates fighting) transmitted via portable radio in 5BGH. I responded to the area and upon arriving, I observed inmates Kemp (*) and Barzee, Saio (11001866) engaged in a physical altercation. I Observed inmate Kemp on top of Barzee throwing closed fist punches to inmate Barzee's facial region. I ordered both inmates to stop their actions but both inmates failed to follow any orders given. I deployed my issued pepper blast from my holster and gave orders again to the inmates to stop fighting. They continued to fight refusing my orders and I dispersed the pepper blast powder into the facial region of both inmates. Both inmates separated and I ordered both inmates to get to the ground. Both inmates refused to get on the ground with inmate Barzee stating "Lets go! Round two" and both inmates continued to walk in a circle around the kitchen area.

  I again ordered both inmates to the ground at this time but both continued to follow each other. I removed my jail issued vexor spray from the holster and deployed two two second burst to both inmates facial region. Inmate Barzee still refused to get on the ground and at this time I utilized a double underhook take down to inmate Barzee taking him to the ground. I placed handcuffs on inmate Barzee and additional staff had arrived and assisted with escorting both inmate Barzee and inmate Kemp to their cells. Both inmates were decontaminated and 655 nurse (*<u>Susan Sheridan</u>) arrived to evaluate both individuals and deemed no further medical attention would be needed."

29. Plaintiff asserts that he got into a verbal argument with the other said incarcerated individuals after the fight and while everyone was locked in. Plaintiff asserts that he and "Kemp" along with the other incarcerated individuals were verbally arguing with each other, and that Defendant Conner wrongfully told the Plaintiff that he was going to move him to the special housing unit if the Plaintiff continued to verbally argue back with the other said incarcerated individuals. Plaintiff asserts that other incarcerated individuals within the housing unit were laughing at him and telling him that he got beat up by a 19 year old kick and that the Plaintiff is a bitch.

30. Plaintiff asserts that defendant Conner was laughing right along with the other incarcerated individuals and that the defendant would repeatedly threaten to move the Plaintiff to Special Housing Unit 3 if he heard the Plaintiff attempt to state anything back to the verbal harassment that was wrongfully being inflicted upon him. Plaintiff asserts that he nonetheless continued to argue back with all of the other incarcerated individuals being housed within Plaintiff's housing Unit.

31. Plaintiff asserts that he was moved to the Special Housing Unit and was placed in 29 cell and that the other incarcerated individual that he had gotten into a fight with ("Kemp") was also moved to a cell close to his with special Housing Unit 3 (Plaintiff thinks it was around 31, 32 or 33 cell). Plaintiff asserts that they only moved the other incarcerated individual so that the other incarcerated individual could brag about assaulting the plaintiff. Plaintiff also asserts that defendant Conner and Defendant Sarno did this with

---

(*) <u>This</u> is an indication that the <u>said information</u> was redact in the Report filed

the full understanding that the other said incarcerated individual would not be being housing within the Special Housing unit for an excessive amount of time due to the fact that the said incarcerated individual was only 19 years old and is deemed as a minor pursuant to correction Law 137 Subd. Six (6).

32.    Plaintiff asserts that the deputies (this including Defendants Fodaro, Alton Apples and Ethan Perry and others) whom were working within the special housing unit then started informing other incarcerated individuals that the Plaintiff had gotten his "ass kicked by a 19 year old" while escorting the other incarcerated individuals out for recreation and or to the shower. Plaintiff also asserts that the deputies would encourage the other said incarcerated individual ("Kemp") to brag about beating the plaintiff up while "kemp" was still being housing within the Special Housing Unit.

33.    It should be noted that On January 4th 2024 the medical department within the "OCJC" facility thereafter mockingly provided the Plaintiff with a high protein/high calorie diet until 1/26/24 (which was simply an evening snack bag) after the Plaintiff had gotten into a fight with the other incarcerated individual (Kemp). Plaintiff asserts that the snack bag only consisted of one peanut butter and two slices of bread which was delivered to the Plaintiff at around 9 pm to 10 pm every night. Plaintiff also asserts that he had a difficult time obtaining the snack bag and would constantly have to verbally complain before even receiving the snack bag. Plaintiff asserts that the proportion of the snack bag got less and less as the weeks went by and that there was also at least one item missing on numerous of occasions. Plaintiff asserts that the **Patient Communication Form** specifically stated:

- (Added 01/04/2024 01:30 AM EST by CAshbarry LPN/LVN). "you were weighed on 12/29/23 139Ibs. BMI 20.5 This does not qualify you for double trays. You do have an order for a high protein/high calorie diet in place which includes an evening snack bag until 1/26/24. If this is not delivered, please let your pod deputy know. thank you"

34.    Plaintiff asserts that the original misbehavior report that was filed by Defendant sergeant Stone along with the other misbehavior report written by Defendant Deputy Conner (badge No. 4197) were both conduct on Wednesday, January 10th 2024. Plaintiff asserts that Defendant Kolakowski again informed the Plaintiff while off record of the two options that were available to the Plaintiff which consist of litigating against the charges and getting the maximum amount of disciplinary sanctions possible (with the acknowledgement that appealing the defendant's sanctions would be worthless) and or simply pleading guilty and getting time served for the two misbehavior reports which the defendant felt he was actually innocent of. Plaintiff therefore again felt it wrongfully compelling, as a result of being hungry and tired of being deprived of social life and the pursuit of happiness, to get time served so that the plaintiff could at least get out of the box ("SHU") and because the Plaintiff knew that Defendant Kolakowski would just simply deny the Plaintiff of all of his rights.

35.    Plaintiff asserts that he was later moved back to the General Housing and had gotten into another fight with the same said incarcerated individual (Kemp) right before he left the General Housing Unit and returned back to general population. Plaintiff asserts that this occurred as result of the floor deputy instructing the Plaintiff to lock in so that the Plaintiff's non-contact could come out of his cell and go to his disciplinary hearing. Plaintiff asserts that he was never let back out of his cell until after the other incarcerated individual (Kemp) hand came back to the General Housing Unit and had refused to lock in. Plaintiff admittedly asserts that he had warned the other said incarcerated individual (Kemp) ahead of time that the Plaintiff was sick (had a cold, running nose, body chills and muscle weakness as a result of being placed in extremely cold cells with no sweaters and adequate blankets) and only weighed one hundred and thirty pounds the last time he was attacked unjustifiably but that "Kemp" better not attempt to attack him again because the Plaintiff will beat him up for mocking him with the deputies and other incarcerated individuals the next time he tries such behavior.

36.    Plaintiff had also warned the said other incarcerated individual (Kemp) that he was being nice (meaning that he didn't really want to hurt the young kid) but that the next time he was going to simply teach him a lesson. Therefore, when the deputies wrongfully allowed for the other said incarcerated individuals to stay out during the same time as the plaintiff, the Plaintiff felt it compelling to defend himself by fighting "Kemp" in the cell so that other incarcerated individuals would stop harassing him and or attempt to cause him any physical harm as a result of being under the false assumption that they could push up and or bully the Plaintiff. Plaintiff asserts that he beat the other incarcerated individual up the second time around as promised and regardless of the fact that he was still way skinner than "Kemp". Plaintiff also asserts that the deputies knew that the two were going to fight but wrongfully still allowed for the fight to occur because they thought that the Plaintiff was simply going to get beat up again.

37.    Moreover, Plaintiff had to wrongfully suffer from many further prejudicial injuries inflicted upon him deriving from the tortful actions committed by the Defendants, where the defendants would consistently attempt to deprive the Plaintiff of his First Amendment right of having sufficient access to the Courts by wrongfully destroying and or throwing away Plaintiff's in-cell legal papers, opening Plaintiff's incoming legal mail outside of his presence and photocopying plaintiff's incoming legal mail along with wrongfully withholding his outgoing legal mail or not sending out his out-going legal mail at all. Plaintiff had made many grievance complaints about this issue without any form of resolution nor cure being rendered.

38.    Plaintiff asserts that he first became aware of the defendants wrongfully actions when the Onondaga County justice Center mailroom administration staff members wrongfully photocopied Plaintiff's in-coming Legal mail from the Clerks of the New York State Southern District federal Court (U.S.D.C.) and NYLAG Pro Bono Agency (dated as of being mailed out on 15 Feb 2024 and which the facility claims to have received on 2-20-24). Plaintiff asserts that he started complaining about the issue by submitting grievances but was having a difficult times properly complaining about his issues stemming from the fact that he didn't know how to properly submit a grievance within the Onondaga

County Justice Center. Plaintiff also asserts that he received legal mail from the Clerk of the United States District Court (Northern District of New York State) which was stamped by the United States Postal Service as of being mailed out on the 15th day of March and which was also thereafter wrongfully opened. The blatant violation of Plaintiff's first amendment constitutional right was evident by the fact that the administration department maliciously thereafter wrote that they opened Plaintiff mail by writing "Opened on Accident" in big black ink letter formats. Both on April 1st 2024 and April 11th 2024 the administration department of the Onondaga County Justice Center Wrongfully photocopied Plaintiff in-coming legal mail again.

39.    Plaintiff was also having a difficult time communicating with the Courts effectively due to the fact that Plaintiff's out-going legal mail would wrongfully be withheld and or was not being mailed out immediately. Plaintiff would reach out to the Courts via the telephone communication only to then be informed that the mail which the Plaintiff had submitted seven to eight days earlier had still not been received by the Court. Plaintiff again started writing grievances on the matter only to thereafter suffer more prejudice injuries by the said Facility wrongfully withholding the Plaintiff's out-going legal mail for even longer amount of days.

40.    Furthermore, Plaintiff asserted that he was in his cell (3B-50 cell) doing his legal work on April 21st 2024 while the other incarcerated individuals were out of their cells during the routine schedule recreation time. Plaintiff asserts that he had no idea as of what was occurring outside of his cell because of the fact that he was working intensely on his Habeas Corpus paper work and his 1983 Lawsuit case being held within the Southern District Court of New York State.

41.    Plaintiff asserts that he notices that both of the televisions were turned off when he left his cell and so he went to ask the deputy for the reason since he found this fact to be strange. Plaintiff asserts that the "John Doe" Deputy stated that he did not know. Therefore the Plaintiff went and attempted to turn the Sports designated television on but noticed that the TV was not turning on and so he entered the workout area of the gym and asked his fellow prisoners for what reasons was the television turned off. Plaintiff asserts that they informed him that the Deputies got upset that the Incarcerated Individuals were cheering out loud at the fact that two Onondaga County Sheriffs had gotten killed as they were watching the news and so the deputy got upset and turned both televisions off and would not allow for the Incarcerated individuals to watch television.

42.    Plaintiff asserts that he had asked the other incarcerated individuals for an explanation of why that matter pertained to the incarcerated individuals who had not participated in the murder of the Onondaga County Sheriffs and that even if they were cheering what does that have to do with the TV being turned off. Plaintiff asserts that he then went and turned the TV on but that the deputy quickly turned the TV back off. Plaintiff asserts that other incarcerated individuals informed him "chill out" because the deputy had told them that the TV would be turned back on at 7:00pm if no one turned the TV back on. However, Plaintiff asserts that from that day on he was still further harassed by the deputies. Specifically, Plaintiff asserts that Defendant Deputy Cruz whom was the 3B

Pod officer that day maliciously conducted a cell search of the Plaintiff's cell and that the said Defendant wrongfully threw away a lot of Plaintiff's personal items, this including his cup to drink water.

43. Additionally, Plaintiff asserts that he had gotten into a further verbal disagreement with Defendant Cruz during the service of medication stemming from the fact that Plaintiff had simply just asked about his personal items. Plaintiff asserts that he felt stupid because he had to drink water from his bowl when he was taking his medication.

44. Plaintiff asserts that he takes low level pain medication which helps in reducing the pain being suffered from his fractured right hand (which never healed properly due to the unprofessional actions and torts committed by the defendants on November 21st 2023). Plaintiff asserts that it is a well-known fact that the Plaintiff wraps his right hand because it helps with the mobility and usage of his right hand during activities like working out, playing basketball, and or simply carrying things around and it also just simply gives the Plaintiff more comfort during the usage of everyday activities (especially when Plaintiff has to hand write all of his legal).

45. Plaintiff asserts that he got placed on a 17 hour keeplock disciplinary sanction as a result of having a verbal disagreement with Defendant Cruz during the service of the nighttime medication deliver and that defendant Cruz allegedly reported that the Plaintiff was specifically placed on 17 hour keeplock status because he had excessive amount of items in his cell after Defendant Cruz had wrongfully confiscated the items during a maliciously intended cell search.

46. After completing the 17 hour keeplock sanctions, Plaintiff asserts that Defendant Casey McPartland and Defendant William Demko along with Deputy Morris then ran down on his unit (3B Pod) On April 23rd 2024 and informed everyone to lock in their cells during the morning breakfast scheduled time. **Plaintiff asserts, upon information and belief, that he grabbed his tray and started heading toward his cell when Deputy Morris then called for the Plaintiff** to stop walking towards his cell and to set his tray on the edge of the counter of the Deputy's designated station in the center of the pod.

47. Plaintiff asserts that he followed all of the Deputies instructions and that the Deputies then placed mechanical restraints on his wrist in-front of his body and started escorting the Plaintiff towards the entrance door of the three B Pod (3B Pod). Plaintiff asserted that at first Deputy Morris had grabbed the back of his shirt after he existed the first door and that he was pushed towards the wall where Defendant William Demko then grabbed a hold of his body. Plaintiff asserts that he was asking defendant William Demko for an explanation on why they was grabbing him like that while looking to his left and asserts that he was never in possession of any contraband and that he had no acknowledgment of an existence of a weapon until the deputies mentions as such.

48. Plaintiff asserted that he was brought to a metal detector machine that does an x-ray example of incarcerate individuals body and that he was also stripped searched without any form of contraband being found on his possession nor in his property or in his cell.

Plaintiff asserted that the defendants threw the said weapon inorder to set him up as continuation of retaliatory treatment for him turning on the sports television.

49.     Defendant Casey McPartland thereafter served the Plaintiff a misbehavior report which asserted that:

- "While being escorted out of Pod 3B for a body scan you tossed an item on the ground in 3B vestibule which was found to be a homemade 'shank'. You failed to notify sworn staff of the 'shank' causing staff to be annoyed and alarmed for no legitimate reason. Your actions violate the inmate handbook and cause a threat to the good running order of the facility."

50.     Plaintiff asserts, upon information and belief, that his formal disciplinary hearing was conduct on Wednesday the 30th day of April 2024, at that which time Plaintiff asserts that he did not want to speak about any possibility of entering a guilty plea and instead informed Defendant Kolakowski that he wants to present all of his arguments on the record and that he would like to call witnesses. It was at this time that Defendant Kolakowski wrongfully informed the Plaintiff that he may call as many witnesses as he would like but that it doesn't mean that the said requested witnesses had to testify at the said disciplinary hearing. Nonetheless, the Plaintiff entered a plea of not guilty and still attempted to call witnesses without any form of assistance being provided to the Plaintiff.

51.     Plaintiff then asserted that he felt as if he was wrongfully being confined in the Special Housing Unit as a form of retaliatory treatment for the events that occurred on the 21st day of April 2024. Defendant Kolakowski wrongfully then asserted that he would adjourn in order to find out if the Plaintiff's requested witnesses would be willing to testify at the disciplinary hearing.

52.     On April 29th 2024, Defendant Detective Alexander Hebert informed the Plaintiff that criminal charges were being prosecuted against him for the allegations written in the Misbehavior report filed by Defendant Casey McPartland. Plaintiff asserts, upon information and belief, that Defendant Casey McPartland committed perjury by falsely reporting that:

- "While assigned as 810 I received an email from Deputy Reschke with a voice recording from the inmate phone system. As I listened to the recording I heard "3B cell 50 has a weapon and has threatened two people." I responded to 3B with Deputy Demko, Deputy Morris and Deputy Sickmon. I instructed Deputy Herbert to lock the pod down and asked him if cell 50 I/I Barzee (11-1866) was out of his cell which he advised he was. **I then observed I/I Barzee walking towards the middle stair case and ordered him over to the deputies desk**. I secured I/I Barzee in handcuffs in the front. I then advised him we would be going to booking to complete a body scan. As I/I Barzee was walking out of the pod door into the vestibule I/I Barzee was reaching into the front of his waistline and then tossed an item into the corner of the vestibule. I/I Barzee was secured against the vestibule wall so the handcuffs could be transitioned

from the front to the back. I then asked for additional sheriff emergency response team (SERT) members to respond and activated SERT. My team consisted of the following:

> M1: Deputy Demko
> M2: Deputy Morris
> EQV: Deputy Corcoran

With the assistance of M1 and M2 the handcuffs were transitioned from the front of I/I Barzee to the back. M1 and M2 then applied a emergency response belt (ERB) to the upper torso of I/I Barzee. Once the team was secured I/I Barzee was escorted to booking for a body scan. Once the team got off the elevator on the first floor Deputy Corcoran became EQV and started to record. **I/I Barzee was escorted to booking and body scanned with negative results for contraband.** I/I Barzee was then escorted to pod 5BSH3. During the escort I was informed by Deputy Corcoran the camera battery ran out. Once we arrived on the fifth floor a camera was retrieved and recording started again. I/I Barzee was escorted into 5BSH3 cell 29 and was assisted in laying down on the mattress. The ERB was removed along with the handcuffs. A strip search was conducted with negative results.

During the initial incident I had Deputy Sickmon secure the contraband that I/I Barzee tossed on the floor. Deputy Sickmon responded to operations where I observed a homemade shank about four inches long with a string tied to it. Deputy Sickmon stated no further contraband was found in cell 50 after being searched. I took the contraband and responded to Deputy Reschke's office where the evidence was secured in bag A1307905 and then secured in evidence locker #3."

53.     Plaintiff asserts that Defendant Devin Reschke also wrongfully participated in the wrongful prosecution of Plaintiff by asserting that the following events occurred:

- "On April 20th, 2024, at 0855 hours, I received **a tip from an anonymous inmate source** left on the Facility's Tip Line. (CSN#38756408) On the message that was left, the inmate state the following:

    "The phone in 3B has been ripped apart so they can smoke. **Three days ago 3:30** check the clock and the cameras and 50 cell has a weapon. He's threatened two people with it so far."

    On April 23rd, 2024, at approximately 0741 hours, I forwarded the message to (510) Sergeant Giles and (810) Sergeant McPartland. **They advised that they would formulate a plan** in an attempt to confirm this information. Sergeant McPartland later informed me that they were able to locate a "shank" or a homemade improvised stabbing device on Saio Barzee (ICN#11-1866-Pod 3B Cell #50).

    OCSO CID Detective Hebert notified **for further investigation**."

54.    Plaintiff assert that Defendant (sergeant) Bergman must be held liable for acting in a manner consisted with that constituting of being deliberate indifferent to the due process violations that were wrongfully committed be defendant Alexander Hebert, whom neglected to adequately perform his duties by wrongfully failing to conduct an efficient investigation into matters claimed to be true by the Onondaga County Justice Center deputies. Plaintiff asserts that Defendant Bergman should have known that there did not exist any adequate and substantial evidence that demonstrated probable cause to believe that the Plaintiff had committed the offense charged and rather instead still wrongfully endorse the accusatory instrument which was thereafter wrongfully used for prosecuting criminal charges against the Plaintiff. Plaintiff asserts that Defendant Hebert simply relied on the allegation reported by the Deputies and actually never conducted any form of "FURTHER INVESTIGATION" as required by law prior to proceeding with the commencement of filing criminal charges against the Plaintiff; rather instead Defendant Alexander Hebert simply stated that:

- "SYNOPSIS:

   **An incarcerated individual at the Justice Center possessed a "Shank" and arrested. Case closed.**

   NARRATIVE:

   On 04/23/24 incarcerated individual Saio Barzee was found to be in possession of a piece of plastic that was sharpened to a point, known as a "Shank".

   On 04/29/24 **I recovered this shank from the evidence lockers at the Justice Center**. This item, in the form that it is in, is contraband and due to the point that was made on the one end makes it dangerous contraband. **I took a photograph of the item and secured it into evidence at HQ.**

   **I responded to Saio's cell and advised him he was under arrest. I then dropped the arrest paperwork off at booking for arrest processing and for arraignment. Case closed by arrest.**

   END OF REPORT."

55.    Plaintiff asserts that, upon information and belief, Defendant Daniel Lavy Must be held liable for endorsing the fabricated report, submitted by Defendant Casey McPartland, which then commenced with the wrongful prosecution of the Plaintiff. Thereafter, Plaintiff asserts that Defendant Shaquille Herbert (Badge No. 3019) must also get held liable for committing the act of perjury by swearing that the following events occurred:

- "While I was working in Pod 3B, 810 Sgt Mcpartland, SERT and sworn staff members entered the unit. I ordered the unit to lock in. **810 Sgt McPartland asked Inmate Barzee assigned to cell #50 to come to the desk, he complied and was hand cuffed by Sgt McPartland**. Once hand cuffed they escorted him to the

vestibule and searched Inmate Barzee. They found Contraband/Weapon on person. Deputy Sickmon took controlled of the evidence at that time. Inmate Barzee cell was searched by sworn staff members, and I search the phone area. 2nd to last phone had been tampered with (phone wires are exposed**). I also searched most if not all the chairs that is on the unit at this time with negative result**. I notified Sgt Peterson who was on the pod at that time. A notation was made in the Pod 3B Black Creek electronic logbook."

56. Plaintiff asserts that the Deputy Morris took the Plaintiff's Voodoo religious necklace (which consisted of his tooth, some of his hair and strings blessed by ESU (who is the God of the Crossroads in the Voodoo belief)) before the Plaintiff was allowed to enter the body scanner. Plaintiff asserts that Deputy Morris stated that the necklace will be given back to him which actually wasn't and thus stands as a violation of his right to practice his religion. Plaintiff asserts that he does not mark down his religion is Voodoo because of the backlash and ridicule that follows behind the ignorant minds of the non-believers. However, Plaintiff asserts that he lets everyone know that his religion is simply "Voodoo" (because that is the name which they may be able to relate). Plaintiff asserts that he has been practicing his belief since birth and that it is a Cultural and Spiritual compass which he relies on during difficult times and celebrates during good times. Plaintiff also asserts that he practices Vousoo which is the Spiritual aspect of Voodoo.

57. It should also be noted that Defendant Kolakowski wrongfully failed to allow for the Plaintiff to be returned back to the hearing procedure and rather instead, on the first day of May 2024, wrongfully found the Plaintiff guilty before thereafter rendering sanctions which sentenced the Plaintiff to one hundred and seventy-five days of confinement in the special housing unit. Specifically the Defendant Kolakowski commented that:

- "Hearing conducted on 5/1/24 @ 0835. I/I read incident report as well as Misbehavior report. I/I was also shown a copy of all available video of incident. I/I/ Barzee then told me that he was never in possession of any form of contraband. I/I went on to tell me that it was planted by the involved deputies. I/I Barzee feels they did this in retaliation due to the fact he and other I/I's were laughing about the shooting death of an OCSO deputy a few days prior. I asked I/I Barzee why the video shows no "shank" on camera prior to him entering the 3A sally port but then it appears on camera. I also told him that per the reports the Sgt. States he saw I/I Barzee remove the shank from his pants and throw it on the ground. Again I/I Barzee claims this was all a "set-up" and all a fabrication of the truth. He then asked to call the other involved staff as witnesses as they did not write reports. I adjourned said hearing to complete this. On the same date I asked Deputy Demko and Morris is they would be willing to be witnesses in this hearing to which they sated "no". Based on evidence presented, both written and video, I/I Barzee is found guilty of all charges. **For the safety of the facility as well as staff and other I/I's a 175 day sanction shall be imposed. Also due to the extreme safety risk I/I Barzee put everyone around him in, he shall be given recreation in the 5B recreation yard.**"

58.    Nonetheless, on that same day, Wednesday the 1st day of May 2024, the Plaintiff still submitted an appeal to (Defendant) Chief Drapikowski which asserted that:

- ("POINT ONE") "UNTIMELY HEARING". "Please take notice that the hearing was not commenced within the 5 day rule established, and as objected to at the hearing I'm requesting that Deputy Kolakowski's determination of guilty be reversed."

- ("POINT TWO") "WRONGFULLY DENIED OF RIGHT TO BE PRESENT AT THE HEARING". "PLEASE TAKE FURTHER NOTICE that on the 1st day of May 2024, I was wrongfully denied of the opportunity to be present at my hearing without any form of justification or explanation of the reason why. WHEREFORE, a reversal is required inorder to properly give appellant an opportunity to present further evidence and of the option of calling other witnesses."

- ("POINT THREE") "WRONGFULLY DENIED OF THE RIGHT TO CALL WITNESSES". "PLEASE BE ADVISED that appellant was wrongfully denied of the right to call witnesses and was also thereafter never provided with a copy of the signed refusal to testify form that must be signed by a called witness. WHEREFORE, a reversal is required because of the fact that appellant was also thereafter wrongfully denied of the opportunity to confront the people accusing him of violating rules, and inorder to address the credibility of the accuser's testimony."

- ("POINT FOUR") "WRONGFULLY DENIED OF RELEVANT AND SUBSTANTIAL VIDEO FOOTAGE". "PLEASE BE FURTHER ADVISED that appellant was also wrongfully denied of the opportunity to present video footage, which stood as exculpatory evidence that could contradict the misbehavior report. There is more than just simply one camera in the vestibule area and there is also more than one camera facing toward the Deputy's desk area that could actually visualize the vestibule entrance door area."

- ("POINT FIVE") "WRONGFULLY DENIED THE RIGHT TO PRESENT DOCUMENTATY EVIDENCE". "APPELLANT asserts that he was wrongfully denied of the opportunity to present relevant and substantial evidence that would reveal that he was wrongfully placed on keeplock for 17 hours, because of stockpiling and disrespect, by deputy J. Cruz a day or two prior to the alleged incident described in the misbehavior report. Appellant also asserts that he was also wrongfully denied of the opportunity to get a copy of the cell search form conducted by J. Cruz and that such actions also denied appellant of the opportunity to show the hearing officer that it was impossible for him to have possessed any material which could have been made such "shank" and that he was wrongfully denied of credibility by the said hearing officer neglectful action. WHEREFORE, Appellant ask that a reversal be granted and for the appellant to be released from the SHU and for all disciplinary sanctions to be restored back to its original status prior to the charges raised in the misbehavior report were filed."

59.    Thereafter, On Thursday May 2nd 2024, Defendant John S. Drapikowski wrongfully
       denied the Plaintiff's appeal unjustifiably and declared biasly that:

   •    "Mr. Barzee,

            I am in receipt of your appeal concerning your hearing and subsequently guilty
       determination by Deputy Kolakowski. I will address each point as you have listed
       them.

       One: Untimely hearing, not within 5 days. **For an individual placed in L1 status the
       hearing must be done within 5 days. A person placed in L2 status, according to
       minimum standards hearing must take place within 15 days. You were placed in
       L2 and Not L1 status therefore hearing was completed within proper time limits.**

       **Two: Wrongfully denied right to be present at hearing. You claim not to be
       present, but you were party to your hearing that was recorded by Deputy
       Kolakowski. Because of this fact and proof in a video recording your claim is
       denied. If I was to believe you were not present, then there would be no way for
       the additional claims to take place. You were either there or you were not.**
       Three: Wrongfully denied the right to call a witness. **You in fact asked to have two
       officers as your witness. Neither officer is required to testify on your behalf and
       in fact did not submit any reports indicating guilt on your part.**

       Four: Wrongfully denied relevant and substantial video footage. Deputy Kolakowski
       allowed you to view all camera footage available. There is no additional footage or
       additional cameras as you believe.

       Five: Wrongfully denied of the right to present documentary evidence. You claim that
       your room was searched 1 or 2 days earlier by Deputy Cruz. You believe that you
       were wrongfully locked in because of that incident. If you choose to address that
       issue, please do that concerning that discipline. I believe your point is that if you
       weren't found with contraband 2 days prior you couldn't be found with it 2 days later.
       Simply introducing a cell search form that did not have contraband on it 2 days prior
       does not negate the possibility of you possessing it 2 days later.

       For the above listed reasons your appeal is being denied. Also, because you were
       found guilty of possessing dangerous contraband, I agree with the sanction imposed."

60.    Plaintiff asserts that Defendant Casey McPartland then maliciously wrote a misbehavior
       report against the Plaintiff on the 21st day of May 2024 which alleged rule violations
       which the Plaintiff never committed and which Defendant McPartland was never
       actually physically present for. Plaintiff asserts that the misbehavior reports were
       wrongfully fabricated for the sole purpose of depriving the plaintiff of his opportunity to
       go to general population and that the misbehavior report was filed as retaliatory
       treatment for plaintiff writing grievances complaints against Defendant Gerard Wagner
       for threatening to kill the Plaintiff (while, upon information and belief, Defendant

Windey was present but which defendant Windey failed to report) and for harassing the Plaintiff both with verbal insults and by encouraging other incarcerated individuals (specifically I/I Roberson who was in 28 cell) within the Special Housing Unit (SHU-3) to throw feces on the Plaintiff, as well as by verbally slandering the Plaintiff's character and reputation by stating that the Plaintiff was a sex offender. Plaintiff also asserts that Defendant Casey McPartland also wrote the misbehavior report against him as a form of retaliatory treatment because of the fact that the Plaintiff had also wrote a grievance complaint against the facility for wrongfully failing to remove the Plaintiff out of the special housing unit pursuant to correction law 137(6) and because of the fact that the Plaintiff's disciplinary sanctions were in violation of the New York State HALT law; which specifically states that Prisoners are not allowed to be confined in the special housing unit for consecutive and extensive amount of time.

61. Specifically, Plaintiff asserts that Defendant McPartland wrote a misbehavior report which alleged that:

- "While mental health was speaking with you at your assigned cell you began masturbating at your cell door. Your actions caused mental health to be annoyed and alarmed no legitimate reason. Your actions violate the inmate handbook."

62. Moreover, the Plaintiff asserts that he was never given an opportunity to testify at the disciplinary hearing procedure in connection to the May 21st 2024 misbehavior report written by Defendant McPartland and is under the assumption that the Misbehavior report was dismissed because he was never served with a copy of any papers which informed the Plaintiff of the disciplinary sanctions imposed, if any, in connection to the misbehavior report filed by Defendant McPartland.

63. Nonetheless, the Plaintiff continued to submit numerous of grievance complaints (See grievance numbers: (GR#24-0333); (GR#24-0334); and (GR#24-0329)), which addressed the fact, among other things, that the Plaintiff still had concerns about the mishandling of both his incoming and outgoing legal mail and that the Plaintiff felt like the facility was wrongfully also depriving the Plaintiff of the opportunity to be present in the Court room During the commencement of Court procedure that pertained to his criminal case and or when the Court was addressing matters in connection to his docket number and criminal case.

64. Specifically, On Tuesday, June 4th 2024, the Plaintiff had wrote a letter to this Northern District Court in order to request to be provided with an attorney so that the Plaintiff could make sure that his thirty (30) page Reply (Traverse) Memorandum of Law in Support of Plaintiff's Habeas Corpus Petition (see Dkt. No. 39 under Barzee v. Yehl, Case No. 9:23-CV-1022 (DNH/ML)) along with his two pages of Table of Content and three page Affirmation were properly delivered to the Court.

65. It should be noted that initially the Plaintiff never even had any acknowledgment on how to effectively file grievance complaints and was never taught on how to adequately file a grievance complaint. It wasn't until Wednesday, June 5th 2024, that the Plaintiff figured

out that the Defendants and other "OCJC" staff members were manipulatively tricking Plaintiff into wrongfully signing off on his complaint by egregiously informing Plaintiff that the Plaintiff has to sign the grievance complaint form inorder for the grievance process to actually commence. The only reason why Plaintiff was finally able to realize that he was being deceived was because Plaintiff was finally provided with a copy of the "new" Justice Center Handbook (dated 03/19/24).

66. However, Plaintiff asserts that his complaints were not getting any form of resolution from the grievance committee within the Onondaga County Justice Center and thus the Plaintiff felt it compelling to file an Article 78 on the 13ths day of June 2024(See Onondaga County Supreme Court Docket number "SU-2024-006350") inorder to attempt to get removed from the special housing unit and inorder to bring cure to the wrongful mistreatment being inflicted against him by the deputies at the Onondaga County Justice Center("OCJC"), as well as inorder to bring change to the unprofessional actions being committed by the deputies within the said "OCJO" facility. Plaintiff asserts that he also provided a copy of his Article 78 Motion papers to the Human rights (315-435-3567("FREE FOR PRISONERS TO CALL") or 315-435-3565 ("Official")) department so that he could get further assistance in getting the cure needed. Plaintiff also Petitioned for the Facility to uphold the rules and regulations established by Correction Law 137(5) and (6) and asserted that Correction Law 137 applies to local Correction Facilities pursuant to Correction Law 500-k.

67. Specifically the Plaintiff asserts that his Article 78 brought-forth legal argument which challenged the Prison Conditions within the Onondaga County Justice Center by requesting for the Onondaga County Supreme Court to compel, via Mandamus, Defendant Tobias Shelley to uphold the rules and regulations setforth by the Correction Law. Plaintiff asserts that the Petition stated:

• "TO THE SUPREME COURT OF THE STATE OF NEW YORK FOR ONONDAGA COUNTY:

• The Petition of Saio J. BARZEE, complaining of the Respondent TOBIAS SHELLEY, respectfully alleges:

• 1. Petitioner Saio Barzee is an inmate at Onondaga County Justice Center, located at 555 South State Street, Syracuse, New York 13202-2104
• 2. Respondent TOBIAS SHELLEY is charged with the overall supervision and administration of the Onondaga County Sheriff's Office and this is also responsible of maintaining order over the Onondaga County Justice Center and all of the deputies and other employees hired to work at the said facility.
• 3. This Petition challenges the daily activities and functions of the Onondaga County Justice Center.
• 4. The within proceeding is brought pursuant to C.P.L.R. article 78 to Mandamus Compel the respondent to uphold the rules and regulations setforth pursuant to Correction Law section §137, and to provide the following cure:

- (One) Directing Respondent TOBIAS SHELLEY to immediately release the Petitioner from the Special Housing Unit pursuant to Correction Law § 137, and to instead house Petitioner in the General Housing Unit available for incarcerated individuals with excessive amount of disciplinary sanctions; because of the fact that Petitioner has been being wrongfully housed in the Special Housing Unit since the 23rd day of April 2024, and thus has way pasted the 15 day time limitation authorized by law.

- (Two) Directing Respondent TOBIAS SHELLEY to compel his employees working at the Onondaga County Justice Center to immediately stop the wrongful act of violating Petitioner's incoming and outgoing legal mail so that Petitioner may adequately attempt to cure the prejudicial harm wrongfully already inflicted in a wanton and unnecessary manner upon the Petitioner by the Respondent's employees (deputies).

- (Three) Directing Respondent TOBIAS SHELLEY to order his employees at the Onondaga County Justice Center and who are working as transporting officers for the Sheriff's Department to make sure that the Petitioner and other incarcerated individuals adequately have the right to PHYSICALLY ENTER AND BE PRESENT IN THE COURTROOM during their established scheduled Court dates when their case are in session REGARDLESS of the fact that their attorney are present or not in the Courtroom, or of what the Court outcome may be because to not do so would be prejudicial to their defense and damaging to the integrity of the judicial system by depriving them of the opportunity to both address the Court on the record and to sufficiently know of the outcome of the Court proceedings instead of what is being told to them by the Respondent's employees. In Petitioner's case, Petitioner hasn't been able to enter the Courtroom and physically be present during Court matters which are substantial to his defense during his last two established Court dates (of May 31st, and June 4th).

- (Four) Directing Respondent TOBIAS SHELLEY to adequately supervise and legally maintain discipline and control over his employees and to restore order properly and control over his employees and to restore order properly over the daily activities and functions of the Onondaga County Justice Center:

- (i) Here, Petitioner asserts that from the 15th day of November 2023 to the 21st day of November 2023, the Petitioner was never actually provided with any form of "informational Videos and instruction session(s)" while being on reception in the orientation housing unit on Pod 2A (which upon information and belief is also known as "OCCF Unit 8") within the Onondaga County Justice Center (OCJC) Facility as adequately required pursuant to the Justice Center Handbook for Incarcerated Individuals under the title of "Reception/Orientation Housing", and that after signing for the Justice Center Handbook, upon the initial fingerprinting, identification and detainees' initial booking stages conducted by the deputies at booking, Petitioner realized that staff members provided him with a handbook that was wrongfully missing pages; and thus Petitioner was never sufficiently taught how to operate the Kios and the tablet, nor of what to expect of the daily activities, rules and facility procedures, and this also including what to expect from staff members at the said O.C.J.C. Facility.

- (ii) Thereafter, the Petitioner was wrongfully deprived of privileges and maliciously suffered minor physical injuries and psychological pain as a result of Respondent TOBIAS SHELLEY's negligence to properly supervise and train his employees n how to uphold the facility's established policy and customs;

- (iii) This is evident where Deputy Connor (badge #4197) wrote an Incident Report against the Petitioner on the 21st day of November 2023 which alleged that "During this emergency situation in Pod 2A, A/M Barzee was given numerous orders to stop standing in his doorway during SERT operation, as was the rest of the Pod. The rest of the Pod complied, however A/M Barzee continued shouting that it was not a rule that he was not allowed to be standing in his door, and continued to shout, and refused multiple orders to stop being disrespectful and confrontational towards sworn staff" and ensuing from the fact that the Petitioner was thereafter wrongfully threatened to be killed by Deputy Sergeant Sarno (who claimed to know "what's going on" and that he would kill the Petitioner and the Petitioner's "sister") before then egregiously being physically assaulted by the SERT deputies, where said deputies actually attempted to further break Petitioner's broken right hand while the Petitioner was handcuffed behind his back by mechanical restraints while in 29 cell of the 5B Floor of the Special Housing Unit.

- (iv) Therefore, Petitioner herein asks that the Respondent pursuant to a mandamus to compel be ordered to have his employees provide Incarcerated Individuals with "Informational Videos and instruction sessions" and to have a 7-day class within the first 30 days of every detainees' arrival on the importance of the rules and policies, and on how to operate the Kios and Tablet which can be taught (in the Pod's Kios rooms or in the rooms available between every Pod on every floor) by civilian teachers or counselors and other civilians wit aid of selected Incarcerated Individuals who adequately have the knowledge and who can get paid a reasonable wage for the assistance by the Respondent as conducted in every other Correctional Facility within New York State. This class can also provide incarcerated Individuals with the information on how to adequately file grievances, and show a video on "PREA" and the importance of reporting sexual assault committed by other incarcerated individuals and staff members. This class must also inform the incarcerated individuals on who their mental health social workers will be and of who their caseload counselors are as well. Staff members must be required to show their face and introduce themselves to the incarcerated individuals - - this list of staff personnel must include Jail Ministry, Counselors, Mental Health social workers, law library clerk, school teacher and a representative from the nurse office.

- (v) Next, the Petitioner declares that he was wrongfully denied of the opportunity to present a sufficient defense because of the fact that Petitioner did not (and still does not) know how to adequately raise a defense. Hearing officer (Deputy) Kolakowski informed the Petitioner that there is no audio for the Pods prior to the actual commencement of the hearing record after Petitioner attempted to be provided with the audio of the cameras footages on Pod 2A so that he may be able to provide rebuttal evidence on his behalf that would substantially reveal that it was actually Deputy Connor who was actually verbally disrespectful by calling Petitioner an idiot and telling Petitioner to get off of the gate before he maliciously sent the Petitioner to the SHU before then requesting for the Petitioner to be sent to the SHU after

Petitioner asked the Deputy why does he have to get away from the door in his own cell, and to show the Petitioner the rule which states that, because Petitioner does not see the problem with him being simply by the door especially where he was not involved with the problem that occurred outside of his cell, which transpired while the Petitioner was already in his cell, and because Petitioner was not being of any disturbance to none of the deputies by simply standing silent by the door in his own cell.

- (vi) Thereafter, Petitioner herein grants that Respondent TOBIAS SHELLEY cite, in the Justice Center Handbook for incarcerated individuals, the specific Correction Law and Executive Law that governs disciplinary hearing procedures for all detainees and other incarcerated individuals being housed in the Onondaga County Justice Center, so that the Petitioner and other detainees may adequately know of how to present a defense and of how to get assistance, call witnesses, request for documentary evidence and of other substantial and relevant evidence (such as Video and audio recordings) which may be used as tools to raise a sufficient defense, and of what forms, example - - witness refusal forms and use of force forms, etc. - -  that should be provided to incarcerated individuals during the hearing procedure. If there are no form established for incarcerated individuals to obtain during the hearing procedure then Petitioner herein also request that the Respondent create forms which the hearing officer is required to provide to incarcerated individuals at the Disciplinary hearing procedure. Petitioner also grants that the Respondent establishes more than one hearing officer to be able to conduct the Disciplinary hearing procedure, because it is only Deputy Kolakowski that is conducting all hearings as of now, and the obvious biasness of this action is evident by the fact that the Deputy always rules in favor of the Deputies over the Incarcerated individuals when it comes to matters pertaining to credibility regardless of the facts and evidence presented infront of him. Petitioner asks that the Respondent should also be required to specifically state of how to appeal to an agency and or Court that will review the record of the disciplinary proceeding, and this including the hearing transcripts and the disciplinary sanction imposed by the hearing office, if incarcerated individuals are not satisfied with the outcome of the individuals with the name, address and phone number of the said agencies and Courts.

- (vii) Moreover, Petitioner had to wrongfully suffer from many prejudicial injuries inflicted upon him deriving from the tortful actions committed by the Deputies, where Deputies have consistently attempted to deprive Petitioner of his First Amendment right to have sufficient access to the Court by wrongfully stealing and then throwing away his in-cell legal papers, opening his incoming legal mail outside of his presence and photocopying his incoming legal mail along with wrongfully withholding his outgoing legal mail or not sending out his outgoing legal mail at all. Petitioner attempted to make many grievance complaints about the matter without any form of resolution being rendered.

- (viii) First, it should be noted that Petitioner never had any knowledge on how to file a grievance complaint effectively, and was never taught how to adequately file a grievance. It wasn't until Wednesday June 5th, 2024, that the Petitioner figured out that the deputies and other (OCJC) staff members were manipulatively tricking the Petitioner into signing off on his complaints by egregiously informing the Petitioner

that the Petitioner has to sign the grievance Complaint form inorder for the grievance process to actually commence. The Only Reason why Petitioner was able to finally able to realize that he was being deceived was because petitioner was finally provided with a copy of the "New" Justice Center Handbook (dated 03/19/24). However, it should be noted that even the handbook provides confusing language which most incarcerated individuals would have a hard time deciphering, and thus is deterring in nature. Secondly, it should further be noted that the deputies have now resulted to not even providing the Petitioner with any grievance complaint forms at all because of the fact that Petitioner realized that his complaints were not being filed right and because Petitioner has thus been requesting that the issues which he has been complaining about be brought infront of the Grievance Coordinator for investigation into matters, Also, it should be noted that the Petitioner has also been informed by lieutenant Quinn that Petitioner is not filling out the right grievance complaint form and then thereafter contradicted himself by stating that Petitioner was being provided with the right Complaint forms when Petitioner asked to therefore then simply (be) provided with the correct complaint forms. Therefore, there stands a possibility that incarcerated Individuals are not even being provided with the right grievance complaint forms; and it's definitely already a known fact that Petitioner and other incarcerated individuals are never provided with a **GREEN JUSTICE CENTER OVERSIGHT COMMITTEE COMLPLAINT FORM**. The Respondent's employees are violating Petitioner's right pursuant to Correction Law Section §139.

- (ix) Therefore, Petitioner is asking that Respondent TOBIAS SHELLEY rewrite the Justice Center Handbook for incarcerated individuals inorder to change the language from: "f. If your complaint is resolved by either the Deputy or the sergeant, you will be required to sign the bottom of the incarcerated individual complaint form, stating that you agree with the resolution provided to you"; to be replaced with "f. **DO NOT SIGN** your signature on the line next to the label "**GRIEVANT SIGNATURE**" nor mark the '**DATE/TIME SUBMITTED**" **UNLESS YOU COMPLETELY AGREE** with the resolution provided to you by either the Deputy or the sergeant investigating your complaint, because your signature is an indication that your grievance complaint has been resolved and that you willingly forfeited (give up) your right of proceeding any further with your complaint". The reason for the change of language being requested is because the initial language described under subparagraph (f) is too vague and leaves the incarcerated individual's mind with the thought or notion that the other lines below the words "receiving staff signature" are where the grievant will later sign upon the completion or resolution of the grievance complaint.

- (x) Also, Petitioner is asking that the Respondent be compelled to provide the complete address and phone number for the New York State Commission of Correction Citizen's Police and Complaint Review Council in the Onondaga County Justice Center Handbook for incarcerated individuals.

- (xi) Petitioner is asking that the Respondent be compelled to provide the Petitioner, detainees and other incarcerated individuals with a more reasonable opportunity to grieve their complaints and for the Justice Center Oversight Committee (JCOC) to participate more in the grievance complaint proceeding involving all incarcerated individuals in the Onondaga County Justice Center and to be able to work alongside with the criminal Investigation Department (315- 435-3081, which upon information

and belief is also known as the "internal affairs" unit) inorder to bring Justice for all complaining incarcerated individuals at the Just Center. This is seriously important due to the fact that there has been numerous of serious batterments complained about by incarcerated individuals in the last three years alone and as documented by the local new station in the last six months. Petitioner is furthermore asking that the Respondent compel the Onondaga County Sheriff's criminal Investigation Department fix its voicemail recording system (315-435-3081 – phone number) so that incarcerated individuals may be able to leave voicemail with any concerns and complaints that they may have because as of right now the Petitioner, and other incarcerated individuals are being informed that the voicemail recording box is full and cannot accept any further voicemail, which is a prejudicial error that is depriving Petitioner and other incarcerated individuals of the right to Petition for a redress of grievance to the government and to properly report deputies misconducts.

- (xii) Petitioner is asking that the Respondent be compelled to hold his employees accountable for their wrongful actions and to suspend the deputies who have a repeated history of battering incarcerated individuals and to require for them to take anger management classes, drug rehabilitation programs, participate in some local Syracuse community care programs along with participate in training programs that teach those deputies (again) on how to adequately talk to and treat incarcerated individuals in a professional manner, and of the importance of using de-escalating tactics and of the proper way to use minimum force that is not severely damaging to the health and safety of incarcerated individuals.

- (xiii) Petitioner is asking that the Respondent be compelled to equip audio devices on every Pod and on every floor of the Onondaga County Justice Center so that both Deputies and incarcerated individuals may be held accountable for their misbehaviors and improper comments towards each other.

- (xiv) Petitioner is asking that the Respondent be compelled to establish a new entity of people, outside of the Deputies, to be assigned with the responsibility of handling, reviewing and supervising the initial stages of grievance matters within the Onondaga County Justice Center because the issue hits at the core principle involving the nature of the high probability that biasness will egregiously be inflicted in a manner that wrongfully further causes prejudicial harm upon incarcerated individuals by depriving them of their First Amendment right to have access to the Court and to Petition to the government for a redress of grievances and of their fourteenth Amendment procedural due process rights.

- (xv) Petitioner is asking that the Respondent alongside with the undersheriff Jeffrey T. Passino, be compelled to physically make rounds on each Pod of the Onondaga County Justice Center inorder to make inquiries about the conditions and wellbeing of incarcerated individuals at least once a month (which should be documented in the logbooks of every Pod on every floor). This is an important aspect of Justice that must be taken, and should properly be logged and documented. Also the monthly visits will give the new detainees an opportunity to be able to hold the deputies accountable and give the detainees and other incarcerated individuals an opportunity to be provided with information and resources to address their concerns and questions further. The act is essentially a step in resolution of torts and the light of confidence in justice for all individuals within the Onondaga County Justice Center, from

incarcerated individuals to medical staff members, deputies, mental health workers and even civilian staff members who may also be able to address their concerns with the said Respondent.

- (xvi) Petitioner is asking that the Respondent be compelled to remove "Sergeant Leubner" (or the "John Doe or Jane Roe" designated sergeant responsible of supervising the mailroom duties, and of classifying incarcerated individuals as pro se litigants pursuant to Bounds v. Smith (1977( 430 U.S. 817, 52 L. Ed. 2d 72, 97 S.Ct. 1491, and of overseeing incarcerated individuals' grievance complaints; because of the fact that the said sergeant has repeatedly and unprofessionally neglected to conduct his or her responsibilities sufficiently, as evidence by the fact that Petitioner has repeatedly made attempts of communicating important facts to the sergeant without receiving any response back and because of the fact that the said sergeant has wrongfully failed to acknowledge Petitioner's pro se status for his habeas corpus case (see Barzee v. Yehl, No. 9:23-CV-10(GLS/ML)) which is being held in the Northern District Court and thereafter also refused and failed to provide the Petitioner with any assistance inorder to help the indigent Petitioner adequately file and submit papers to the Court. The said sergeant has also failed to cure the injuries wrongfully being inflicted upon the Petitioner, in this case Petitioner has repeatedly complained about the improper handling of his incoming legal mail and that his outgoing legal mail are not reaching their intended destinations or that only some of his outgoing legal mail reaches there intended party. Petitioner, herein asserts that he is not the only incarcerated individual complaining about this matter or that has complained about this matter.
- (xvii) Petitioner is asking that the Respondent be compelled to make his employees, working at Onondaga County Justice Center, file a sign logbook record of the deputies' names, title of job position, badge number, and of the date and time of picking up mail on each Pod of every floor; so that the said deputies can get held liable and accountable for misplacing or destroying incarcerated individuals' outgoing mail.
- (xviii) Petitioner is asking that the Respondent be compelled to make change in the language and rules pertaining to filing of outgoing mail for incarcerated individuals as described in the Justice Center Handbook for incarcerated Individuals. Petitioner is requesting that the language be changed from: "You will be required to have the return address filled out **with your name** and **cell number** and the letter addressed properly inorder for us to process your outgoing mail. The return address is as follows:

      Your name Cell Location
      Incarcerated Individual Correspondence
      555 South State Street
      Syracuse, New York 13202-2104

- Letters that are not acceptable will be returned to you, unless you fail to put **your name and cell location** on the envelope";
- To instead Read: "You will be required to have the return address filled out with **your name** and **ICN # number** (the last four individually assigned code numbers must be withheld, e.g. – 00110529 -- is the correct ICN # number to place on the envelope

instead of – 001105299530--) and the letter addressed properly inorder for us to process your outgoing mail. The return address is as follow:

Your Name ICN# No.
Onondaga County Justice Center
555 South State Street
Syracuse, New York 13202

- Letters that are not acceptable will be returned back to you (with instructions on how to properly fill out the envelope) Unless you fail to put **your name** on the envelope."

- The Reason for this requested change of language is because of the fact that Respondent's employees, working at the Onondaga County Justice Center, are throwing away and frequently misplacing incarcerated individuals' mail instead of simply just returning the mail back to the incarcerated individuals; and are maliciously using the language presently written in the Handbook as justification. It should be noted that incarcerated individuals are not expected to be housed at the Justice Center for excessive amount of time and so therefore the mailroom staff member **must be required** to be more understanding and considerate of incarcerated individuals' outgoing mail. Especially considering the importance of the outgoing mail and of the emotional impact upon the mental state in connection to the outgoing mail and of the unspoken matters these incarcerated individuals are dealing with pertaining to the criminal system, and of being away from family, friends and loved ones.

- (xix) Petitioner is asking that the Respondent be compelled to make his employees provide incarcerated individuals with the two FREE stamped envelopes. This rule was being followed until Respondent's employees realized that Petitioner among other incarcerated individuals being housed in the Special housing unit were using their envelope for legal matters such as lawsuits and make complaints about the wrongful actions being inflicted upon them. Now Petitioner is being retaliated against by deputies intentionally not handling out two Free weekly stamped envelopes, and thus this is violation of Petitioner's right pursuant to Correction law section 138(4).

- (xx) Similarly, Petitioner has repeatedly witnessed deputies deprive incarcerated individuals of their initial phone call privilege upon the first day of being admissioned into the special housing unit. Also Petitioner has been denied of the opportunity to use the phone on Sundays. Therefore, Petitioner is also asking that the Respondent be compelled to enforce the right of incarcerated individuals in the special housing unit, by making sure that his employee treat the incarcerated individuals fairly and not deny them of any privileges nor right as setforth in the Justice Center Handbook and pursuant to correction law 137 and as setforth herein.

- (xxi) The Petitioner is asking that the Respondent be compelled to provide incarcerated individuals with more job opportunities and to reduce the prices of food and hygiene products on commissary because job opportunities which pay rational wages for their labor and the reduction of prices on commissary will not only rationally reduce the inhumane conditions being suffered on a daily basis by incarcerated individuals within the Onondaga County Justice Center but will thereafter also instill in them the positive behavior and mindset of working productively in regular society upon their release. This will also encourage mental health awareness by not just simply teaching them of the importance of taking care of their hygiene but by showing the importance of self-respect and of the importance of the value of one's positive image among his or her peers in a

community. It should be noted that 85 % of incarcerated individuals are unable to financially take care of themselves and that without job opportunities and the reduction of commissary prices, this is a harmful financial disability that stands as an unfortunate blocking stone that is preventing these incarcerated individuals from being able to purchase commissary and adequately take care of their hygiene as evident from the foul odor seeping out of their clothes and in the nasty smell strongly circulating the atmosphere on every pod on every floor. It should further be noted that due to insufficient amount of food portions (and the unreasonable daily calorie intake) being served by the messhall, and the high commissary prices, many incarcerated individuals are intentionally lacking care of their hygiene by knowingly refusing to purchase hygiene products inorder to instead purchase food items so that they won't feel so extremely hungry. Human decency involves not forcing incarcerated individuals to choose between the basic human right of mental health and hygiene or food.

- (xxii) The Petitioner is asking that the Respondent be compelled to personally observe the amount of food being served on the trays for incarcerated individuals and to study the amount of weight lost by every incarcerated individual who is only able to eat the food provided three times a day by the messhall. Petitioner herein argues that evidence of this fact is presented by the amount of weight lost by every incarcerated individual of every size and shape placed in the special housing unit. Petitioner is asking that Onondaga County Justice Center stop serving two thin slices of bologna every lunch (mostly 90% of the time) with four slices of bread as the main dish during lunch because this is not enough food, especially when the dinner trays be of no help to incarcerated individuals calorie intake. Plus, many Muslim incarcerated individuals be complaining that all bologna has or is made up of pork. Also, the Petitioner is asking that the trays be cleaned properly because many of the trays be having foul odor. Petitioner is asking that the Respondent force his employees to provide more food for incarcerated individuals because 95 % percent of the detainees and incarcerated individuals, including petitioner, are being starved on a daily basis. The Respondent can do a survey, and should provide that survey to the New York State Commission of Correction Citizen's Policy and Complaint Review Council. It should also be noted that many incarcerated individuals are getting extorted of their trays and or are only gaining weight because of the fact that the fortunate incarcerated individuals are providing the less financially fortunate incarcerated individuals with their trays out of pity so that they won't starve as much. Therefore, the survey should be conducted on the individuals who are being housed in the special housing units, who are forced to only survive off of the three trays provided to them every day by the messhall.

- (xxiii) Moreover, the Petitioner is asking that the Respondent be compelled to maintain a facility that is correctly upholding human decency by making sure that every pod has a regularly flowing circulation of hot shower water, because that is not the case as of now where the only place that actually provides hot water is the special housing unit (and not even the general housing unit for incarcerated individuals with disciplinary sanctions on the same floor). Hot water will encourage incarcerated individuals to take a shower. Many incarcerated individuals, this including myself when I housed in general population on 3B floor, do not like nor want to take a cold shower and get out feeling more cold. This too is an unnecessary health risk which can easily be prevented by providing hot water for the showers.

- (xxiv) Petitioner is asking that the Respondent be compelled to re-install microwaves on every Pod so that incarcerated individuals can adequately warm up their food. The Hot Pot type system which is installed presently does not adequately cook the rice, noodles nor any food items which require hot water to cook.
- (xxv) Petitioner is asking that the Respondent be compelled to maintain a facility that is correctly upholding human decency by making sure that the cells are not maliciously blowing out cold air in vents to a degree that is of serious discomfort, as it is now. It should be noted that most of the cells in the Onondaga County Justice Center be wrongfully blowing out really cold air in the vent all year round, even in the winter. This stands as cruel and unusual punishment which violates incarcerated individuals' 8th Amendment rights.
- (xxvi) Petitioner is asking that the Respondent create and provide programs (out of cell) for incarcerated individuals to participate in and of other forms of recreation besides being in a single man caged rec pin for excessive amount of hours daily (because that act in itself is cruel and unusual, where incarcerated individuals can't get water, sit down nor move around free in adequate amount of spacing) while being housed in the special housing unit and or to re-provide incarcerated individuals with the opportunity to obtain a tablet in their cells for a sufficient amount of time daily or for the four hours established for program time which the facility is wrongfully attempting to state is credited for by: "Each incarcerated individual on confinement status will be required to have a minimum of 4 hours of out of cell time. Activities factored in out of cell time include, but are not limited to, showers, religious services, educational services, sick call, medical appointments, attorney visits, law library, court appearances, parole hearings, visitation and recreation. Any time you spend out of your cell is calculated into your daily out of cell time. In the event you were out of your cell for 4 hours (court, sick call, hospital, etc.) or more, for reasons other than recreation, you will be provided with an addition 1 hour of recreation/exercise." (This was stated from Onondaga County Justice Center Handbook for Incarcerated Individuals). This is in violation of Correction law 137, and it should also be noted that law library gets provided to incarcerated individuals in their cell and that the Respondent has failed to adequately provide book for incarcerated individuals to learn the law from and out of cell library time as alleged in the Handbook; which stated " IF you are on level 1 Administrative and or punitive segregation status, housed in any housing unit, you will need to request to go to the law library during the activity sign- up. You will either be transported to the location where the law library books (which are in compliance with Title 9 NYCRR 7031.4(d) are stored or the cart of books will be brought to you. You will be limited to 1 hour per day of law library access." It should be noted that the law library lady is dent in providing legal cases, copies and the books that she has available. However, that is the problem, she doesn't have many options of what she is capable of doing and providing due to the Respondent's negligence in obtaining numerous of books to offer incarcerated individuals besides the Gilbert and JLM (Jailhouse Lawyers Manual). These said books are good but are basic compared the more advance criminal system."

68.    Plaintiff asserts that Defendants Fodaro and Hujdur wrongfully denied the Plaintiff of his First Amendment constitutional right of having access to the Court and to communicate with the outside ("regular society") by wrongfully refusing to allow for the

Plaintiff to use the phone during the C Watch Shift on Thursday the 13th day of June 2024 (see grievance number "GR#24-0350"), and that their area supervisor, Defendant Dustin Saddock, added further insult to injuries by wrongfully refusing to provide the Plaintiff with a grievance complaint and instead told the Plaintiff that he does not care about the Plaintiff's concerns nor about the Plaintiff's request for a grievance. Plaintiff asserts that both Defendant Hujdur and Fodaro thereafter then begin to mock the Plaintiff throughout their work shift before then maliciously telling the Plaintiff "goodnight" in a mocking and sarcastic manner while the two defendants were leaving work to go home. Plaintiff asserted that the defendants' actions were conducted in retaliatory manner as a result of Plaintiff calling human rights & internal Affairs to complain about the mistreated and torts being wrongfully inflicted upon the Plaintiff (See grievance number "GR#24-0363").

69. It should be noted *that* the Plaintiff was further mistreated by Defendant Fodaro during C Watch Shift on Friday, June 14th 2024, as a result of the Plaintiff complaining about being denied of his right to use the phone wrongfully on Thursday June 13th 2024. Plaintiff asserts that Defendant Fodaro wrongfully forced the Plaintiff to sit on his bunk during the service of the dinner trays even though there exist no rule that says as much and that the Plaintiff was never placed on any restrictions nor deprivations which were rendered as a disciplinary sanction in connection to a misbehavior report (See grievance number "GR#24-0362"). Plaintiff asserts that Defendant Fodaro repeatedly mocked Plaintiff by telling the Plaintiff that he would only get "the bare minimum" every time the defendant worked.

70. Plaintiff asserts that United States Magistrate Judge (Honorable) Miroslav Lovric rendered an Order on Thursday June 13th 2024 that stated:

- "Petitioner was provided with an opportunity to file a reply. KT. No. 31, Text Order. Petitioner filed a traverse; however, it appears that the Court received the document on two different days by two separate filings. See Dkt. No. 36, Travers (including pages 19 through 30 of petitioner's memorandum of law); Dkt. No. 38, Memorandum of Law (providing the first half of petitioner's reply brief, specifically pages 1 through 18). Consequently, the case is now fully briefed and awaiting consideration by the Court.

  Presently before the undersigned is a motion seeking court-appointed counsel. Dkt. No. 39. Specifically, petitioner seeks an attorney's assistance for the sole purpose of ensuring that the Court has petitioner's entire reply brief before it for consideration so that petitioner "may guarantee that (his) papers and arguments substantially reach the Court." Id. At 1. Petitioner also included another copy of his reply brief/Traverse for the Court's consideration. Id. At 2-38.

  The Court has compared the most recent submission with the two prior submissions and determined that they are identical. *Compare* Dkt. Nos. 36 &38, with, Dkt. No. 39. Consequently, this renders petitioner's motion moot."

71.     Plaintiff asserts that the harassment suffered from by Defendants Hujdur and Fodaro
        continued on Wednesday June 19th 2024, where the Plaintiff was wrongfully denied of a
        shower by Deputy Fodaro and then the deputy continuously mocked Plaintiff.
        Thereafter, Defendant Hujdur then wrongfully opened Plaintiff cell door after Defendant
        Fodaro had wrongfully instructed the Plaintiff to sit down on his bunk inorder to get
        served his dinner tray before then threatening to pepper spray the Plaintiff if the Plaintiff
        approached to two defendants (see grievance number "GR#24-0370").

72.     Therefore, on June 20th 2024, the Plaintiff felt it compelling to write a letter to
        Defendant Tobias Shelley inorder to give the Onondaga County Sheriff notice that the
        Plaintiff had filed an Article 78 Petitioning about the wrongdoings that were wantonly
        and unnecessarily being inflicted upon the Plaintiff by the employees and agents of the
        defendant. The Plaintiff further gave the Sheriff notice that the Plaintiff was wrongfully
        being harassed by numerous of deputies ("specifically, Wagner and Fodaro, and sergeant
        McPartland, Sarno and Lorenzo are being deliberate indifferent by refusing to correct the
        deputies actions and by refusing to give (Plaintiff) grievance complaint forms").
        However, the Plaintiff asserts that he even had to file a grievance about the fact that not
        all of his motion papers were received by the Onondaga County Supreme Court in
        relation to the Article 78 Application that Plaintiff had submitted (see grievance number
        "GR#24-0372").

73.     Also on that same day of June 20th 2024, the Plaintiff had to resubmitted his Order to
        Show Cause papers along with his Affidavit In Support of the Order to Show Cause
        papers because the Onondaga County Justice Center staff members had wrongfully
        removed papers out of the Plaintiff's outgoing legal mail. On June 24th 2024 the Plaintiff
        then wrote a letter to the Clerk's office of the Onondaga County Unified Court System
        inorder to ask for the Court to provide the Plaintiff with an acknowledgment of receipt of
        the papers which the Plaintiff had to resubmit.

74.     Plaintiff asserts that, on Tuesday, June 25th 2024, he purchased Thick Prayer Beads
        (Commissary item number #5546), which costed him $12.31, and then used the said
        beads as the link of the chain for his new Voodoo necklace. Plaintiff asserts that he also
        added some of his fingernails, some of his own hair and blood, along with some Rosary
        Beads so that the necklace could have color and balance. Plaintiff assert that his Voodoo
        necklace brought him peace, sanity, good luck and motivation for a better future life.

75.     Plaintiff asserts that two alleged field agents working for the Commission of Correction
        were conducting an inspection of the Onondaga County Justice Center's Special
        Housing Unit on approximately the 8th day of July 2024 around 2:30 pm to 3:30 pm.
        During this time Plaintiff asserts that he personally spoke with "Rich" and had a brief
        conversation with "Paul" about the conditions surrounding his wrongful confinement in
        the Special Housing Unit and also made a complaint about the fact that the Plaintiff had
        written numerous of grievances about the way he has been getting mistreated without
        getting any form of resolution and about the fact that Plaintiff had serious concerns
        about the mishandling of his in-coming and out-going legal mail. Plaintiff asserts that it
        was at this time that he was informed about the laws and regulations that governs local

Correctional facilities and thus Plaintiff thereafter told Defendant Fodaro that he was about to get more than the bare minimum because he now knows of the N.Y.S. Minimum Standards that govern the facility.

76.   Plaintiff asserts that he thereafter wrote a letter, On July 11th 2024, to the Criminal investigation Unit of the Federal Bureau of Investigation located at 26 Federal Plaza 23rd Floor in New York, New York 10278 inorder to inform the FBI that the Deputies (and Defendants) whom are responsible of operating the daily activities within the Onondaga County Justice Center are wrongfully violating Plaintiff's first amendment right to communicate with the court by intentionally withholding from mailing Plaintiff's outgoing legal mail for unauthorized amount of days in order to attempt to deprive the Plaintiff of the opportunity of meeting his court established deadline dates. Plaintiff thereafter asserted that he had proof and that the Plaintiff had wrote many grievances about his concerns without getting any form of resolution. Plaintiff then asserted that he would like for a criminal investigation to be conducted and to be interviewed by a field agent so that the Plaintiff could address the field agent about his concerns, and about the fact that the Deputies have assaulted him and have also threatened to kill the Plaintiff.

77.   Plaintiff asserts that, On July 14th 2024, he also had to resubmit his Response Memorandum of law papers along with his four page affidavit in support of the Plaintiff's said Memorandum of Law to the Federal District Court of the Southern District of New York in relation to the Plaintiff's 42 U.S.C. Section §1983 Civil Action Lawsuit (See Barzee V. Abdulla, Et. Al., Case No 7:23-2328 (PMH)). Plaintiff specifically asserted that he was resubmitting his motion papers because of the fact that the attorney that is assigned to provided assistance for the plaintiff from the NYLAG PRO BONO agency recommended to the Plaintiff by the Court, to wit: "Jimmy Taylor", had informed the Plaintiff that the Court's Docket sheet had not as of yet (and that was on the 11th day of July 2024) received the Plaintiff's Memorandum of Law (which was originally submitted on the 2nd day of July 2024).

78.   The Plaintiff was wrongfully deprived of his opportunity to commence with filing an Article 78 proceeding in order to challenge the wrongful confinement and mistreatment being unjustifiably inflicted upon him; where, on the Fifteenth day of July 2024, Honorable GERARD J. NERI rendered that:

   • "The Court is in receipt of your proposed order to show cause and supporting CPLR Article 78 petition. At this time the Court is declining to sign your proposed order to show cause (see GreenHaus v. Milano, 242 A.D.2d 383, 384; see also CPLR §403). Some of the relief Petitioner seeks is not on behalf of himself, but instead on behalf of others. As Petitioner is not an attorney admitted to practice law in the State of New York, he may not represent others in legal proceedings. Other claims have no basis in law. Therefore, the Court declines to sign the proposed order to show cause. The Court encourages Petitioner to consult an attorney."

79.   On July 15th 2024, the Plaintiff wrote a grievance complaint complaining about the mishandling of his legal mail and thereafter also challenged the fact that the Onondaga

County Justice Center is wrongfully asserting that the facility does not provide incarcerated individuals with the opportunity of mailing out their mail via certified mail-return receipt (see grievance number "GR#24-0423"); and which the facility wrongfully denied before stating that: **"There is no requirement that a local correctional facility offer certified mail and at this time, the Justice Center does not offer it."**

80.    Plaintiff also wrote a grievance pertaining to the fact that Defendant Hujdur had maliciously informed the Plaintiff on the 12th day of July of 2024 that the Plaintiff had two pieces of legal mail that was delivered for him but only gave the Plaintiff one piece of mail (see grievance number "GR#24-0380"). Plaintiff asserts that he had waited a few days to see if another deputy would provide the missing piece of mail to him before then filing a grievance. Plaintiff herein asserts, arguendo, that defendant Hujdur actions are still wrong even if the Plaintiff was only supposed to get one piece legal mail because of the fact that it caused emotional stress upon the Plaintiff and it goes to show of the wickedness of the defendants' action where it is a known fact that the plaintiff had filed numerous of grievance about the mishandling of his legal mail.

81.    On July 18th 2024, Defendant Randall Sanderson wrongfully conducted a malicious intended cell search of Plaintiff cell while the Plaintiff was not physically present to view the cell search. Plaintiff assert that Defendant Randall Sanderson's malicious intentions were revealed by the fact that the Defendant removed staples from the Plaintiff's legal papers and then declared that the staples were "altered" and "were wrapped in toilet tissue which indicated that the Plaintiff intended to conceal them and deter detection." Plaintiff asserts that Defendant Randall Sanderson's lack of explanation for why the Plaintiff would even alter staples (if even possible) and of how the staples even if, arguendo, "altered" posed any threat to the safety and security of the facility. Plaintiff asserts that Defendant Dustin Saddock thereafter then wrote the Plaintiff a misbehavior report about matter which the said defendant was not even physically present for himself. The said Misbehavior report alleged that:

   • "During a standard cell search it was discovered that you were in possession of six (6) Motrin pills. Although this medication is prescribed specifically to you, it is still in violation of the I/I handbook and facility rules to hard medication. The hoarding of medication creates a direct health risk to you and others. The standard search of your cell also produced three (3) altered metal staples wrapped in toilet tissue which indicated intent to conceal them and deter detection. Possession of altered or unallowable items is considered contraband and is in violation of facility rules."

82.    Defendant Fodaro, Dustin Saddock, Ethan Perry and Alton Apples escorted another incarcerated individual (as part of S.E.R.T. Team Move) to 39 cell of special housing unit number #3 at approximately 5:30 pm on the 21st day of July 2024. It was at this time that the Plaintiff started hearing defendants wrongfully harassing and battering the newly admitted incarcerated individual. Plaintiff asserted that he then started yelling "let the record reflect that the incarcerated individual has stated that he is not resisting". Plaintiff asserts that the Defendants therefore stated that the Plaintiff had to be quiet and get away from his cell door. However, the Plaintiff admittedly asserts that he refused to be quiet

and that he thereafter then also stated that defendant Dustin Saddock was intentionally blocking the EQV camera view by standing in-front of the camera and that the said defendant was also wrongfully standing in-front of the cell door so that the other SHU cameras could not get a clear view of the tortful actions being committed within the cell. Plaintiff asserts that Defendant Ethan Perry stated that the newly admitted incarcerated individual was in jail for a rape case after the Defendants existed the said incarcerated individuals' cell.

83.    Plaintiff asserts that Defendants Fodaro, Alton Apples, Ethan Perry, and Dustin Saddock then maliciously approached the Plaintiff's cell angrily and told the plaintiff that they were going to conduct a cell search. It was at this time that the plaintiff asked for what reason, only to thereafter be told that the Defendants could do whatever they wanted. Plaintiff asserts that he stated that the Defendants had no justifiable reason to search his cell and that this fact seemed to irritate the Defendants and caused Defendant Alton Apples to start putting the key in Plaintiff's door as an indication that the Defendants were simply just going to go into the cell and then place mechanical restraints on the Plaintiff's wrist and or do some other unprofessional actions. Plaintiff asserts that Defendant Dustin Saddock then instructed for the Plaintiff to simply comply with the malicious intended cell search. Plaintiff allowed for the Defendants to place mechanical restraints on plaintiff's wrist and complied with all of the instructed given. Plaintiff asserts that the handcuffs were placed extremely tight on his wrist and that Defendant Alton Apples kept kneeing the back of the Plaintiff's left knee in attempt to make the Plaintiff fall so that the said defendant could then use that as justification to wrongfully batter the falling Plaintiff.

84.    Additionally, Plaintiff also asserts that Defendant Fodaro maliciously conducted the cell search in a manner that intentionally destroyed the plaintiff's legal papers and that Defendant Fodaro also poured the liquid that was in the spray bottle in Plaintiff's cell onto some of the Plaintiff's legal papers before then taking the bendable metal staple that was being used to keep together Plaintiff's two hundred plus 42 U.S.C. §1983 lawsuit complaint papers that were submitted to him from Assistant Attorney General Elizabeth Barbanes and wrongfully claiming that the Plaintiff was in possession of a dangerous contraband. Plaintiff asserts that he was placed back into his cell and that Defendant Alton Apples then attempted to grab him further into cell (with the sole purpose of wrongfully battering the Plaintiff off camera) and away from where the Plaintiff was standing near his cell door (which the Plaintiff knew was still within the SHU cameras view point). Plaintiff asserts that Defendant Alton Apples then started to bend and twist the Staple in order to make it appear as if the Plaintiff had altered the item into a contraband. Plaintiff asserts that Defendant Alton Apples had gloves on and was unprofessionally attempting to alter the staple into a dangerous contraband while still in the Plaintiff cell and that the Defendant continued to wrongfully attempt to the alter the item even after leaving Plaintiff's cell. Plaintiff then asserts that Defendant Dustin Saddock then declared that the Staple was a new charge.

85.    Thereafter, Plaintiff asserts that he received an Inmate Misbehavior Report/Hearing Notice paper which alleged that:

- "During a **standard search** of your cell (cell 29 of Pod 5BSH3) it was discovered that you were in possession of a piece of metal believed to be from legal work. It was evident you manipulated this metal from its intended purpose and made an effort to conceal this piece from detection. It was also discovered that you were in possession of a spray bottle and a hard plastic meal tray. Both of which you are required to return to staff and are not allowed to be in possession of. It was evident that you attempted to conceal both these items as well."

86.    Defendant Fodaro thereafter wrote an Incident Report that stated:

- "On the above D/T, I was in pod 5BSH-3 and entered cell 29 that was assigned to Barzee. During my search, located a piece of metal with the imprint "staples" on it. The piece of metal was approximately 4-6" in length and appeared to have been manipulated to form what I interpreted to potentially be a "shank" or a weapon. **I secured the item in my left pants pocket** and continued my search. I also located a facility issued spectrum spray bottle and a hard plastic tray from the facility's kitchen. Nothing further of evidentiary value was recovered."

87.    Defendant Fodaro also wrote a Supplemental report which stated that:

- "On Sunday 21July2024 at approximately 1739 hours, I was in pod 5BSH-3 and went to conduct **a random cell search** of cell 29, which was currently assigned to and occupied by Saio Barzee(11001866). Barzee was handcuffed and removed from the cell, and placed on the wall to the right of the cell door. I entered the cell and observed a several large stacks of paperwork located in front of the cell bunk, under the cell desk and on top of the cell desk. I began my search at the cell's desk and began searching the items present. While I was searching one of the stacks of paper, which contained a mixture of what appeared to be personal paperwork, legal paperwork, file folders, envelopes, mail, **printed pictures from the mail** and paperwork that is distributed from the facility's mental health department (crossword puzzles, word search, etc), I located a long piece of metal that appeared to have been strategically placed between pieces of paper and a folder, in what I perceived as an attempt to conceal it. The piece of metal appeared to be approximately ¼" in width and approximately 4-5" in length. The metal had a "staples" brand logo imprinted on it. This piece of metal appeared to have been manipulated as one of the ends had been folded, leaving a long, sharp end present. In my 9 years of experience in correction facilities, I have located many items similar to this and interpreted this item to be a "shank" or weapon that was fabricated by the incarcerated population. **Please note, Barzee is housed in pod 5BSH-3 for a similar offense (reference DR# 24-269310)**. I alerted 810 Sergeant Saddock, who was present for the search, of my findings and continued with my search. Being that the piece of metal had appeared to have been concealed to avoid detection, I searched all remaining paperwork and file folders to rule out another evidentiary items. After searching the remainder of the property in the cell, nothing of similar nature was located. Other than the piece of metal, I located a facility issue spray bottle, and hard, plastic facility issued meal tray, under near the

cell bunk. Both of those items were covered with a mesh property bag, also in what appeared to be an attempt to conceal those items.

The Search was concluded, and Barzee was placed back in his cell without incident.

**The piece of metal was brought to the Justice Center Operations Office to have a paper copy made of it to be distributed to uniformed staff**. Per Lieutenant Woods, **the piece of metal was discarded outside of the secure part of the facility**. 810 Sergeant Saddock present and notified."

88.     First, the Plaintiff asserts that he had submitted numerous of sick-call callout forms to the medical department on numerous of different days requesting to be weighed so that he could get provided with double portion trays and or get placed on a high protein-high calorie medical diet as a result of losing over fifteen pounds of weight since being wrongfully confined in the Special Housing Unit (29 cell of SHU-3) on April 23rd 2024. Plaintiff asserts that he felt malnourished and was suffering from muscle fatigue and joint pain stemming from the continuance loss of weight and lack of ability of adequately exercising his muscles. Plaintiff asserts that he had also submitted another sick-call callout form the day prior and that he thus did not know when his request would be properly attended to (if at all) nor did he expect for the nurse to actually arrive to his cell for medical evaluation on the Morning of Tuesday July 23rd 2024.

89.     Secondly, the Plaintiff asserts that he had informed the female medical nurse (whom Plaintiff believe is named "Sya") along with defendants Daniel Gratien and Sergeant Casey McPartland upon their arrival to the Plaintiff's cell, that the one (orange and white striped) jumpsuit that Plaintiff had been wearing on a regular daily basis was wet as a result of the Plaintiff having to personally hand wash the dirty, foul smelling jumpsuit along with his dirty, foul smelling white underclothes (which consist of T-shirts, Boxers and socks) the night before. Plaintiff asserts that he informed the defendants and the nurse that he had to personally hand wash his clothes even though that same act itself is considered against the normal rules and regulations established for incarcerated individuals being housed within the Special House Unit (SHU-3) of the Onondaga County Justice Center because of the fact that the Plaintiff did not want to lose any more of his personal items[1] (specifically speaking, his clothes) by using the facility's laundry system. Plaintiff also asserts that the facility does not provide the Incarcerated Individuals with the ability of getting new supplies of Sheet, blankets and towels.

---

[1]PLaintiff asserts that his clothes never get returned back to him every time he places his clothes in a net bag designated for the deputies to drop off in the SHU-3 bid(s) established for incarcerated individuals to use for washing their clothes by the facility. Plaintiff asserts that he beliefs that the deputies intentionally misplaced his personal clothing so that he would suffer from further inhumane living conditions and that the deputies actions stand as cruel and unusual punishment which went uncured even after the Plaintiff notified the Deputies of their mistakes and wrongful actions.

90.    Plaintiff asserts that he attempted to explain to the staff members that it would not have
       been rational for him to put on a wet jumpsuit while getting weighed because it would
       add on extra weight and that his request to get weighed was important as it pertained to
       his ability of being able to be provided with adequate nutrition diet. Plaintiff also tried to
       reason that because he had on a T-shirt over his long-sleeved thermal shirt and two pairs
       of boxers along with a pair of socks and shoes that it was more than appropriate for the
       Plaintiff to quickly step out of his cell and get weighed.

91.    Plaintiff declares that the female medical nurse got impatient with Plaintiff's
       explanations and thus ignored the Plaintiff's request to simply just use the scale in his
       cell so that he could just rationally weigh himself while the deputy stood by and watched
       the scale to make sure that the Plaintiff was not fabricating his weight.

92.    Plaintiff admittedly declared that the staff members' actions highly upset him and that
       the staff member's actions cause for the defendant to start verbally disrespecting
       sergeant McPartland for "being fucking stupid" and an "irrational" "smartass" (as stated
       by the Plaintiff). Plaintiff asserts a verbal disagreement occurred between him and
       Defendant McPartland and that Defendant McPartland participated in the verbal back
       and forth disrespectful banter. Plaintiff asserts that it was at this time that sergeant
       McPartland left and made phone calls in order to place the Plaintiff in the four-man unit
       as a form of retaliatory treatment to get back at Plaintiff for their back and forth banter.

93.    Thereafter, Defendant Casey McPartland maliciously attempted to move the Plaintiff
       from 29 cell inorder to place the said Plaintiff in 23 cell of the Special Housing Unit
       (SHU#2). Plaintiff asserts that the four-man unit (SHU-2) is officially designated as the
       unit for contraband watch and as a place where the facility could house incarcerated
       individuals who are suffering from mental health issues and or are presently claiming to
       be suicidal or homicidal. Plaintiff asserts that there is a table on the "flats" (ground level)
       of the Housing Unit along with a chair for the Deputies to use whenever it is deemed
       necessary to use for the observation of incarcerated individuals on suicide watch status
       and or on contraband watch. Plaintiff also asserts that there are cameras infront of the
       cells which have the access of looking directly into the cells on the Unit. Plaintiff asserts
       that there are no table within the cell (so that Incarcerated Individuals cannot use the
       medal frame as an object to hurt themselves) and that the beds are also on the floor (so
       that Incarcerated Individuals may not again use the medal bedframe as an object to hurt
       themselves).

94.    However, Plaintiff asserts that the Deputies and other administration staff members were
       wrongfully using the four-man Unit as an area to houses incarcerated individuals that the
       deputies do not like under the justification that those said incarcerated individuals are
       "trouble makers". Plaintiff further asserts that incarcerated individuals are maliciously
       neglected of regular daily activities and privileges and wantonly and unnecessarily
       mistreated (such as being denied adequate medical treatment, provided with extra small
       proportions of food, placed in unhygienic living conditions, denied adequate law library
       assistance and denied of the ability to adequately grieve of their mistreatment) while
       being housed in the four-man unit of the Special housing Unit.

95.   Plaintiff asserts that he had a disagreement with sergeant McPartland as a result of being
      frustrated with the fact the he did not have a clean jumpsuit to wear inorder to get
      weighed during the routine morning nurse evaluation, and even informed the deputies
      that he didn't even have any extra clean clothes to wear beside the clothes that he was
      then presently wearing on his body.

96.   Plaintiff asserts that he refused to move and had called the district attorney's office in
      order to notify them that Plaintiff is in fear of being physically battered wrongfully by
      the same deputies whom have already been wrongfully violating the Plaintiff's right of
      being free from Cruel and Unusual punishment as is setforth by the "Bill of Rights"
      under Article one, Section Five, of the New York State Constitution and by the Eight
      Amendment of United States Constitution. Plaintiff informed the Onondaga County
      District Attorney's Office that the deputies have been (1) encouraging other incarcerated
      individuals to throw feces at the Plaintiff (defendants Gerard Wagner and Daniel Gratien
      committed this act) and or to outright batter the Plaintiff, (2) opening the Plaintiff's
      incoming legal mail outside of the Plaintiff's presence and thereafter also wrongfully
      and unjustifiably opening the Plaintiff's outgoing legal mail outside of the Plaintiff's
      presence or withholding delivering the Plaintiff's legal papers for weeks with the
      malicious intent of depriving the Plaintiff of being able to adequately exhaust his legal
      remedies, (3) giving the Plaintiff small proportions of food, (4) threatening to kill the
      Plaintiff (both defendants Gerard Wagner and Marc Sarno Committed this act), (5)
      physically assaulted the Plaintiff by attempting to break his right hand while the Plaintiff
      was surround by SERT deputies and was in mechanical restraints, (6) wrongfully
      providing information about the Plaintiff's criminal case to other incarcerated
      individuals within the Onondaga County Justice Center, (7) placing the Plaintiff in
      extremely cold cells, (8) slandering the Plaintiff's character as of being a sex offender
      wrongfully (defendants Ethan Perry, Fodaro, Alton Apples, McLaughlin, Dustin
      Saddock, M. Cullen and Gerard Wagner wrongfully committed this act), (9) wrongfully
      keeping Plaintiff in the Special Housing Unit for an illegally excessive amount of time in
      violation of both Correction Law  section §137(6)(i) and Correction Law section §500-k,
      and  (10) thereafter also wrongfully failing to adequately investigate into the Plaintiff's
      grievance complaints and or allow for the Plaintiff to adequately appeal his grievance
      complaints to the Commissioner of Commission of Correction or to the Citizen's Policy
      and Complaint Review Councils.

97.   Defendant Devin Reschke had to use chemical agents, to wit: pepper spray, on the
      Plaintiff before Plaintiff then complied to move from 29 cell. SERT Team Deputies
      allowed for the Plaintiff to wash the pepper spray from his eyes briefly before then
      moving the defendant to SHU 23 cell within the four-man Unit. Plaintiff first asserts that
      he was never provided with a new blanket and sheets and thus had to sleep on the same
      blanket and sheets that were just previously contaminated with pepper spray. Also,
      Plaintiff asserts that the Plaintiff's new cell (5BSH 23 cell of SHU-2) was infested with
      dried up feces. Plaintiff asserts that this fact caused the cell to smell extremely foul and
      to have an unhygienic odor that could not be washed away. Plaintiff complained about
      the retaliatory treatment without getting any form of cure.

98.     Upon information and belief, at approximately 4:23 P.M. on July 23rd 2024, the Plaintiff
        was provided with a Misbehavior report written by Sergeant Casey McPartland and
        which stated:

- "While housed in Pod 5BSH3 cell 29 a Nurse came to your cell door to weigh you.
  Sworn staff advised you to put your issued jumper on to be properly dressed for the
  Nurse which you refused to do. You then started yelling out your cell door to suck your
  dick refusing all orders to stop causing a disruption to the good running order of pod
  5BSH3. You then were informed you would be moved to pod 5BSH2 which you refused
  to move on your own stating we could not make you move. A full SERT team was
  needed to move you. After the move while going through your property you were found
  to have pills in your property. Your actions violate the inmate handbook and case a
  disruption to the good running order of the Justice Center."

99.     The "Inmate Misbehavior Report" charged the Plaintiff with violating the rules proposed
        under section §100.16 (Harassment 2nd), section §100.20 (Threats 1st), section §100.24
        (Sexual Harassment), section §200.24 (Stockpiling medication 2nd), section §400.10
        (Refusing an Order 5th), section §400.11 (Refusing an Order 4th), section §400.29
        (Contraband 3rd), section §400.30 (Contraband 2nd), section §400.38 (Required
        Reporting of Staff 1st), section §400.48 (Inciting 3rd) and section §600.10 (Regulation
        violation).

100.    Plaintiff asserts that he filed two different grievances during the B Watch Shift on the
        25th day of July 2024 which complained about the fact that the Plaintiff was wrongfully
        being confined in an extremely cold cell (23 cell within SHU-2) that has a foul smelling
        odor and dried up old feces on the floor corners and walls and that has no table and a
        mattress that is on the floor level (see grievance numbers "GR#24-0438" & "GR#24-
        0386"). Plaintiff also complained about the fact that he was being wrongfully housed in
        an unauthorized area of the facility that is only designated for incarcerated individuals
        suffering from emotional stress and or mental health issues, and that the Plaintiff was
        maliciously being housed there as retaliatory treatment for filing grievances (also see
        grievance number "GR#24-0433") and that the said incarcerated individuals that were
        being housed within that said housing location were suffering from extreme mental
        health issues and thus were causing Plaintiff extreme mental anguish. Also Plaintiff
        noted that he was losing weight and had still not been provided with the opportunity to
        get double portion trays and or get place on a high protein/high calorie diet as request.
        Plaintiff asserts that the grievance committee wrongfully claimed that the foul smell was
        not able to be substantiated after two staff members inspected the cell and that the staff
        member who had inspected Plaintiff's cell had observed and removed several food trays
        before than maliciously declaring that the foul odor could be due to the fact that the
        Plaintiff had created a potentially unhealthy and dirty environment by having trays in his
        cell.

101.    Plaintiff asserts that he had clearly requested to speak to Defendant Tobias Shelley so
        that a criminal investigation could be commence in relation to the mistreatment that the

Plaintiff was complaining about under grievance number "GR#24-0438". Plaintiff asserts that he declared that: "I would like to be housed in an area that meets the standards of human decency established for prisoners under the Eighth Amendment of the United States Federal constitution, I would also like to adequately have my Inmate Referal forms picked up daily and all retaliatory treatment to be stopped, and to speak with Tobias Shelley." However, Plaintiff asserts that the facility maliciously denied him of this right inorder to cover up for the tortful actions being committed by the defendants and other Deputies within the facility. Plaintiff asserts that the grievance committee wrongfully declared that: **"Your request to speak with Sheriff Shelley is also denied, as this request is outside the scope of the grievance process and is also denied."**

102.    Plaintiff asserts that his other submitted grievance complaint (see grievance number "GR#24-0386") complained about the fact that administration staff member neglected to pick up mail, Incarcerated Individual Referral Forms and other substantial papers from the housing unit that the Plaintiff was being housed in. Plaintiff also asserts that he was not being provided with notary services nor law library assistances as a result of being housed within that said housing location. Again the Plaintiff had complained about the foul odor smell and again the grievance committee wrongfully claimed that "cell 23 had been terminally cleaned previously and it was inspected and cleaned before you were moved into the cell" and that I'm not being denied of any of the right to have notary service, law library and or of the right to use the Incarcerated Individual Referral Form because the referral slips are picked up every day.

103.    Plaintiff asserts that, during the B Watch Shift on Tuesday July 30th 2024, he was served with a Styrofoam tray which already had the peanut butter open and spread out in the tray.  Plaintiff also asserts that he requested for criminal charges to be filed against "deputies Fodaro, Apples, Perry, Saddock, Sarno and Wagner". Again the Plaintiff wrote a grievance complaint which continued to complain about the inhumane living conditions which he was wrongfully suffering from and this including the fact that the Plaintiff was also wrongfully being served with a Styrofoam tray (which came with a paper spoon and open food items that would have normally been delivered seal, such as peanut butter, jelly, and was completely missing food items such as mayonnaise, mustard, and ketchup) during the service of every meal. Plaintiff also asked for a criminal investigation to be commence in order to inquire about the fact that deputies maliciously fabricated misbehavior reports against the Plaintiff and are wrongfully trying to cause Plaintiff extreme and outrageous emotional distress, threatening Plaintiff, slandering his character, and are depriving the Plaintiff of his right to communicate with the court effectively.

104.    On July 30th 2024, Plaintiff was also escorted to Room 77 by Defendant Kolakowski inorder for a formal disciplinary hearing to be conduct pertaining to the misbehavior reports written by defendant Casey McPartland and Dustin Saddock. Before going the Plaintiff asserts that he had given his grievance appeal papers to Defendant Kolakowski because of the said fact that the said defendant stated that he worked within that same office and could simply just drop off the appeal papers for the Plaintiff. Thereafter, Plaintiff asserts that he went to his formal disciplinary hearing where a bias and partial

hearing procedure was conducted in violation of Plaintiff Fourteenth Amendment due process rights. Plaintiff asserts Defendant Kolakowski wrongfully turned off the hearing tape once he realized that the Plaintiff had learned about the rules and regulation which govern disciplinary procedures. Plaintiff asserts that he was wrongfully removed from hearing room and was thereafter denied of his right to have assistance and review video footage evidence along with being wrongfully stripped of the right of being present during the rest of the hearing procedures conducted in relation to the hearing commenced on July 30th 2024. Plaintiff asserts that later on that same day he had called the Onondaga County District Attorney's office in order to attempt to file criminal charges against the defendants that were wrongfully mistreating the Plaintiff without being provided with the equal due process right.

105.    Plaintiff also asserts that, during the C Watch Shift on July 30th 2024, he appealed his grievance complaint (pertaining to grievance number "GR#24-0433") which involve matters relating to being wrongfully confined in the Special Housing Unit beyond the 15 days' timeline authorized pursuant to correction law 137(6). Specially, Plaintiff asserts that he stated: "I Have been L2 status since April 23[rd] and was placed in 29 cell since April 23[rd] 2024, and have conducted myself rationally until the deputies started fabricating misbehavior reports" against the Plaintiff.

106.    During the early hours of the morning (after the service of the breakfast trays) on the B Watch Shift of July 31st 2024, Plaintiff asserts that he spoke with Defendant Captain Nathan Hawker about the way he was being mistreated and had asked for the said defendant to file criminal charges after conducting a criminal investigation pertaining to the allegation raised by the Plaintiff. Plaintiff asserts that he even attempted to show Defendant Hawker all of the exhibit that he had in relation to his claim that deputies within the Onondaga County Justice Center were wrongfully mishandling the Plaintiff's outgoing and incoming legal mail. Plaintiff asserts that Defendant Hawker stated that he "would let Deputy Reschke" know of the matter. However no form of cure nor resolution was rendered nor did Defendant Devin Reschke ever interview the Plaintiff in order to get an inquiry about Plaintiff's concerns nor did Defendant Reschke conduct any form of investigation on the behalf of the Plaintiff as requested by the Plaintiff.

107.    Rather instead, Plaintiff asserts, upon information and belief, that he spoke with Detective Alexander Hebert on the 31st day of July 2024 and that the defendant Hebert thereafter informed the Plaintiff that new criminal charges were being prosecuted against the Plaintiff in connection the two misbehavior reports written by defendants Dustin Saddock and Casey McPartland and that the Plaintiff was being prosecuted for two counts of Promoting Prison Contraband in the Second degree in violation of New York State Penal Law section §205.20(2). Plaintiff asserts that at this time he also asked the Detective to inform him of how to file criminal charges against the Deputies whom were slandering his character, wrongfully disclosing personal information pertaining to his case to other incarcerated individuals and whom had threatened to kill the Plaintiff as well as wrongfully attempted to falsely incriminated the plaintiff by altering items in order to make it appear as if the Plaintiff had possess contraband. Plaintiff asserts that Detective Alexander Hebert wrongfully informed the Plaintiff ("again") that he was not

in charge of commencing with criminal charges against deputies and that the Plaintiff had to address his concerns with either Devin Reschke and or Internal Affairs.

108.    Moreover, Plaintiff asserts that it was at this time that Defendant Alexander Hebert then provided a piece of paper that had the phone number for how to get in contact with Internal Affairs before stating "I told you I was going to get you the number for Internal Affairs".

109.    Also on the 31st day of July 2024, the Plaintiff asserts, upon information and belief, that he was brought in-front of the Onondaga County City Court in order for "The People" of the state of New York (Onondaga County District Attorney's office) to commence with prosecuting criminal charges against the Plaintiff for the two count misdemeanor charges of Promoting prison contraband in the second degree. Plaintiff asserts that he therefore addressed the Local Syracuse City Court about having problems with Deputies mishandling his incoming and outgoing legal mail, deputies slandering his character and disclosing personal information about his criminal case to other Incarcerated individuals within the Onondaga County Justice Center.

110.    Plaintiff asserts that, on August 1st 2024, he attempted to call the District Attorney's phone number inorder to inquire about whether or not the District Attorney's office had received the Legal Papers that the Plaintiff had submitted to their office, but was prevented from doing so by the facility and thus plaintiff asserts that this was the facilities attempt of wrongfully preventing the Plaintiff from being able to call the District Attorney's office inorder to request for criminal prosecution to be commenced against them for their wrongful actions.

111.    Plaintiff asserts that, on Friday, August 2nd 2024 during the B Watch Shift, he was served a Styrofoam tray that was abnormally below the standard amount of food usually served for even him (because the Plaintiff had already been being served small proportions) and that his meal was extremely cold during breakfast. Plaintiff also asserted that Defendant J. Lantry made a reference to his criminal case ("again," as the defendant had made the same comment prior when the Plaintiff was being housed within 29 cell of SHU-3) by specifically stating "this is not burger king, you can't have things your way." Plaintiff then found an abnormal item in his lunch meal. Plaintiff attempted to get a grievance complaint from Defendant (sergeant) P. Lorenzo without getting any grievance at all. Plaintiff specifically thereafter also requested for Defendant Gerard Wagner to stop working around the Plaintiff because of the fact that every time the said defendant work the Plaintiff was always subjected to some sort of malicious retaliatory treatment and or abuse (see grievance number "GR#24-0467").

112.    Plaintiff asserts that Deputy Charmain Mason picked up the Plaintiff's numerous of Incarcerated Individual Referral Forms which were requesting for the commencement of criminal charges to be prosecuted against the defendants and Deputies within the Onondaga County Justice Center whom participated in the tortful actions and comments wrongfully inflicted upon the Plaintiff. Furthermore, Plaintiff also asserts that Deputy Charmain Mason also picked up the Plaintiff request for law library service to provide

Plaintiff with the New York State Minimum Standards rules and regulation which govern local correctional facilities pursuant to 9 NYCRR 7001 et seq..

113. On August 5th 2024, the Plaintiff continued to grieve about the wrongful housing conditions that he was being unwillingly subjected to (see grievance number "GR#24-0456"). Plaintiff asserted correctly that he was wrongfully being deprived of human decency by being housed in a cell that had an extreme foul odor smell and that had dried up feces even after the Plaintiff had attempted to clean the cell on numerous of occasions. Plaintiff thereafter asserted that technically he was not supposed to be housed in the "Four-man Unit" because it was an area specifically classified for contraband watch and or suicide watch, and that the Deputies were wrongfully housing incarcerated individuals that they don't like in that area.

114. Also on the 5th day of August 2024, Plaintiff appealed Grievance number "GR#24-0433" and notice that matters which he asserted in Grievance number "GR#24-454" were being rendered into grievance number "GR#24-0433" which was making it appear as if the facility was also addressing his other grievance issues within one grievance complaint. Plaintiff asserts that he was also wrongfully being deprived of the opportunity to get legal materials and copies of legal papers that he had and or needed from the law library personnel for a week or more straight and that the law library staff members purpose refuse to provide plaintiff with any form of assistance on August 5th 2024.

115. Plaintiff asserts that he therefore wrote to the Jail Ministry office and asked to be provided with some legal assistance and to thereafter also be provided with the address and phone number for the FBI Office located in Buffalo, New York. Plaintiff asserts that an older male Jail Ministry staff member came and talked to the Plaintiff while the Plaintiff was being housed within 23 cell of SHU-2. Plaintiff further asserts that he used a piece of toilet paper and grabbed a small proportion of dried up feces that was deep incrusted within the corners of his cell floor by the Plaintiff's cell door and showed the Jail Ministry staff member of the wicked type of living conditions being wrongfully suffered by the Plaintiff.

116. On August 7th 2024, the Plaintiff submitted another grievance complaint (see grievance number "GR#24-0479") which alleged that: "My outgoing legal mail is not being mailed out on the days that I am placing them in the mailbox and are not getting received by the Courts and or opposing parties until two or more weeks after the time a reasonable and competent person would determine reasonable, and my incoming legal and in-house mail is not getting delivered to my within due diligence time nor within the authorized times to deliver mail, for example I received my mail at 11:30 pm on August 6th 2024 that was sent to me from NYS ARCHIVES and my disciplinary hearing decision papers on the B Watch shift of August 7th 2024." Plaintiff asserts that the facility wrongfully and intentionally delivered his disciplinary sanctions papers to him late (by sending the papers the day after the deadline established for Plaintiff to be able to appeal the disciplinary sanctions) so that Plaintiff may not appeal the wrongful decision.

117.    On August 7th 2024, the Plaintiff also appealed grievance number "GR#24-0456" and commented that: "NO LONGER IN NASTY SMELLING CELL ON THIS 7TH DAY OF AUGUST. If medical department deems that I am not eligible for Double portions that is on a BMI reasoning but they may not assert that I do not qualify for high protein/high calorie diet, because I have lost 15 (plus) pounds & SHU#2 is not authorized for me to be housed in."

118.    On August 7th 2024, Plaintiff also appealed grievance number "GR#24-0467" and commented that: **"I have lost 15 pounds and do indeed qualify for a high protein-high calory diet if not for double portions and definitely found item in my food."** Plaintiff herein asserts that he weighed less than 139 lbs. (which was how much he weighed when the facility was providing him with the high protein/high calorie "snack bags" at nighttime during the month of January 2024) and that he still hasn't been provided with the opportunity to get a high protein/calorie diet and or of Double Portions.

119.    On August 7th 2024, the Plaintiff also appealed grievance number "GR#24-0433" and commented that: "Have been wrongfully housed in the SHU since April 23rd 2024 and have seen other Incarcerated Individuals with similar, the same, or relating to other serious offenses move to general housing but not me & now deputies are fabricating reports against me."

120.    In connection with the paragraph above (¶118 (of this Doc. (1)), Plaintiff asserts that the causation incarcerated individual (whom Plaintiff thinks had the name of "James" because that was what the "John Doe" Incarcerated Individual had asked to be called when he was talking with the Plaintiff) that was housed in 30 cell of SHU-3 was still allowed to go to the General Housing Unit before being allowed to go to general population. Plaintiff asserts, upon information and belief, that "James" had claimed to have also got criminal charges prosecuted against him for alleged possession of prison contraband in the First degree. Plaintiff asserts that while he was in 29 cell of SHU-3 he witness numerous of other incarcerated individuals be admissioned into the Special Housing Unit (as one collective group after one major event that occurred on their Unit, Which Plaintiff asserts even made the local News station) and then to the General Housing Unit before eventually going to general population while the Plaintiff was still being wrongfully housed 29 cell off SHU-3. Plaintiff asserts that these said incarcerated individuals had all went to the SHU after having had Overdosed and even died, and Plaintiff further asserted that some of the said incarcerated individuals were even alleged to have had gotten into a fight with the deputies while high off drugs. To add insult to injuries, Plaintiff asserts that there was another Incarcerated Individual that was housed in 41 cell of SHU-3 who had been placed in the SHU for attempting to escape and that the Defendants still allowed for this said Incarcerated to go to the General Housing Unit while the Plaintiff has still wrongfully been confined in the SHU beyond the time limitation authorized under Correction Law 137. Plaintiff asserts that he witness a Native American (Onondaga tribe) incarcerated individual get place in 30 cell of SHU-3 for allegedly having a friend or family member come and visit him within his housing Pod of the Onondaga County Justice Center facility while dressed up as a lawyer. Plaintiff

asserts that this same said incarcerated individual never received any criminal charges and was rather instead allowed to move to the General Housing Unit while the Plaintiff was still wrongfully confined within the Special Housing Unit.

121.  Plaintiff asserts that the Defendants and Deputies working within the Onondaga County Justice Center wrongfully discriminated against the Plaintiff by Placing him in a "class of One" category all by himself. Plaintiff asserts that he was wrongfully subjected to mistreatment and constitutional violations which no other incarcerated individual within the Onondaga County Justice Center was subjected to. Plaintiff asserts, arguendo, that the argument that other incarcerated individuals were treated in a similar manner must not be entertain because of the fact that the defendants' retaliatory actions and combined acts of mistreatment as a whole make the mistreatment which Plaintiff had to suffer from a "class of one" which no other incarcerated individual suffered from.  Plaintiff asserts that he was discriminated against because of the fact that the defendants and deputies felt that the Plaintiff had been cheering about another Onondaga County Sheriff Officer being killed and that the Facility wrongfully prosecuted charges against the Plaintiff (on numerous of occasions) and thereafter wrongfully refused to allow the Plaintiff to leave the Special Housing Unit and also intentionally deprived the Plaintiff off human decency while wrongfully being confined in the Special Housing unit by not providing the Plaintiff with adequate clothing, food, legal assistance, and by verbally abusing Plaintiff and even wrongfully encouraging other incarcerated individuals to inflict abuse and harassment treatment upon the Plaintiff. Plaintiff also asserts that the defendants and deputies became even more frustrated and had an even further disliked for Plaintiff because of the fact that the Plaintiff would help other incarcerated individuals learn about the rights guaranteed to prisoners and of the rules and regulations as setforth under Correction Law. Plaintiff asserts that some the defendants and other deputies also had a dislike for the Plaintiff because of the allegations asserted in the Plaintiff pending criminal case and because they felt that the Plaintiff deserved the mistreatment and abuse which they were wrongfully inflicting upon him.

122.  Plaintiff asserts that Defendant Lieutenant J. Carsten picked up Plaintiff's grievance appeal papers during the A watch shift of August 7th through August 8th 2024. Likewise, Plaintiff asserts that he had a conversation with the defendant about the fact that Plaintiff has evidence which would demonstrate that staff member have been wrongfully mishandling both Plaintiff incoming and outgoing legal mail. Plaintiff asserts that Defendant Carsten refused to look at his documentary proof and rather instead simply informed the Plaintiff that he "believed him" before informing the Plaintiff about the mailing process within the facility. It was at this time that the Plaintiff further learned that Incarcerated Individuals' mail are supposed to get picked up on every shift and delivered to the "operations" office and then once collected they get sent to "administration" on the same first level floor where they then get mailed and processed.

123.  On August 8th 2024, Plaintiff asserts that he appealed the decision render by the grievance committee pertaining to grievance number "GR#24-0454" and commented that: "I was denied of both my right to adequately be present; present evidence, get assistance and to have a nonbias and impartial hearing officer; thereafter, I was also

wrongfully denied of the opportunity to appeal the decision because of the fact that the facility delivered the hearing officer's decision the day after I was to be able to appeal by, and I qualify for high protein-high calory diet."

124.    Plaintiff asserts that, on August 8th through August 9th of 2024, he mailed defendant Tobias Shelley another letter in order to complain about how he was getting mistreated within the Onondaga County Justice Center. Plaintiff asserts that he explicitly stated that:

"PLEASE BE ADVISED that I am an incarcerated individual presently being housed in the Onondaga County Justice Center.

PLEASE BE FURTHER ADVISED that I had personally wrote to you one month ago and that I still haven't received a response from your office, thereafter, I'm writing to you again inorder to get help in receiving the cure that I have been requesting for.

PLEASE TAKE NOTICE that I had filed an Article 78 a few weeks back which the Onondaga County Supreme Court wrongfully failed to commence. Also take notice that I have wrote many grievances about being mistreated without any form of resolution being rendered to my injuries. Therefore, I ask that you help me by commencing with a criminal investigation against your employees working as deputies within the Onondaga County Justice Center for their mistreatment of me, Where:

- "Deputies have threatened to kill me on numerous of occasions, specifically deputy Wagner and deputy Sarno have unprofessionally threatened to cause me death."

- "Deputies are consistently violating my right to communicate with the Court effectively by opening my incoming legal mail outside of my presence, and have recently been giving me my mail at odd hours of the day. On the 6th day of August 2024, I received mail at approximately 11:30 pm and then also received mail during the B Watch Shift on the 7th day of August. Moreover, I have proof that my outgoing legal mail is being delivered past two weeks and definitely beyond any time a competent person would determine just and reasonable."

- "Additionally, I'm being wrongfully confined in the SHU beyond the time authorized pursuant to correction law section 137 and the HALT Law, and that such confinement must be deemed as atypical and significant hardship due to the lack of adequate proportion of food, access to law library and other relevant out of cell programs and entertainment, plus because of the fact that our cells are not equipped with audio stations which allow I/Is of the opportunity to listen to music, sports and news.

PLEASE TAKE FURTHER NOTICE that I have proof of all allegations raised herein, and are thus requesting for criminal charges to be filed against your employees for their unprofessional mistreatment of me."

125.    On August 12th 2024, Plaintiff asserts that the ("Hispanic") law library lady informed the
        Plaintiff that Plaintiff knows that the law library lady had been working with the Plaintiff
        and that she has been trying her best to provide the Plaintiff with all of the legal
        assistance that she can. Thereafter, the law library lady then stated the Plaintiff should
        therefore not be frustrated with her because it was not her fault that her ability to provide
        the Plaintiff with law library assistance is wrongfully being limited and or terminated by
        the deputies.

126.    Again on the 13th day of August 2024, the Plaintiff appealed grievance number "GR#24-
        0479" and commented that: "I have proof to support my claims if you properly conduct
        an investigation you will see the truth and there is no reason for me to fabricate my
        claims."

127.    On August 19th 2024, Plaintiff submitted a grievance complaint which was filed as
        "GR#24-0489" and which therein stated that: "(1) Grievance No. 24-499 was was never
        filed nor processed after I personally gave it to Deputy E. Perry on Saturday August 17th,
        2024, while Perry and Apples were working the C Watch Shift. Subdivision k of section
        500 under Article 6 of New York State Correction Law has established that local and
        county jail are still governed by subparagraphs 5 and 6 of Correction law 137,
        WHEREFORE, I'm requesting to be removed from the SHU unit#3 and to be given the
        opportunity to be housed in General Housing (which is designated as the "Step Down"
        program unit) and I'm requesting to be provided with some state issued socks, boxers
        and T-shirts because the state issued clothes that were provided to me around 8 months
        ago got "lost" and or misplaced during the laundry process, and to get placed on either
        Double portions or high protein-high calory diet because I've lost over 15+ pounds since
        I've been in the SHU since April 23rd 2024."

128.    Plaintiff submitted a grievance complaint that during the B Watch Shift on August 20th
        2024 and which therein stated that: "THE ISSUES COMPLAINED ABOUT RELATE
        TO MATTER TODAY ON THIS 20TH DAY OF AUGUST 2024. I was wrongfully
        denied of the opportunity to use the phone, get law library materials when the law library
        lady was making a round in the SHU#3 area, also I was wrongfully denied of the
        opportunity to go to recreation and to sign up for the C watch law library callout by the
        B Watch Deputies who I have previously filed grievances against. These Deputies are
        Deputy Lantry and Deputy Wagner and I notified the area supervisor about the matter
        and are still waiting for the cure and resolution I asked for" (see grievance number
        "GR#24-0503"). Plaintiff requested for the administration office to preserve the video
        and audio footage. Plaintiff also asserts, upon information and belief, that the defendants
        attempted to break his hand during breakfast on August 20th 2024 around approximately
        7:15 through 7:30 am.

129.    Plaintiff submitted a grievance complaint (see grievance number "GR#24-0504") that
        stated: "I am wrongfully being denied of human decency by the Deputies within the
        Onondaga County Justice Center in violation of NY CORRECTION LAW 137, HALT
        LAW, NY CORRECTION LAW 500-k, NY CORRECTION LAW 500-c, NY
        CORRECTION LAW 500-d, and pursuant to 9 NYCRR 7001 through 7032. Deputies

are refusing to file my grievances, provide me with law library, adequate proportions of food, use the phone and to be provided with adequate clothing." Plaintiff asserts that his **request of action taken** stated that: "I have spoken with Captain Hawker who is the acting Chief of the Custody Department and he informed me that a detective would speak to me about my concerns while I was in SHU 23 cell, and still have not been provided with that opportunity. Where I'm asking for the Commissioner of Corrections and or his designee to conduct an investigation about the wrongful treatment being suffered by me." Plaintiff asserts that grievance numbers "GR#24-0503" and "GR#24-0504" were both picked up during the B Watch Shift on the 21st day of August 2024.

130.    Plaintiff asserts that he submitted a grievance (see grievance number "GR#24-0518") which complained that: "During the C Watch Shift, at or around approximately 4:20 to 4:55 pm; on Thursday, August 22nd, 2024, I was wrongfully denied of the opportunity to have sufficient amount of food and Deputy Perry thereafter maliciously placed some type of dry powered/ Chalked substance in my food and when I informed the officer about his egregious act of giving me an unhygienic food item the officer stated "do you want the tray or not" before then trying to starve me by snatching the tray and declared are you refusing to eat." Plaintiff asserts that he requested for Internal Affairs to be notified and for the video footage of the incident to be preserved for the review of the Sheriff and Commissioner of Correction to see.

131.    Plaintiff asserts that he got a paper notarized (that was entitled as the "TABLE OF CONTENTS OF PLAINTIFF'S PLEADING EXHIBITS") during the B Watch Shift on Thursday August 22nd 2024. Plaintiff asserts that deputy Charmain Mason notarized the paper before then wrongfully bringing the said paper to the Deputies office within the Special Housing Unit (SHU-3) and was in the said room for a long time with Defendant Alton Apples, Ethan Perry (upon belief), Connor Hanauer (upon belief) and other deputies while the Plaintiff was on his door waiting for the deputy to return give him the papers back. Plaintiff asserts that Hiscock Legal Aid Society lawyer Spencer Goldberg (Esq.) (who also represented the Plaintiff during matters involving Plaintiff's Parole Violation) was present within special Housing Unit (SHU-3) and was having a conversation with the incarcerated individual in 29 cell while the Plaintiff was being housed in 32 cell of SHU-3. Plaintiff asserts that the said paper was actually a notification to this Northern District Court of all of the exhibit that were going to be submitted along with the 42 U.S.C. section 1983 lawsuit complaint that was going to be mailed by the Plaintiff on the behalf of Incarcerated Individual Nyequest Allen. Plaintiff asserts that from this day on the Malicious treatment of Plaintiff became even more intensified. Plaintiff asserts that Deputy Randall Sanderson along with Defendants Alton Apples, Connor Hanauer, Hujdur and Ethan Perry started blatantly harassing the Plaintiff whenever they worked.

132.    Plaintiff asserts that he initially did not want to help incarcerated individual Nyequest Allen (ICN NO.15000405) with his 42 U.S.C. §1983 lawsuit because of the fact that incarcerated individual "Allen" had (mainly) been one of the incarcerated Individuals whom the Deputies and Defendants had spread false information to about the Plaintiff's criminal cases and whom had also participated in the numerous of verbal abuse

treatments wrongfully inflicted upon the Plaintiff with the wicked intent of causing the Plaintiff mental anguish but then changed his mind because he realized that a sworn and notarized Affidavit from "Allen" would essentially expose of the corrupt treatment being wrongfully inflicted upon the Plaintiff and would also thereafter expose of the unprofessional actions committed by the herein named defendants and by any other deputies which may have been unknown to the Plaintiff. Therefore, Plaintiff asserts that he started finding out more information about all of the Defendants whom were involved in the mistreatment and of the defendants whom were participating in the tortful actions behind the scene. Plaintiff asserts that the Defendants then started further disrespecting the Plaintiff and "Allen" after realizing that the Plaintiff han converted one of their main incarcerated agents, whom they had been encouraging to spread the false information that they had provided about the Plaintiff's character and criminal cases to other incarcerated individual whom were becoming friends with the Plaintiff within the Special Housing Unit. Plaintiff asserts that the Defendants wrongfully continued to house the Plaintiff in the Special Housing Unit because the herein said Defendants rationalized that they could not efficiently slander the Plaintiff character in general population because the other incarcerated individuals could see the Plaintiff's character personally and thus realize for themselves that the rumors and or allegations being spread about the Plaintiff's character and reputation are incorrect based off of their observation on the manner of how the Plaintiff was conducting himself. Plaintiff also asserts that the Defendant hated the fact that they could not convince other incarcerated individuals in general population to attempt to attack the Plaintiff and also hated the fact the Plaintiff was living stress free in general population.

133.    Plaintiff thereafter assert that sergeant Mancini picked up grievance number "GR#24-0475" during the C Watch Shift on August 25, 2025. Plaintiff also asserts that the said grievance was submitted inorder for him to complain about the fact that: "On Friday August 23 2024, Deputy E. Perry and Deputy Alton Apples served me a dinner tray during the C Watch shift while I was being housed in 32 cell of SHU#3. I thereafter noticed some type of white powdery/ chalk like texture substance in the ground up meat & mash potatoes hot portion of my tray, and attempted to trade trays only for Deputy Perry to maliciously ask me if I was going to take the tray or not. We got in a tug a war because I initially attempted to push the tray out of the slot of the cell door and then heard Deputy Perry state that "ohh so your refusing" which then caused me to snatch the tray out of his hand. I informed the deputy later that I Still ate the substance in the tray at which point he stated wait till tomorrow's tray. I had my grievance complaint about this grievance on the door on Saturday August 24 during the B Watch Shift which did not get picked up until the C watch Shift by Deputy Hujdur. Again on Saturday, I ate my dinner tray which was served by Deputy Fodaro and Hujdur. Ten minutes after I ate y food I had to use the bathroom abnormally and had a running stool."

134.    Plaintiff asserts that the Saturday dinner meal consisted of Rice and beans, and Spicy Chicken, Corn, and a Cake; and that the Friday dinner meal consisted of mash potatoes, a biscuit, and a cake. Plaintiff also asserts that he had also requested to speak to Defendant Tobias Shelley inorder to address the unprofessional behavior which had become the norm within the Onondaga County Justice Center Facility and that he also

stated that he would like to press criminal charges against the peace officers for failing to bring peace and for inciting problems.

135.    Plaintiff asserts that Defendants Randall Sanderson, Alton Apples, and Hujdur began causing the Plaintiff torment every chance that they got because of the fact that the Plaintiff has been helping incarcerated individual Nyquest Allen with his civil action lawsuit (See Allen v. Sanderson, Et. Al., Docket No. (9:24-CV-0332(LE/TWD)). Plaintiff assert that Defendant Ethan Perry has not only been slandering Plaintiff character but has also been being used as a "conduit" and or agent for Defendants Randall Sanderson, Alton Apples and Hujdur. Plaintiff asserts that defendant Conner Hanauer has also been wrongfully been used a "conduit" and or agent for defendants Hujdur, Fodaro, and Alton Apples.

136.    Plaintiff again asserts that he was served with an old piece of legal mail during the B Watch Shift on August 24th 2024 by Deputy Zuk. Plaintiff asserts that he was finally provided with law library assistance on August 26th 2024. However, Plaintiff asserts that he was wrongfully denied of the opportunity to go to the law library room so that the Plaintiff may adequately prepare for his criminal cases. Plaintiff asserts that he had proceeded to go Pro Se and thus is entitled to extra-legal privilege that an average defendant would not be entitled to. Plaintiff asserts that Defendant Ethan Perry wrongfully denied Plaintiff of his pro se law library privileges as a form of retaliation for the plaintiff writing grievance against the Defendant after the said defendant had wrongfully violated Plaintiff's food. Thereafter, Plaintiff asserts that he refused to close the slot on his door during the routine serve of the medication so that Defendant Ethan Perry would have to be compelled to notify his area supervisor about the matter and so that the said defendant's area supervisor could speak with the Plaintiff. Nevertheless, Plaintiff asserts that it was at this time that Defendant Ethan Perry and defendant Burns then started to attempt to kick the slot close while the Plaintiff still had his right hand sticking out of the door frame. Plaintiff asserts that he did not suffer any injuries because of the fact that he had his personal towel wrapped around his right hand and because he would time the kicks so that the slot wouldn't slam against his hand with as much force as the defendants' were intending.

137.    Plaintiff asserts that he was written a misbehavior report which was prepared by defendant Sergeant P. Picciotto (badge No. #2744) that stated that: **"You obstructed medication pass and disrupted normal operations. You refused order to to remove towels and debris from your meal slot so it could be closed. You harassed the nurse and the Deputy for no legitimate purpose."** However, Plaintiff asserts that he never harassed nurse "Chris" and that the sergeant defendant never came and interview matters in relation to the incident prior to filing the report and that the sergeant also wrongfully failed to adequate listen to Plaintiff's concerns when the Plaintiff was served with a copy of the misbehavior report. Plaintiff also asserts that Defendant Sergeant P. Picciotto must be held liable for being deliberate indifferent to Plaintiff's injuries because of the fact that the sergeant failed to report that Defendant Ethan Perry and Burns wrongfully used unnecessary force by kicking the slot while the Plaintiff had his hand sticking out of the door frame and because Defendant Picciotto wrongfully also failed to listen to the

plaintiff when the Plaintiff attempted to complain about being deprive of his right to law library unjustifiably.

138. Plaintiff asserts that the grievance committee within his facility wrongfully rendered that **"Any accusations made against Deputy Perry were found to be unsubstantiated. Deputy Perry denied ever taking a grievance, moreover, Deputy Perry was not working on any shift the day you claim to have given him a grievance.** Your continued request to be placed on a special medical diet, such as high calorie/ double portions have not been approved by the medical department. According to their documentation, you do not meet the criteria that would qualify you for this. You can continue asking for your weight to be taken in order to have the medical department monitor his status. This should be done by submitting sick call slips. **You have been issued new items, some of which you refuse because you did not want the type of underwear you were issued.** In the event you need additional jail issued items, you need to follow the appropriate steps and fully complete a yellow referral form made out to laundry and five it to staff to sign off on. The new clothing items/ linens will then be delivered to you. **Your request to be moved to General housing is denied. Currently, the Justice Center is not offering a stem-down program/RRU. All individuals housed in General Housing are under the Same Disciplinary restrictive housing that you are. Additionally, as mentioned in multiple past grievances, all housing assignments are made at the discretion of the Sheriff/his designee, incarcerated individuals are not permitted to request their assignment."** (See grievance number "GR#24-0489").

139. Therefore the Plaintiff then commenced to appeal grievance number "GR#24-0489" on the 29th day of August 2024 and commented that: "General housing is less restrictive and give individuals the opportunity to play basketball, use more phone time, play chess, play cards and more social opportunities. I definitely handed Perry my grievance and I'm definitely underweight."

140. On August 29th 2024 Plaintiff was given his Pro Se Status from the Onondaga County Justice Center and thus was required to have a Video footage recorded interview with Defendant Leubner while defendant Kolakowski was (EQV) doing the recording. Plaintiff asserts that defendant Justin Leubner accompanied by defendant Kolakowski wrongfully failed to adequate provide all of the information available for Plaintiff to utilize while commencing as a Pro Se Incarcerated defendant and thereafter also wrongfully failed to setup a password protection on the flash drive assigned for usage by the Plaintiff as well as also failed to teach Plaintiff of how to operate the phone along with all other privileges available for Pro Se incarcerated individuals. Plaintiff asserts that he sighed one piece of paper which stated that the Plaintiff understood that inorder to get usage of the term which setforth the Pro Se Status he must uphold the following stipulations:

- The Computer and all electronic media are to be kept in the 5BSH3 property room when not in use.
- **<u>None of the electronic items are allowed to be taken to your cell.</u>**

- **You will have use of these items in the designated workspace only. You may be required to exist the workspace if it is needed for a brief period of time.**
- You and the Deputy will inventory all equipment when you request the items. If and when you leave the designated workspace, you will return them to the deputy.
- No inmates are allowed in the workspace while you are using the equipment.
- You will have access to these items when you are out of your cell during facility unlock times. **You do not have permission to be out of you cell during facility lock in times.**
- **In the event you need items printed off, you must submit a yellow referral form to Sergeant Leubner. He will process the request as soon as available.**

141.    Plaintiff asserts that he was informed that he (along with every other Pro Se Defendant within the Onondaga County Justice Center) is not entitled to internet access unless the Court make an Order granting such privilege. Plaintiff asserts that he had to figure out how to actually use the phone provided and of what other privileges are granted to Pro Se litigants by himself because he was not thoroughly provided with every information available for Pro Se criminal defendants.

142.    Plaintiff asserts that he had, on or around the 29th day of August 2024, wrote numerous of letters to the New York State Governor's office along with a letter to the Commission of Correction and to the Civil Right Department located within the Harriman State Campus building in Albany, New York. Plaintiff asserts that his letter were all addressing matters pertaining to the mistreatment of his person and of his legal mail and that he had also requested for an investigation to be commenced into the facts which he was complaining about. Plaintiff asserts that he also addressed the fact that his grievance complaint issues were not getting properly reviewed and that he is under the assumption that the Onondaga County Justice Center is not allowing for Plaintiff's grievances to go to the office of the Commission of Correction as required by New York State Laws.

143.    Plaintiff asserts that he submitted a grievance complaint (see grievance number "GR#24-0535") on the 3rd day of September 2024 after being provided with the grievance by Defendant Daniel Lavy. Plaintiff asserts that he complained that: **"I placed numerous of legal papers in a manila envelope and had asked for, on 08/29/2024, the law library staff lady to make 3 copies of the said legal materials for me and I have still not been provided with the copies nor of my legal materials back; Also I am requesting to be drug tested because I keep finding "unknown" substances (both liquid and powder form) in my food and are complaining that I am being served with a Styrofoam tray wrongfully, only when specific officers work during the C Watch Shift (Perry and Apples)." Plaintiff thereafter request that: "I would like for this grievance complaint to go to the Citizen Policy and Complaint Review Counsil and for the wrongful and unprofessional mistreat which is in violation of my 1st, 8th and 14th Amendment United States Constitutional rights to stop IMMEDIATELY."** Plaintiff asserts that he was never provided with the opportunity to have a drug test to find out if he was being poisoned or not. Plaintiff also asserts that more Deputies then became aware of the fact that the Plaintiff was helping Incarcerated Individual Nyequest Allen with his 42 U.S.C. §1983.

144.    Plaintiff asserts, upon information and belief, that he received a letter from the
Commission of Correction, on or around the 9th day of September 2024, which was
dated as of being mailed on September 4th 2024 and which therein stated: **"Dear Mr.
Barzee: The New York State Commission of Correction hereby acknowledge
receipt of your correspondence received on September 3, 2024. Please be advised
that the matter has been assigned to Commission staff for review and appropriate
action."**

145.    Plaintiff asserts that Defendants Randall Sanderson, Ethan Perry, Alton Apples and
Defendant Hujdur constantly searched the Plaintiff's cell (during the C Watch Shift
mainly) all throughout the month of September 2024 with the malicious intent of
misplacing the plaintiff papers and for the sole egregious pleasure of watching the
Plaintiff sit in his cell and re-organized all of his legal papers. Specifically Plaintiff
asserts that he would come back from using the law library room only to then have to re-
organize his entire cell for hours. Plaintiff asserts that he thus made sure to be back in his
cell before the 3:00 pm shift change so that he would only have to deal with the
harassment of cleaning his cell one time a day. Plaintiff also asserts that Defendant
Randall Sanderson wrongfully returned the Plaintiff back from law library inorder to
then take the Plaintiff's Voodoo necklace as retaliatory treatment for the Plaintiff
helping Nyequest Allen with his 42 U.S.C. §1983 lawsuit.

146.    Plaintiff asserts that, upon information and belief, he mailed out a premature amended
and supplemented 42 U.S.C. section 1983 Civil Action Complaint on the behalf of
Nyequest Allen (see Northern District Case docket number 9:24-CV-03322
(TWD/LEK)) on Sunday September 8th 2024 as a result of being threatened by deputy
Matthew Murphy. Plaintiff asserts that deputy Matthew Murphy stated "Barzee you're
going to make me fuck you up" as the Plaintiff was being escorted to the Law Library
room. Plaintiff asserts upon information and belief that incarcerated individual Nyequest
Allen was thereafter physically battered by a deputy unjustifiably while "Allen" was
being housed in Protective custody. Plaintiff asserts that the amended papers got sent
back to him, on or around the 11th day of September 2024, with a sticky note that stated
that: **"Attention Mailing Customer. We regret to inform you that your mail was not
collected or is being returned to you due to heightened security concerns. The
following must be presented by the customer to a retail service associate at a Post
Office™ location for shipment:**
- **Any mailpiece over one-half inch thick that uses POSTAGE STAMPS**
- **Any mailpiece that weighs more than 10 oz and uses POSTAGE STAMPS**
- **Any mailpiece with a customs declaration form that was not completed and
submitted online**
- **Any mailpiece that required a customs declaration form and uses POSTAGE
STAMPS**

147.    Therefore, Plaintiff asserts that he thereafter resubmitted the legal papers in two separate
envelopes on or around the 11th day of September 2024. Plaintiff also asserts that
numerous of deputies and some of the herein named defendant (Alton Apples, Connor

Hanauer, Ethan Perry, and Hujdur) started referring to the Plaintiff as Nyequest Allen's lawyer and or stating "law library" or "Barzee at Barzee" whenever they saw the Plaintiff doing legal work within the law library room.

148.    Plaintiff asserts, upon information and belief, that Defendant Casey McPartland committed perjury by providing false testimony in the Grand Jury Proceeding conduct on September 12th 2024. Specifically Plaintiff asserts that Defendant Casey McPartland committed perjury inorder to wrongful prosecute criminal charges against the Plaintiff as retaliatory treatment for the Plaintiff requesting on numerous of occasions for criminal charges to be prosecuted against the herein named defendants for their tortful behavior that is inconsistent with the laws established under the New York State Chapter of the Penal Law. Here, Defendant Casey McPartland lied when he declared that (see pages 12-13 and pages 16-17 of the Grand Jury Transcripts):

- (See Page 12 at *24-25)

- Q        And at some point did you - - you and other deputies in fact see Inmate Barzee?
- A        When I walked into the pod I instructed the pod deputy to lock the unit down. All the Inmates go to their cells. **I intercepted Barzee walking towards his cell**, so we intercepted him and secured him in handcuffs.
- Q        And at some point did you become aware that inmate Barzee in fact had a shank or contraband

- (See Page 13 at *1 through 11)

- on him?
- A        I - - we did.
- Q        And how did you become aware of that?
- A        We were walking out of the pod to our booking section which has a body scan we were about to put him in to detect anything he might have had on him prior to leaving the pod. **Right before we got to the vestibule, he started reaching towards his waistband. Deputy Morris noticed that and they told him to stop and then we noticed he tossed something in the corner of the vestibule.**

- (See Page 16 at * 20 through 25)

- So Sergeant, I think in the first three exhibits we saw the piece of contraband. Can you describe the color of it?
- A        It was like - - looked gray. It was sharpened on one end, sharpened to a point.
- Q        Can you draw - - or did you draw any

- (See Page 17 at *1 through 15)

- conclusion as to where that might have came from at the time?

- A    My guess is a chair within the housing unit.
- Q    **And what color are the chairs in the housing unit?**
- A    **Most of them are gray.**
- Q    **And are they made out of a particular material?**
- A    **Thinker plastic.**
- Q    But you weren't able to confirm that; is that right?
- A    We weren't able to confirm it, no.
- Q    So at this point in time it's - - it's just conclusions that you drew at the time?
- A    Yes.

149.    Plaintiff asserts, upon information and belief, that Defendant Caroline H. McGrath must be held liable for falsifying the grand jury transcript. Plaintiff asserts that Defendant Patrick Russell Blood committed numerous of blatant prosecutorial misconducts which defendant Caroline H. McGrath didn't adequately document and which Defendant Robert Moran knew about as well. Plaintiff asserts that Defendants Caroline H. McGrath, Chief ADA Robert Moran and ADA Patrick Russell Blood must be held liable for intentionally violating the Plaintiff's due process right of having an effective grand jury proceeding and for thereafter obstructing justice by providing falsified transcripts of the grand jury proceedings.

150.    Plaintiff asserts, upon information and belief, that he was being sexually harassed by an incarcerated individual from about the 16th day of September 2024 to the 19th day of September 2024. Plaintiff asserts that the incarcerated individual went from 39 cell SHU-3 to 27 cell of SHU-3. Plaintiff assert that the said incarcerated individual would verbally tell the Plaintiff that: "I want to fuck you in your butt" and that he didn't want to fight with the Plaintiff he just simply want to "make love to" the Plaintiff. Plaintiff asserts that Defendants Hujdur, Alton Apples, Dustin Saddock, Ethan Perry, Gerard Wagner, Connor Hanauer, J. Lantry, and Daniel Gratien along with other deputies knew that the Plaintiff was getting sexually harassed verbally but failed to provide any form of cure.

151.    Plaintiff asserts that he went to court on the 17th day of September 2024 in order to provide the Onondaga County District Attorney's Office with a copy of the dismissal motion papers that he had typed up and in order to thereafter also address the city Court with the fact that the Onondaga County District Attorney's office had verbally informed the Plaintiff that they had all intentions of dismissing the two counts misdemeanor charges of Promoting Prison Contraband in the Second degree. Plaintiff asserts that the District attorney's office did indeed acknowledge that their office had declared that their office was willing to dismiss the case and upon notice to the Plaintiff (whom is representing himself in relation to all of the criminal cases presently being prosecuted against him) that if the Plaintiff gets any new criminal charges within the next six month that the District Attorney's office will then be able to re-open the misdemeanor charges. Plaintiff asserted that he understood of the six months stipulation annexed with the prosecutors dismissal proposal before thereafter declaring that he would still like to serve both the Court and the District attorney's office with a copy of the dismissal papers

that he had filed and that he would thus like for the said papers to be submitted on the docket sheet in connection to the two misdemeanor charges.

152.   Rather instead, Plaintiff asserts, upon belief, that the said incarcerated individual (whom was sexually harassing the Plaintiff) was removed from the Special Housing Unit from around the 19th day of September 2024 to the 22nd day of September 2024 before thereafter being returned back to the Special Housing unit on the 23rd day of September 2024. Plaintiff asserts that the other incarcerated individual was then wrongfully move to 31 cell while the Plaintiff was being house in 32 cell of SHU-3. Plaintiff asserts that the incarcerated individual was bragging about going to population for three days and of how good he eat while in population before claiming that he was allegedly released out of the SHU by mistake. The incarcerated individual then started intentionally further harassing the Plaintiff by speaking on matter in connection to the Plaintiff family life, social life, and criminal case.

153.   Plaintiff asserts that the "John Doe" incarcerated individual would intentionally attempt to go everywhere that Plaintiff wanted to go (for example, if the Plaintiff wanted to go outside for recreation, the said incarcerated individual would then ask the Deputies to go outside for recreation; likewise, if the Plaintiff asked to go to law library the said incarcerated individual would get on the gate and scream "shout the fuck up you're not going to law library"). However, the Plaintiff noticed that the deputies and defendants would allow for the said incarcerated individual to go out for recreation and anywhere else he asked for even though the said incarcerated individual had not put down for any of the said activities which the said incarcerated individual was asking for prior to his request.

154.   Plaintiff asserts the Defendant Alton Apples, Ethan Perry and Defendant Hujdur then started using the "John Doe" incarcerated individual (who was sexually harassing the Plaintiff and getting other incarcerated individuals to join in on the verbal disrespect and sexual harassment, like the Inmate in 28 cell (inmate Maurice Delee, ICN NO. 93001078)) as a tool in attempting to cause the Plaintiff mental anguish. Plaintiff asserts that defendant Hujdur would intention stall in getting the plaintiff for law library inorder to allow the two said incarcerated individuals to sexually harass the Plaintiff verbally. Plaintiff asserts that defendant Hujdur got even more malicious with his actions by outright denying the Plaintiff of the opportunity to go to law library. Plaintiff asserts that Defendant Hujdur would wait for the Plaintiff to ask to go to law library before then egregiously telling the Plaintiff that there is another incarcerated individual already using the law library room and or would tell the Plaintiff that the incarcerated individual in 31 cell had already asked the defendant before the Plaintiff.

155.   Plaintiff asserts that Defendant McLaughlin along with defendant M. Cullen would constantly made homosexual jokes which the Plaintiff never thought were funny prior to the "John Doe" incarcerated individual being housed in the Special Housing Unit. Plaintiff assert that Defendant Kevin Koehler would act in a deliberate indifferent manner to the unprofessional harassment by either laughing along with the other said defendants and or would report to joke in order to mock the Plaintiff. Plaintiff asserts

that Defendant M. Cullen would always state thing like "yum' whenever the facility served a sausage on the tray and that the defendant was known for talking about the Plaintiff's personal life as if he actually knew the Plaintiff. Plaintiff asserts that Defendant McLaughlin asked the Plaintiff if he wanted to see a cool magic trick. Plaintiff asserted that he didn't say anything and so the Defendant still continued with his childish joke by saying when I snap my finger you're going to pretend that you're not gay. Plaintiff asserts that defendant McLaughlin repeatedly said this homosexual joke during the time that the "John Doe" incarcerated Individual was sexually harass him.

156.    Plaintiff asserts that he wrote a grievance complaint (see grievance number "GR#24-0526"), on the 23rd day of September 2024, about the fact that Defendant Hujdur was wrongfully using the said "John Doe" incarcerated individual as a "conduit" to deprive me of law library and that there may also exist a potential likelihood that the said incarcerated individual also wrongfully was allowed to review Plaintiff's legal arguments stored in the flash drive (which is not password protected) provided by the facility.

157.    Plaintiff asserts that he submitted a grievance complaint on Wednesday September 25th 2024 during the B Watch Shift when Defendant Daniel Gratien and Defendant J. Lantry were working. Plaintiff asserts that his grievance complaint addressed matters pertaining to his "PREA" concerns. Subsequently, Plaintiff asserts that Defendant Daniel Gratien Mocked the Plaintiff about submitting his grievance in relation to his "PREA" concerns by stating "he wants to rape a Rappo" and "maybe he likes you". Plaintiff asserts that Defendant Daniel Gratien and Defendant Lantry refused to notify "PREA" staff members and that Defendant Daniel Gratien instead stated that "Deputy Reschke doesn't want to talk to you". Thereafter, During the C Watch Shift (afternoon shift) , Plaintiff asserts that Defendant Alton Apples wrongfully grabbed two trays and brought them into 31 cell (whom was one of the Incarcerated Individual sexually harassing Plaintiff) and then gave the Plaintiff his tray while maliciously looking at the summer sausage on Plaintiff's tray.

158.    Plaintiff asserts that, on the 25th day of September 2024, he therefore called the NYS Civil Right agency ((212) 416-8250)  at 5:01 pm and had made a report about the mistreatment (for approximately 04:51 seconds); the NYS FBI Buffalo Office ((716) 856-7800) at 05:06 pm (for approximately 21:23 seconds); the NYS FBI Albany Office ((518) 465-7551) at 05:27 pm and had made a report of the mistreatment (for approximately 10 minutes); the Onondaga County Sheriff's office ((315) 435-3044 at 05:39 pm and left a voice mail for Tobias Shelley with Plaintiff's concerns about how the Plaintiff was getting mistreated within the Onondaga County Justice Center (for approximately 08:21 seconds); another Civil Right agency ((202) 514-3847) at 5:48 pm and had made a report of the mistreatment (for approximately 05:18 seconds) and then called again at 05:53 pm inorder to provide a supplemented report (for approximately 02:31) and had even called the Onondaga County Human Rights phone number available for Incarcerated individuals housed within the Onondaga County Justice

Center ((315) 435-3565) at 05:58 pm and also made a report of the mistreatment (for approximately 03:53 seconds).

159.    On September 26th 2024, Plaintiff asserts, upon information and belief, that he called the Internal Affairs Department for the deputies working within Onondaga County Justice Center ((315) 435-300) at 08:12 am and made a report about the fact that his grievance complaint and "PREA" concerns were not adequately being investigate nor reported by the deputies within the Onondaga County Justice Center. Plaintiff assets, upon information and belief, that he had a conversation with Sergeant "Stark" (Plaintiff asserts that he remember the sergeants name because he had thought that he name was "star" like the candy snack) and that she had informed him that the Commissioner of Correction had gave the Onondaga County Justice Center until October 29th 2024 to commence an investigation into the Plaintiff's concerns and then to provide the finished copy of that report to the Office of the Commissioner Of Correction for inspection and review. Plaintiff asserts that he spoke with Defendant Devin Reschke when he called the criminal hot line ((315) 435-1706) at 08:17 am and attempted to complain about the fact that he was getting sexually harassed by incarcerated individual in 31 cell and 28 cell within the Special Housing Unit (SHU-3). Plaintiff asserts that Defendant Reschke did not even attempt to listen to his concerns and rather instead implied that may I was the one doing the harassing before thereafter wrongfully begin mocking and laughing at the Plaintiff. Plaintiff states that he then called the Mental Health Department within the Onondaga County Justice Center ((315) 435-1760) at 09:19 am and spoke with Mental Health worker "Dupree" briefly before she then handed the phone to another mental health worker whom then acknowledge that she will notify the correct people about the Plaintiff's concerns and will report the matter accordingly. Plaintiff also asserts that he spoke with the Onondaga County District Attorney's office (for approximately 13:16 second) and attempt to get the said District Attorney's office to commence with filing criminal charges against the two incarcerated individuals for sexually harassing him without getting any form of cure. Plaintiff asserts that the Onondaga County District Attorney's office wrongfully failed to file criminal charges against the Defendant and instead told him to call law enforcement inorder to file a report against the defendant. Plaintiff asserts that he even called the "WSYRCTV" News Station ((315) 446-9900) at 09:25 am and left a voice mail record of how he is being mistreated within the Onondaga County Justice Center.

160.    Plaintiff asserts that, during the B Watch (morning) Shift on Thursday September 26th 2024, he found the same exact grievance that he had attempted to submit back within his cell while the Plaintiff was preparing his legal papers inorder to go to law library. Plaintiff asserts that he was then wrongfully assaulted by Defendant Gerard Wagner after eating lunch. Plaintiff asserts that defendant Wagner informed him the Defendant McPartland had offered to move the Plaintiff back to the four-man unit in order to get away from the two other incarcerated individuals whom were sexually harassing him. Plaintiff asserts that he informed defendant Wagner that the deputies could move the other incarcerated to the four-man unit because being housed within the Four-man unit is a form of punishment. Plaintiff asserts that Defendant Wagner then became argumentative with the Plaintiff about the matter while the Plaintiff was escorted back to

his cell so that he may eat his lunch meal. Plaintiff asserts that he ate his food and had grabbed some legal papers that he wanted to bring with him while he was doing his legal work within the law library room.

161.    Plaintiff asserts that gave the grievance back to the defendants so that Plaintiff's grievance complaint could be properly filed (see grievance complaint No. "GR#24-0527"). Plaintiff thereafter asserts that the two said incarcerated individual then started to sexually harass the Plaintiff by further stating that nobody cared about his "PREA" complaint and that they wanted to fuck the Plaintiff and that the Plaintiff had a nice butt. Plaintiff asserts that he had sternly informed the incarcerated individual in 28 cell that he was going to call the FBI and complain about the mistreatment before declaring that the incarcerated individuals were only acting in that manner because of the fact that they felt like they could do whatever they wanted because they knew that had the deputies encouraging them to act in that manner.

162.    Plaintiff asserts that Defendant Gerard Wagner at that moment then wrongfully grabbed the Plaintiff's left arm aggressively and pulled the plaintiff unnecessary towards the defendant before thereafter pinning the plaintiff against SHU-3 door wall. Plaintiff asserts that he asked Defendant Wagner "why are you grabbing me like that" before asking the defendant why he was looking at the Plaintiff like he wanted to punch him or something. Plaintiff asserted that he informed Defendant Wagner that he was not scared of him and that the defendant should simply punch him if he was going to punch him because the Plaintiff was not scared off being punched. Plaintiff asserts that defendant Wagner aggressively stated that "he could do whatever he wanted" and that the said defendant would "dump" the Plaintiff on his "neck" if the Plaintiff kept talking. Plaintiff asserts that he told the Defendant that he was a "bitch" after the defendant had threatened unnecessary violence upon him.

163.    Plaintiff asserts that the defendant kept talking to him in an unprofessional and unnecessarily aggressive manner while the said defendant escorted the mechanically restraint (handcuffed) Plaintiff to the law library room. Plaintiff asserts that Defendant Alton Apples and Ethan Perry were present in the hallway handling the collection of the mess hall trays from SHU-1, and thus not only heard the threats but were deliberate indifferent to the injuries thereafter suffered by the Plaintiff. Plaintiff asserts that defendant windey was waiting by the entrance door of the law library room and thus also heard and witness defendant Wagner batter the Plaintiff unjustifiably. Plaintiff asserts that Defendant Gerard Wagner unjustifiably used his right elbowed and striked the defenseless and non-combative Plaintiff in the back of Plaintiff's head which thereafter force the Plaintiff to hit his head against the door and to suffer a minor bruise above his right eyebrow. Plaintiff asserts that defendant Wagner then wrongfully grabbed the Plaintiff and pushed the unresisting Plaintiff into the law library room while stating "get your ass in there". Plaintiff asserts that he then picked up some of the papers that had fell out of his hand and placed them on the table before turning around and telling Defendant Wagner that he wanted for the defendant to open the law library room door and come into the Law library room. Plaintiff asserts that defendant Wagner then stated that "I'm not that stupid" and so the Plaintiff then told Gerard Wagner that he was not going to

allow for the defendant to remove the handcuff off of his wrist while slipping his left hand out of the handcuffs.

164.    Plaintiff asserts that Defendant Wagner then just turned around and walked away from the door. Plaintiff assert that he then called he called internal Affairs ((315) 435-3000) at 11: 02 am and complained about how he was battered unjustifiably by Defendant Gerard Wagner while he was handcuffed and was not being combative nor resisting any orders. Plaintiff asserts that he then called 911 at 11:14 and reported (for approximately 05:08 seconds) of the assault that had occurred and was instructed that he could hang up because police were on their way to come and interview him. Plaintiff also asserts that he called the New York State Governors office ((518) 474-8390) at 11:29 am and requested to report his concerns. Plaintiff asserts that an employee of the Governor then transferred his call to the Commissioner of Corrections office and that he reported (for approximately 10:15 seconds) his concerns of "PREA" and of the way that the deputies have wrongfully neglect to perform their responsibilities within the Onondaga County Justice Center. Plaintiff also complained about how he has been getting mistreated. Plaintiff asserts that he recalled the "WSYRCTV" New Station ((315) 446-9900) at 11:39 am and provided supplemental information in relation to Plaintiff's previous complaint.

165.    Plaintiff asserts that Police officers never came and interviewed the Plaintiff's about his concerns as the 911 operated claimed and that instead Defendant Casey McPartland wrongfully came to the law library room door and instructed the Plaintiff that his law library privileges were getting terminated wrongfully for the day because of the fact that the Plaintiff had called 911. Plaintiff asserts that Defendant Casey McPartland claimed that he was the Police and that the other police officer had a conversation with him about the matter. Plaintiff asserts that he therefore first informed Defendant Casey McPartland that the said deputy was not a public officer but was rather simply a peace officer working as a Deputy under the jurisdiction given to him by the Onondaga County Sheriff (Defendant Tobias Shelley) before thereafter then recalling 911 in order to inform the operated whom he had spoken with prior that Law enforcement never talked to him as she had indicated. Plaintiff asserts that the 911 operator quickly and wrongfully transferred the plaintiff's call to a non-emergency phone line and that the Plaintiff put the phone on speaker as he packed up his belong and left the law library room. Plaintiff asserts that he did as much so that the Deputies could not wrongfully batter the Plaintiff as they were forming around the law library room door. Plaintiff asserts that he was wrongfully escort to the four man unit (SHU-2) and placed in 26 cell as retaliatory treatment for reporting the tortful actions committed by Defendant Gerard Wagner to 911.

166.    Plaintiff asserts that Defendant Casey McPartland therefore wrongfully report a fabricated Inmate Misbehavior Report/Hearing notice that stated that: **"While being escorted to the 77 room for Law Library you refused order from the deputy to cease your behavior. You then refused to return the handcuffs. You then called 911 to falsely report a deputy assaulted you."** Plaintiff also asserts that Defendant Casey McPartland also gave the Plaintiff an "Administrative limitation/ Restriction of

Services" paper which declared that the Plaintiff's law library rights were being limited and reported that: **"You failed to follow the deputy's order and refused to return the handcuffs. You then called 911 to report an assault which didn't happen."**

167. Plaintiff asserts that he submitted another grievance complaining about the wrongfully negligence and tortful actions committed by Defendant J. Lantry and Defendant Daniel Gratien on the 25th day of September 2024 and inorder to also complain about being assault be Defendant Gerard Wagner unjustifiable on the 26th day of September 2024 (see grievance complaint No. "GR#24-0525").

168. Plaintiff asserts that he submitted an "Incarcerated Individual Referral Form" on Saturday September 28 2024 which notified the "Administration" office that: "I would like to preserve SHU UNIT # 3 (27-56 Cells) camera & video footage along with the audio at specifically 10:50 am to 11:50 am on Thursday September 26th 2024. Plaintiff asserts that he Submitted another 'Incarcerated Individual Referral Form" that also notified the "Administration" office that: **"I would like for the audio and video footages recorded by the cameras facing towards the entrance door of SHU unit Number three, and which capture the malicious threat and unprofessional actions committed by Deputy Gerard Wagner on Thursday September 26th 2024 from approximately 10:50 am to 11:50 am to be preserved along with the video footage recording of the incident that occurred in front of the law library room (presumely room 77), so that I may use the video and audio as evidence at my Disciplinary hearing."**

169. Plaintiff assert that he submitted another "Incarcerated Individual Referral Form" on Sunday September 29th 2024 which notified the "Administration" office that: **"I found out that Devin Reschke and Detective Alexander Hebert are actually indeed responsible of conducting investigation upon any allegation of unlawful activity commenced by any person within the ("OCJC") Onondaga County Justice Center therefore I'm asking for a criminal investigation to be commenced against Deputy Wagner for threatening to kill me and for thereafter assaulting me on the 26th day of September 2024 for no justifiable reason during the B watch Shift and this was while I was walking towards room 77 at approximately 10:50 am to 11:50 am from (SHU#3) 32 cell to the Law library room (room 77)."**

170. Plaintiff asserts that he had been unexpectedly called for a court appearance on the 4th day of October 2024. Plaintiff asserts that it was at this time that the Plaintiff was provided with the Grand Jury transcript minutes(pertaining to the Criminal charges prosecuted against him by the Onondaga County Justice Center deputies) along with the Onondaga County District Attorney's exhibits and some of the other relevant *Brady* material pertaining to Indictment Number 24-0609-1 (Index number 24-9546). Plaintiff asserts, upon information and belief, that both Defendant Justin Leubner and Kolakowski were present in the Court room. Plaintiff asserts that Defendant Onondaga County Court Judge Theodore H. Limpert wrongfully informed the Plaintiff that the Plaintiff's Pro Se status rights were getting limited as a result of the Plaintiff calling 911 and the FBI in order to complain about the way the defendants and other deputies have

been slandering the Plaintiff's character, disclosing personal information about the Plaintiff's case to other incarcerated individuals, wrongfully being confined in the SHU for an excessive amount of time, wrongfully mishandling the Plaintiff's outgoing and incoming legal Mail, and of how the Plaintiff has been getting threatened before he was actually assaulted again. Plaintiff asserts that the same County Court Judge had wrongfully refused to provide the Plaintiff adequate due process rights on numerous of other occasion and that it was this same County Court Judge who himself had initially stated that the Plaintiff can't get things his was because "it's not burger king" (and that Defendant J. Lantry's comment stands as proof of Plaintiff's claim that deputies have indeed been talking about Plaintiff's criminal case among each other and to other incarcerated individuals as asserted by the Plaintiff).

171.    Plaintiff asserts that Defendant Justin Leubner and Defendant Kolakowski wrongfully reached out to Defendant Theodore Limpert so that they could deprive the Plaintiff of his Constitutional right of petitioning to the government for a redress of grievances. Plaintiff asserts that it is outside of the Jurisdiction authorized to the Court judge to deprive the Plaintiff of his Constitutional right of being able to petition to the government for a redress of grievances and that such act stands as a violation of Plaintiff's Fourteenth Amendment right to Equal Protection of the law by intentionally discriminating against the Plaintiff by Placing the Plaintiff in a "class of one" category all by himself. Plaintiff asserts that he was written a misbehavior report which alleged that he falsified reports to the 911operator but that the said rule violations charged were later dismissed without the Plaintiff even going to a disciplinary hearing. Plaintiff also asserts that the Defendants' actions thus deprived the Plaintiff of his right to report of the crimes which were wrongfully inflicted upon him and which the Plaintiff had been trying to prevent by asking for help from the grievance committee (which is also a position which Defendant Leubner is in-charge of operating). Plaintiff asserts that such actions are a clear violation of his constitutional right of being free from cruel and unusual punishment and is an abuse of discretion by a governmental agency and by the Onondaga County Court.

172.    Plaintiff asserts, upon information and belief, that the Defendants first attempted to move Nyequest Allen to SHU-3 Unit but then instead maliciously thereafter wrongfully moved incarcerated individual Maurice Delee (ICN No.93001078) from 28 cell of SHU-3 to (SHU-2) 25 cell on or around the 4th day of October 2024, after Nyequest Allen refused to move. Plaintiff asserts that the said incarcerated individual continues to wrongfully sexually harass the Plaintiff as well as call the plaintiff a "closet faggot", a "cockroach" and a "donkey". Plaintiff asserts that Incarcerated Individual Maurice Delee specifically informed the other incarcerated individuals being housed within the four-man (SHU-2) that the Plaintiff had called the FBI on other incarcerated individuals and had reported being sexually harassed, before thereafter calling the Plaintiff "police" and a "rat".

173.    Plaintiff asserts that Defendant Gerard Wagner thereafter, on the 8th day of October 2024, attempted to escort the plaintiff to law library. Plaintiff asserts that he does not trust the defendant and thus instructed for the Defendant to loosen the handcuff so that

he may at least be able to defend himself if the defendant attempted to assault him again while the Plaintiff was in handcuffs. Plaintiff asserts that he thereafter attempted to grab the handcuff which cause for the defendant and the Plaintiff to get into a tug a war with the handcuff that had already been placed on his left hand. Plaintiff asserts that he was written an "inmate Misbehavior Report/Hearing Notice" by Defendant Casey McPartland which stated that: "While Deputy Wagner was attempting to put you out at your request for law library you grabbed onto his hand attempting to pull it in your cell. You then refused to put your hands back inside the cell. Your actions caused Deputy Wagner to be annoyed and alarmed for no legitimate reason and violate the inmate handbook." Plaintiff was again denied of the opportunity to go to law library. Plaintiff asserts that he suffers from psychological and emotion stress every time he gets around the defendant whom repeatedly harasses and threatens him.

174. Plaintiff asserts that Defendant Casey McPartland along with defendants Alton Apples, William Demko, Daniel Gratien and other deputies(like deputy Hannah) thereafter maliciously approached the Plaintiff's cell with the egregious intent of causing the Plaintiff harm. Plaintiff asserts that he had asked Defendant Casey McPartland why they were in-front of his cell for. Plaintiff asserts that Defendant Casey McPartland declared that they were there because the Plaintiff had grabbed "one of his officer's hands" before then declaring that the Deputies were there to conduct a cell search. Plaintiff asserts that he stated that he was not going to allow for the Defendants and the other deputies to put handcuffs on his wrist without having a hand held camera (EQV) present. Plaintiff asserts that Defendant Casey McPartland then stated that they can do whatever they wanted to do before then reaching in his back pocket and handing the hand held camera to another officer (whom plaintiff assumes, upon belief, was deputy Joseph Lee) while placing the keys into mechanic device in charge of opening the Plaintiff cell's door. Plaintiff asserts that he stood by the door and Placed his hands direct in-front of his body(in a non-confrontational and or non-combative manner) while Defendant Casey McPartland then wrongfully opened the Plaintiff's door and then Placed Mechanical Restraints on Plaintiff's wrist. Plaintiff asserts that Maurice Delee kept verbally disrespecting the Plaintiff while the Plaintiff was place on the wall right outside of 26-25 cell doors. Plaintiff asserts that he was then escorted back into his cell where a strip search was conducted. It was at this time that Plaintiff asserts that Defendant Daniel Gratien wrongfully flushed the Evidence that he had kept as proof to show this Court that his food was indeed being wrongfully violated without probable cause.

175. Plaintiff asserts that Incarcerated Individual Maurice Delee (ICN No. 93001078) started saying that "this closet faggot called 911" and that someone should call the Police on the Plaintiff. Plaintiff asserts that "Delee" has constantly been verbally harassing the Plaintiff and then writes fabricated grievances against the Plaintiff by wrongfully portraying the image as if it is actually the Plaintiff who is causing him torment. Plaintiff asserts that "Delee" constantly kicked and banged on the cell wall (that separates Plaintiff's cell from "Delee's" cell) every night and that the incarcerated individual even listens to the Plaintiff while the Plaintiff is on the phone talking to his family and or to the Court, and then thereafter reference to matter overheard during Plaintiff's phone calls. Plaintiff asserts that the Defendants wrongfully placed "Delee" around the Plaintiff

in order to cause the Plaintiff further mental and psychological pain and as a form of retaliatory treatment for continuing to help Nyequest Allen with his legal work.

176.    Plaintiff asserts that, on the 11th day of October 2024, the grievance committee wrongfully declared that:

**"Any accusations made against Deputy Lantry or Deputy Gratien were found to be unsubstantiated. Deputy Lantry denied ever refusing to take a grievance, moreover, Deputy Lantry denied any harassing comments were regarding any grievance. There is no evidence to support any staff member is slandering his character.**

**In addition, the grievant date/ time submitted section of grievance 24-527 was blank. However, the receiving staff date/time section of grievance 24-527 was completed and shows 09/26/2024.**

**The claim that there was an unknown object found in his tray is unsubstantiated. All trays are portioned the same, unless they are listed as a special diet. You are currently not listed on a special diet. There was no description of the item or proof that it was ever on the tray. No notifications were made to Deputies assigned to the housing unit.**

**All claims of threats and assault are unsubstantiated as well. Video review and accompanying documentation shows no assault took place. Requests to criminally investigate deputies fall outside the scope of the grievance process.**

**No violation of OCSO policy/procedure or NYS Minimum Standards, grievance denied."**

177.    Plaintiff asserts that he submitted his grievance appeal (for grievance number "GR#24-0525") in the 15th day of October 2024. Plaintiff asserts that he commented that: **"The Facility wrongfully moved one of the I/Is that was sexually harassing me in 25 cell and he is still harassing me."** Plaintiff asserts that "Delee" was banging on the cell wall all night and that the deputies know its "Delee" whom is acting in an erratic manner but won't correct the inappropriate behavior. Plaintiff asserts that "Delee" started yelling around 7:00 am in the morning on Wednesday October 16th 2024 and openly stated that he has a problem with the Plaintiff because the Plaintiff "hates god" (because Plaintiff practices the belief of Voodoo) and because the Plaintiff is "conspiring with the deputies" (specifically, Defendant "Randall Sanderson") to target him and that he hates the fact that the Plaintiff was able to call the Police and FBI and he wasn't able to do the same. Plaintiff also asserts that "Delee" hates the fact that the Plaintiff be helping Incarcerated Individual Nyequest Allen with his § 1983 lawsuit and also hates the fact that the Plaintiff continues to file civil litigations against the deputies.

178.    Plaintiff asserts that he had spoken with mental health worker Mervin on the 15th day of October 2024 and had thereafter reported that Incarcerated Individual Maurice Delee

was fabricating reports about his banging on the cell wall and that it was actually "Delee" whom was banging on the cell wall and then yelling on the gate that it was the Plaintiff inorder to disguise the fact that "Delee" was intentionally attempting to cause the Plaintiff mental and psychological torment. Plaintiff asserts that the conversation was cut short because chow was being served around the time the mental Health worker was in-front of Plaintiff cell. Plaintiff also asserts that he did not use the Law Library Room the rest of that night because he simply just started preparing his cases by handwriting potential defense theories and legal arguments after returning back to his cell as a result of Mental Health Worker Mervin using the law library room in order to conducting interview with other incarcerated individuals.

179.    Plaintiff also asserts that he submitted a grievance complaint (see grievance number "GR#-240596") during the B Watch Shift on the 16th day of October 2024 which stated: "I am wrongfully suffering from mental anguish as a result of the facility maliciously moving "Maurice Delee" (ICN NO. 93001078) to 25 cell. It should be noted that the said I/I is one of the two I/Is whom I had previously file a "PREA" complaint about. It should also be noted that the said I/I is wrongfully banging on the cell wall all night and that the Deputies know of this fact but refuse to provide any form of cure to the psychological pain suffered unnecessarily by me. *I am also being served Styrofoam trays wrongfully." Plaintiff asserts that he thereafter request for reasonable relief by stating: If mental health deems that this I/I is not mentally stable, I am requesting that he be moved to 5C and or I'm requesting for the deputies to remove the hard plastic item out of his cell that the said I/I is using to bang on the wall. *ALSO, stop serving me Styrofoam trays because I'm not a special diet and because my food comes tampered with."

180.    Plaintiff asserts that the incarcerated Individual Nyequest Allen (ICN NO.15000405) also filed numerous of grievance complaints which also complained about the fact that the deputies were wrongfully serving the Incarcerated Individuals being housed within the Four-man Unit (SHU-2) Styrofoam trays and a paper spoon wrongfully (See Grievance Number "GR#24-629" which was submitted by Nyequest Allen). Plaintiff asserts that the Styrofoam trays are a way for the Defendants and deputies to hide the fact that they have (1) wrongfully tampered with the Incarcerated Individuals' food, (2) have wrongfully provided a small proportion of food to an incarcerated individual, (3) or simply placed an unhygienic substance in the food, and or (4) have simply withheld a specific food item from an incarcerated individual.

181.    Plaintiff asserts that Defendant Kolakowski conducted a Formal Disciplinary Hearing (IR # 24-"2404" ("Upon belief")) from approximately 9:30 am – to -- 9:53 am on the 16th day of October 2024. Plaintiff asserts that the Hearing procedure was conducted to address the misbehavior report written by Defendant Casey McPartland on the 8th day of October 2024. Plaintiff asserts that Defendant Kolakowski attempted to bribe him with little to no disciplinary sanctions if the Plaintiff simply pled guilty to the charge of misusage of equipment (in reference to the handcuff) but that he refused the offer. Plaintiff asserts that he refused the offer because he wanted for it to be properly documented that he suffers from both mental anguish and psychological pain every time Plaintiff is in the immediate area around Defendant Gerard Wagner; as a result of the

fact that Defendant Gerard Wagner had previously (1) threatened to kill the Plaintiff, (2) encouraged other incarcerated individuals that throw feces on the Plaintiff, (3) assaulted the Plaintiff (on the 26th day of September 2024) right in-front of the Disciplinary hearing room (which is also the law library room) by striking the Plaintiff with his right hand elbow to the back to Plaintiff head which cause the Plaintiff the suffer a minor bruise above his right eyebrow and which also caused the Plaintiff to call 911 and make a report of the assault.

182. Plaintiff asserted that the initial interaction occurred as a result of the Plaintiff complaining about being sexually harassed by the incarcerated person that was being house in 31 cell of SHU-3 and that one of the other said incarcerated individuals (inmate Maurice Delee (ICN NO.93001078)) who was also sexually harassing him was Plaintiff's neighbor and was still harassing the Plaintiff both sexually and by kicking on the Plaintiff's cell wall all night. Plaintiff also wanted for the record to document that he had been written a fabricated misbehavior report which claimed that the Plaintiff had falsified report to 911 and which thereafter was dismissed. Plaintiff asserts that he also wanted to document that he had went to Court on the 4th day of October 2024, where he was given the Grand Jury minutes pertaining the Promoting Prison Contraband in the 1st Degree charge. Plaintiff asserts that he was not able to notarize the motion papers which he had written in connect to the felony charges on that same day of October 4th 2024 because he had not completely read the Grand Jury transcripts yet. Plaintiff asserts that as a result he intentionally did not go to Law Library for five days (5) days straight so that there was no possibility for the Court nor the Onondaga County District Attorney's to be able to say that the Plaintiff had simply wrote the motion papers after he had read the Grand Jury transcripts. Plaintiff further asserts that he waited until he was properly able to notarize his previously filed dismissal papers first before he then decided to go to Law Library.

183. Thereafter, Plaintiff asserts that he notified Defendant Windey (who was literally physically present when the Plaintiff had gotten assaulted by Defendant Wagner), after he had brushed his teeth and cleaned his cell, that he wanted to go to the Law Library room during the B Watch Shift on October 8th 2024 morning. Plaintiff asserts that Defendant Gerard Wagner then made the next round and placed the mechanical restraints tight on his left hand wrist which compelled the Plaintiff to inform the defendant to loosen the cuff. Plaintiff asserts that he then grabbed the handcuff when defendant Gerard Wagner refused loosen the handcuff and that they had gotten into a tug-a-war of the handcuffs on Plaintiff's left hand wrist.

184. Plaintiff asserts that he request to call Incarcerated Individual Nyequest Allen as a witness because the said Incarcerated person was present on the "four-man" unit (SHU-2) and thus could hear of the commotion that occurred. Plaintiff also had called "Allen" as a witness so that the said Incarcerated person could simply related of all of the prior issues that the Plaintiff had suffered from as a result of the unprofessional actions committed by Defendant Wagner. Nonetheless, Plaintiff asserts that Defendant Kolakowski simply refused to ask the incarcerated individual to testify on the Plaintiff's behalf and rather instead just simply went to "Allen's" cell door and informed the

incarcerated individual that the said incarcerated individual will be getting provided with "Power of Attorney Notary" before then turning around and leaving the four-man unit. Plaintiff asserts that he had been requesting to be provided with a "Power of Attorney" Notary since approximately the 30th day of September 2024 and that he still had not been provided with the "Power of Attorney" notary service requested.

185.    Plaintiff asserts that Defendant Randall Sanderson wrongfully continued with his "calculative harassment" by conducting a malicious intended cell search of the cell assigned to the Plaintiff on the 16th day October 2024 for approximately 30 minutes while the Plaintiff was waiting in the shower to return back to his cell. Plaintiff asserts that Defendant Hujdur and Dustin Saddock also made a round before the Plaintiff was finally escorted back to his cell. Plaintiff asserts that defendant Randall Sanderson intentionally dumped and or stocked all of his legal papers in one huge pile on the floor and that it took him all night and until the next day to finish cleaning up his cell. Plaintiff also asserts that later on that same day (of October 16th 2024), he was provided with a copy of the grievance decision rendered by the facility in relation to the complaint submitted about Defendant Hujdur's unprofessional action of denying the Plaintiff of his right to participate in law library. Plaintiff asserts that he had a conversation with Defendant Hujdur about how he was denied of law library during the two weeks prior to him being moved to the four man Unit (SHU-2). Plaintiff asserts that it was at this time that defendant Hujdur acknowledge that the Plaintiff was indeed denied law library because the "other incarcerated individual" had asked first and that he had all intentions of letting the Plaintiff use the law library room thereafter. Plaintiff also assert the defendant Hujdur admitted that the other incarcerated individual was just messing with me when he said that he saw the computer and phone that the Plaintiff had in the law library room.

186.    Plaintiff asserts that he filled out an "Incarcerated Individual Referral form" on Thursday the 17th day of October 2024 during the B Watch Shit with was addressed to the "Administration" department and which specifically stated: "**I would like to PRESERVE SHU-2 CAMERA FOOTAGE & AUDIO which shows that Deputy Hujdur admits to denying me law library during the days and or timeframe alleged within Grievance complaint number "GR#24-0526". I had the conversation with Deputy Hujdur around 8:30 pm to 9:30 pm on the 16th day of October 2024, at which time Deputy Hujdur specifically stated that he denied me law library during the C Watch Shift because the other incarcerated individual had asked "first" and that the other incarcerated individual was just playing and or "messing with" me when he had described the computer and phone that was in the law library room."**

187.    Plaintiff asserts that he spoke with Defendant Devin Reschke about his PREA complaint during the B Watch Shift on October 17th 2024 from approximately 10:45 am to 11:15 am. Plaintiff asserts that the defendant refused to have mock him prior and of having used the neglectful words that he stated prior during their phone conversation. Plaintiff asserts that Defendant Devin Reschke denied to have the Position of "intelligence officer" and rather instead kept referring to himself as a "jailer". Plaintiff asserts that Defendant Reschke stated that Detective Ebert is in charge of prosecuting charges

against incarcerated individuals and that internal affairs is in charge of investigating matter involve misconduct allegations against "staff" before then stating that he doesn't "deal with them guys" (in reference to internal affairs). Plaintiff asserts that Defendant Reschke stated "to be honest, I don't think much will be done" pertaining to the Plaintiff PREA complaint. Plaintiff asserts that Defendant Reschke refused to entertain any of the Plaintiff's other complaints and this being even after Plaintiff showed the defendant that he had the phone number (315-435-1706) to the phone (which the defendant claims to be his office) that is were incarcerated individuals would call to make complaints about matter in relation to any wrongdoing within and outside of the Justice Center.

188.   Plaintiff asserts that Incarcerated Individual "Delee" was finally removed, on the 17th day of October 2024, from the four-man unit (SHU-2) and escorted to another unit of the Special Housing Unit after the Plaintiff had to repeatedly complain about "Delee's" sexual remarks, irrational behavior of banging on the cell wall and verbal abuse. Plaintiff asserts that he was not able to get any form of rational sleep for approximately 5 days as a result of the loud kicking and banging that "Delee" was making all night.

189.   Plaintiff asserts that Defendants J. Leubner, Lieutenant Woods and Lieutenant David Squairs and the "John Doe" Lieutenant (badge No. 2740) defendant (that signs his signatures on the grievances) all  must be held liable for being deliberate indifferent to the tortful actions being wrongfully inflicted upon the Plaintiff by the defendants. Plaintiff asserts that the herein said Defendants are responsible for overseeing and supervising the grievance committee within the Onondaga County Justice Center. Plaintiff asserts that the Defendants have wrongfully failed to correct and cure the mistakes committed by the Deputies and rather instead fabricated reason for justifying the Deputies and Defendants actions. Plaintiff asserts that Defendant Justin Leubner is also in-charge of the operations involving all mailroom serves and that it extremely bias in nature for the mailroom supervisor to also be in charge of reviewing grievance complaint allegations pertaining to the mishandling of incarcerated individuals mail. Plaintiff asserts that the "John Doe" Lieutenant who keeps signing off on the grievance complaints filed by the Plaintiff must also be held liable for deliberate indifference to Plaintiff injuries.

190.   Plaintiff asserts that Defendants R. Dobrowolski, Jammie Blumer, Devin Reschke, Detective Alexander Hebert, Tobias Shelley, Captain Nathan Hawker, Lieutenant Carsten and sergeant Leubner must be held liable for being deliberate indifferent to the injuries wrongfully suffered by the Plaintiff. Plaintiff asserts that the herein said defendant wrongfully failed to commence an investigation as requested on numerous of occasion by the Plaintiff and would instead lie to the Plaintiff about getting the assistance need. Plaintiff asserts that he used to call the Criminal Investigation Division (CID) and speak with "Mia" (pronounce as "My") and that she would transfer the Plaintiff to Detective Hebert whom initially refused to give the Plaintiff the phone number for internal Affair and would state that there office is not in charge of commencing with criminal investigations against deputies working within the Onondaga County Justice Center. Plaintiff asserts that every time he requested for criminal charges to be prosecuted against the Defendant that the facility would then commence with filing

criminal charges wrongfully against the Plaintiff. Plaintiff asserts that Defendant Carsten wrongfully refused to review all of the evidence and exhibit that he had pertaining to his mistreatment and pertaining to the mishandling of his legal mail. Plaintiff asserts that he had personally left two voice mails on the recording device designated for Tobias Shelley and that he never got the cure he need and this was after he had personally wrote to the Defendant himself on two separate occasions. Plaintiff asserts that Defendant Nathan Hawker also must be held liable for wrongfully failing to cure Plaintiff injuries after the Plaintiff had personally spoken with the defendant about his concerns. Plaintiff asserts that defendant Devin Reschke must be held liable for refusing to commence with an investigation and for thereafter mocking and laughing at the Plaintiff during their brief phone call conversation.

191.  On October 21st 2024, Plaintiff was finally provided with the Opportunity of getting A Power of Attorney Notary conduct so that he could legally be deemed as Nyequest Allen's "Power of Attorney" and thus thereafter commence with litigating and mitigating all civil matters in relation to Nyequest Allen's 42 U.S.C. 1983 lawsuit. Plaintiff asserts that Defendant Kevin Koehler notarized the Power of Attorney Papers as a witness of the transactions that was being personally notarized by Chief Diane Dover (who, according to Deputy Charmain Mason, is the only Person within Jamesville and the ("OCJC") Facility that is legally authorized to Notarize papers by way of "Power of Attorney").

192.  On the 22nd day of October 2024 Defendant Randall Sanderson maliciously continued with his "calculated harassment" by informing the Plaintiff that Plaintiff cannot go back to his cell after the Plaintiff had asked to return back to his cell because of the shower water being too cold because defendant Randall Sanderson wanted to first search Plaintiff's Cell (26 Cell of SHU-2). Plaintiff waited approximately 30 + minutes while the said defendant open every manila envelope that Plaintiff had in his cell and tossed Plaintiff's five hundred plus pages of legal papers in one huge pile in the middle of Plaintiff's cell. Defendants Randal Sanderson then informed the Plaintiff that he cannot have "staples" on the legal papers in his cell. Then thereafter defendants Dustin Saddock and V. Hujdur then entered SHU-2 housing unit and watched Defendant Randal Sanderson continued with the malice intended cell search.

193.  Plaintiff asserts that he had also gotten his letter to Defendant Limpert Notarized on the 22nd day of October 2024 by Charmain Mason. Plaintiff assert that in his letter he addressed the fact that he objects to the plaintiff that the Onondaga County District Attorney's office was wrongfully granted of the opportunity of getting an extension of time to file a response to the Plaintiff Omnibus motion which he submitted pro se (because Plaintiff is also representing himself PRO SE on his criminal case) because of the fact that the court wrongfully granted the Defendant of that privilege, on the 15th day of October 2024, even though the Court established deadline date for "The People" was for the 4th day of October 2024 (which both the Prosecutor and the Judge were physically present for when they wrongfully decided to limit the Plaintiff's right to petition to the government for a redress of grievances). Plaintiff asserts that also within that letter he complained about the fact that the ("OCJC") Facility wrongfully blocked

the Plaintiff from being able of getting in contact with the District Attorney's office. Furthermore, Plaintiff herein asserts that the Internal Affairs number along with the County Court Judge Limpert's chambers number, and numerous of the other number listed by the Plaintiff, are wrongfully being blocked by the facility so that the Plaintiff cannot adequately litigate matter pertaining to his criminal case and complain about the unprofessional mistreatment being egregiously inflicted upon him.

194.    Upon information and belief, plaintiff asserts that, on or around the 22nd day of October 2024, he was also provided with a letter which shows that **"The Internal Affairs Unit of the Onondaga County Sheriff's Office has completed the investigation of the complaint letter () sent to the Commission of Correction"**. Plaintiff herein asserts that the Internal Affairs department wrongfully found that the allegations raised by the Plaintiff were **"unfounded"**. Plaintiff asserts that the Commission of Correction office had given the Internal Affairs Unit an order to conduct an investigation into the allegation raised by the Plaintiff because of the fact that the Plaintiff had asserts that the grievance committee of the Onondaga County Justice Center facility has been wrongfully failing to provide any form of cure of the Plaintiff grievance and because of the fact that the Plaintiff is under the indication that the said defendants have also been failing to allow for the Plaintiff grievance to leave outside of the ("OCJC") Facility and that was one of the many phone calls which the Plaintiff had made prior to the phone privileges being wrongfully and unconstitutionally striped from him.

195.    Plaintiff asserts that the ("OCJC") facility has a history of wrongfully depriving incarcerated individuals of their right to petition to the government for redress of grievance and that it was even publically acknowledged by "Thomas Newton, a spokesperson for the Onondaga County Sheriff's Office" whom dated that "**According to Newton, Sheriff Toby Shelley and Undersheriff Jeffrey Passino were not notified for three days, first learning about the possible assault on Wednesday, Jan. 24. Newton declined to say one way or the other if the time that passed before the Sheriff was notified represented a failure in protocol**" (as cited from the Ozell Stanley news article which explained of the misconducts committed by deputies whom wrongfully battered another incarcerated individual within the Onondaga County Justice Center and which was specifically entitled as **"Onondaga County Sheriff's Office conducts immediate investigation into inmate's injuries"**). Plaintiff asserts that in his case the wrongful continuation of mistreatment along with the attempt of depriving the Plaintiff of his constitutional right of being able to petition to the government for a redress of grievance is a clear indication of Defendants malicious culpable state of mind, and thus is cruel and unusual punishment along with discriminatory treatment that deprives the Plaintiff of human decency and is therefore prohibited by the Eighth Amendment Clause of the United States Constitution, which is applicable to the states through the Fourteenth Amendment of the United States Constitution.

196.    Plaintiff asserts that Deputy Passardi stopped by the law library room while the Plaintiff was using the law library room during the B Watch Shift on the 23rd day of October 2024, in order to ask the plaintiff about his PREA complaint form filed pertaining to the incarcerated individuals (one I/I  presumably has the last name of "ANDREWS"(#1

Cells) and the other Plaintiff knows is "MAURICE DELEE") that were sexually harassing the Plaintiff. Plaintiff asserts that he informed the Deputy that he is not signing off on the grievance even though he did not appeal the facility's decision because of the fact that he did not want to his signature to be wrongfully misinterpreted to mean a form of consent towards the wrongful mistreatment inflicted upon him and because he does not want for the facility to maliciously thereafter also then allow for the said incarcerated individuals to be around him. Plaintiff asserts that Defendants Burns and Matthew Murphy thereafter wrongfully allowed for the incarcerated individual who was sexually harassing me to be outside in the cage next to the Plaintiff while the Plaintiff was outside for recreation during the C Watch Shift SHU established recreation time. Plaintiff asserts that he immediately asked to be returned back to his cell because of the fact that he did not want to be anywhere near the said incarcerated individual whom repeatedly kept sexually harassing him. Plaintiff asserts that the two said defendants were originally hesitant but the they allowed for the Plaintiff to return back to his cell after they plaintiff became persistent about not being outside near the said incarcerated individual.

197. Nonetheless, Plaintiff asserts that the defendants maliciously did this action after the Plaintiff had spoken with the grievance complaint officer and that the Defendants actions are maliciously because of the fact that it had been confirmed prior that the Plaintiff has a no contact (separation order) with the other said incarcerated individuals as a result of a PREA (Sexual Harassment) complaint.

198. Plaintiff asserts that Defendant J. Lantry and Daniel Gratien were working during the very next morning on the 24th day of October 204. Plaintiff asserts that he wrongfully denied of an adequate breakfast by the said Defendants servicing the Plaintiff with a Styrofoam tray that was missing a peanut butter. Plaintiff asserts that he was served with Cereal, Cinnamon stick cake (wrongfully unwrapped and already placed halfway in the fruit section(which Plaintiff asserts was peaches) of the Styrofoam tray(and thus wrongfully wet), milk, jelly (unwrapped and already poured in the tray) and two sausages. However, Plaintiff asserts that he was supposed to be serve with a peanut butter for that meal and that the other two incarcerated individuals (ALLEN and WASHINGTON) being housed within SHU-2 were also served with the same meal but that their Styrofoam trays came with peanut butter instead of two sausages.

199. Plaintiff asserts that he brought it to Defendant J. Lantry's attention without getting any form of cure nor resolution and that the said defendant rather instead, wrongfully, stated that the Plaintiff would never know if the defendant violated the Plaintiff's tray. Plaintiff asserts that he asked to get provided with peanut butter but that both defendants refused to provide Plaintiff with his request and that the said defendants also refused to get their area supervisor in order for the Plaintiff to get a grievance complaint about being provided with unwrapped food item (Cinnamon stick cake comes pre-wrapped and the Jelly), an item on his tray that was not supposed to be on his tray (sausage) and that the defendants refuse to give the Plaintiff peanut butter.

200. Plaintiff asserts that this act while it may seem de minimum must not be viewed as so. In this case, Plaintiff asserts that it is a known fact that he and Nyequest Allen always

attempted to trade their lunch trays whenever the Plaintiff gets served with bologna sandwiches and Nyequest Allen get served with Peanut butter and Jelly sandwiches. Plaintiff also asserts that a competent person and a fair minded jurist would determine that the defendants actions stands with the malicious intent of making the Plaintiff feel uncomfortable and or "violated' within the context of a prison environment where it is a custom belief and practice that most incarcerated individuals would call someone telling another person to "suck a dick" (which is one of the most ultimate signs of disrespect within a prison context) would call those words the "frank" (which is symbolized as a "hotdog" "sausage" and etc.).

201.  Therefore, defendant Alton Apples intentional act of walking with Plaintiff's tray into the same cell that was housing one of the incarcerated individual whom was sexually harassing the Plaintiff before then providing the Plaintiff his tray which had a "frank" on the tray (sausage and or hot dog type of food) and which the said defendant was intentionally looking at while giving the Plaintiff his tray was a clear indication which a prisoner and the Plaintiff would interpreted to mean that the defendant was subliminally implicating that the Plaintiff could "suck a dick" and or was "blatantly disrespecting" the Plaintiff. Likewise, a competent person and a fair minded jurist would also conclude, upon sound reasoning, that the two defendants' actions would also implicate the same notion especially since like with Defendant Alton Apples situation the Plaintiff had filed a grievance complaint about the numerous unprofessional actions committed by defendant J. Lantry during the service of Plaintiff prior meals and because of the fact that the Plaintiff had also filed a grievance complaint about the fact that the two said defendants had also wrongfully violated the Plaintiff's right to complain about being sexually harassed by incarcerated individuals.

202.  Moreover, Plaintiff asserts that Defendants Hujdur, Alton Apples and Conner Hanauer continued to violate the Plaintiff's right of being provided with adequate food during the C Watch Shift on the 24th day of October 2024. Plaintiff asserts that he was provided with Noodles, a Strawberry cookie, two slices of bread and corn, while the other two incarcerated individuals were provided with Noodles, string beans, two slices of bread, a Strawberry cookie and **a chicken patty**. Plaintiff asserts that he immediately notified defendants Conner Hanauer that his tray was missing a chicken patty without getting any form of cure nor resolution.

203.  Plaintiff asserts that, during the B Watch Shift at approximately 10:40 AM EST on the 24th day of October 2024, he noticed that Detective Sergeant Stark, along with Undersheriff Jeffery T. Passino and defendants Tobias Shelley and Kolakowski were making round around the SHU designated area of 5B Housing Unit. Plaintiff assert that Detective Stark looked into the Four-man unit but never came in and thus both the Plaintiff and Incarcerated individual Nyequest Allen then started verbally request for the Sheriff and the entourage to enter SHU-2 so that the Plaintiff and his "principal" Nyequest Allen could personally speak with the Sheriff about their concerns of being mistreated and about the unprofessional action wrongfully being committed by the defendants and the facility. However, bot the Plaintiff and his "Principal" (Nyequest

Allen) were wrongfully denied of the opportunity to speak with the Sheriff, undersheriff and a supervisor of the internal Affairs unit.

204.    Plaintiff asserts that his food continued to get violated by the herein defendants. Plaintiff asserts that Defendants Daniel Gratien and M. Cullen were working during the B Watch Shift, on the 25th day of October 2024. Plaintiff asserts that at this time he was served with Grits, shit on the single, biscuit (which was wrongfully halfway already in the shit on the single, which the Plaintiff never eats because of the fact that it has the same appearance of unhygienic human fluids and because of the fact that he has actually found and observed unhygienic human fluid in his food before) and potatoes(thin cut slices with seasoning). Plaintiff asserts that the two incarcerated individuals whom were being housed within SHU-2 were served with scramble eggs, potatoes (thin cut slices with seasoning), Grits and a cake. Again, Plaintiff informed Defendant Daniel Gratien that his tray was missing an item out of the tray but got no resolution. Rather instead, the defendant acted as if the other incarcerated individuals had also received the same tray as the Plaintiff.

205.    Plaintiff asserts that he was then provided with a Styrofoam tray during the service of the Lunch tray which had his name written on the lid. Plaintiff asserts that Defendant Daniel Gratien specifically stated that he had asked for the tray to be Specifically made special for the Plaintiff. Plaintiff asserts that these comments along with the escalation of the boldness of the defendants action cause for him to decide that he had to do something to prevent the defendant from continuing with violating the Plaintiff's tray and which would also bring notification of the tortful actions to the defendants said supervisors. Therefore Plaintiff decided that he had to throw water, and other unknown substances at Defendant Daniel Gratien inorder for the defendant to know that he is not tolerating the continuation of harassment. Plaintiff assert that he did just that and that Defendant Daniel Gratien then used unnecessary force by pulling out his pepper spray and wrongfully sprayed the Plaintiff before complicating on whether or not to go into the Plaintiff's cell in order to continue with the wrongful behavior.

206.    Plaintiff asserts that approximately thirty minutes later Defendant Casey McPartland along with defendants M. Cullen and P. Lorenzo thereafter arrived to the Plaintiff cell door. Plaintiff asserts that defendant Casey McPartland was wrongfully ignoring the concerns and complaints raised about the mishandling of Plaintiff's food. Plaintiff asserts that Defendant Casey McPartland also biasly disregarded the fact that that Plaintiff had shown the said defendant of actual physical evidence when Plaintiff present the Styrofoam lid which had his last name written on it to the said defendant. Plaintiff asserts that Defendant McPartland was only worried about the fact that unknown substances where thrown on Defendant Daniel Gratien.

207.    Plaintiff asserts that that Defendant M. Cullen then start talking aggressively to him ignoring the fact that the Plaintiff attempted to show the defendant that defendant Daniel Gratien had wrongfully pepper sprayed him. Plaintiff asserts that the said defendant then instructed for the Plaintiff to put on his jumpsuit but that the said defendant wrongfully refused to inform the Plaintiff of where the defendant were about to bring him, Plaintiff

asserts that defendant M. Cullen then grabbed the Plaintiff aggressively while using unnecessary force by pushing the Plaintiff back as the plaintiff was being escorted to the booking room on the first floor of the ("OCJC") Facility in order to for the Plaintiff to be body scanned. Plaintiff also asserts that he saw Defendant Daniel Gratien behind the entrance door of the 5B Housing unit and that defendant McPartland gave Defendant Daniel Gratien the authorization to search the Plaintiff cell. Plaintiff notice that both of his towels were wrongfully removed from his cell along with all his bottles and his cup.

208.    Plaintiff asserts that Defendant Casey McPartland wrongfully threaten to press charges against the Plaintiff for allegedly throwing urine at Defendant Daniel Gratien during the entire time at booking and that defendant M. Cullen wrongfully attempted to intimidate the Plaintiff by repeatedly telling the Plaintiff to shut up. Plaintiff asserts that Defendant M. Cullen wrongfully kept repeating, in an aggressive intimidating manner, that the Plaintiff better shut up before they go to his cell while the said defendant were escorting the Plaintiff back to his cell.

209.    Thereafter, Defendant Casey McPartland wrote an "Inmate Misbehavior Report/Hearing Notice" which stated that: "While you were in your assigned cell in pod 5BSH2 you threw an unknown substance at the pod deputy striking him with it. Your actions caused the deputy to be annoyed and alarmed for no legitimate reason."

210.    Plaintiff asserts that defendant Hujdur wrongfully deprived the Plaintiff of his food by the said Defendant giving Plaintiff a Styrofoam tray which was wrongfully missing a cake inside of it. Plaintiff asserts that he immediately stopped Defendant V. Hujdur and showed the defendant that his tray was missing a cake at which time the defendant stated that he would look to see if every other incarcerated individual was also missing a cake from their trays as well. Plaintiff asserts that he again waited for another round to be conducted, at which point the Plaintiff made sure to inform Defendant Alton Apples about the missing cake from his tray. Plaintiff asserts that Defendant Alton Apples wrongfully stated that the Plaintiff was indeed served with a tray that had a cake in it but that the Plaintiff simply ate the cake. Plaintiff then grabbed his untouched tray from the floor and showed the defendant that not only was he never served with a cake but that he did not touch his food so that the Defendants would not be able to alleged the specifically argument that the Plaintiff was trying to scam them for another cake. Plaintiff asserts that he informed Defendant Alton Apples of the fact that Defendant Hujdur had stated that he would make an inquiry and thus the Plaintiff was waiting to find if the Plaintiff could rightfully be provided with a cake before he ate the food in his tray.

211.    Plaintiff asserts that he again waited for another round to be made. Plaintiff asserts that defendant Alton Apples made a round on the Flats (lower level around cells 23 & 24 of SHU-2) and that Defendant V. Hujdur made a round on the upper level of SHU-2 (25 cell & 26 cell). Plaintiff asserts that he brought the matter up to defendant V. Hujdur whom then maliciously stated that the Plaintiff was provided with a cake and then egregiously disregarded the fact that there was still no cake and or frosting or any other form of evidence to support the fact that there ever existed a cake in the Plaintiff's tray.

Frustrated and upset about being conned, the Plaintiff then waited for Defendant V. Hujdur to made his next round before then attempting to piss on the Defendant through the hole area of the meal slot area of his cell door. Plaintiff missed the defendant and thus the defendants placed a mechanical device on the Plaintiff door which prevent the Plaintiff from being able to throw food and or liquid from out of his cell.

212.    Plaintiff asserts that, on the 26th day of October 2024, the Defendant wrongfully continued with the mistreatment by the defendants wrongfully serving the Plaintiff a Styrofoam tray during the B Watch Shift which was consist of open and poured syrup, 2 waffles, oatmeal and 2 sausages while the other said incarcerated individuals received peanut butter and jelly, oatmeal waffles and syrup. Plaintiff again complained about the mistreatment before then asking to go to law library so that the Plaintiff could just simply write about of the mistreatment that the Plaintiff had to wrongfully endure after the Plaintiff was provided with "Power of Attorney" Notary Services.  Plaintiff asserts that the mistreatment again continued during the C Watch Shift. Plaintiff asserts that he heard Ethan Perry commented about checking the trays before Defendant Conner Hanauer then enter the four-man unit with the Styrofoam trays. Plaintiff asserts that he specifically asked for defendant Conner Hanauer to check the tray so that the camera could see of the items that were in the tray before the defendant attempted to give the Plaintiff his tray. Plaintiff asserts that defendant Conner Hanauer simply ignored his request and placed the tray on the slot before opening the slot on Plaintiff's door. Plaintiff asserts that he immediately notified Defendant Conner Hanauer about the fact that he was served with a cake, 2 slice of bread, string beans, chopped up lettuce with carrots and a beef patty. Plaintiff informed the defendant that the tray was missing either rice or potatoes. Again, defendants wrongfully ignored the Plaintiff and didn't show the plaintiff another tray which would prove that the defendants were not acting a malicious manner nor did the defendants provide the Plaintiff with a grievance complaint nor notify their area supervisor about the matter. Instead the defendant simply mocked the Plaintiff about complaining about being denied of food items. Plaintiff again as of the 30th day of October 2024 was provided with sausages during the service of the breakfast meal (which consisted of two sausages, two pancakes, syrup that was already poured in the trays and two different types of cereals mixed together – one being a genetic Bran Flakes and the other being a genetic Cornflakes) when Defendants Daniel Gratien and M. Cullen were working.

213.    Plaintiff asserts that he has wrote administration and asked for a menu on numerous of occasions without being provided with a menu. Plaintiff asserts that he has wrote numerous of grievance about being wrongfully served with a Styrofoam tray without being provided with any form of cure nor resolution. Plaintiff asserts that the defendant have constantly opened and or unwrapped sealed food items, and or took food item from the Plaintiff's tray without any form of justifiable reasoning.

214.    Plaintiff asserts that he is being wrongfully subjected to atypical and significant hardship by the said defendants refusing to remove the Plaintiff from the special housing unit. Plaintiff asserts that he along with his "Principal" Nyequest Allen and Brian Washington are the only male incarcerated individuals left housing on 5B floor of the ("OCJC")

Facility for disciplinary sanctions. Plaintiff further asserts, upon information and belief, that every other male incarcerated individual with Disciplinary sanctions are being housed in 2C under living conditions that the facility is determining to meet the standards setforth for a "Step Down/RRU" housing unit. Plaintiff asserts that a competent person and a fair minded jurist would determine, upon sound reasoning, that the herein named Defendants are acting in a manner consistent with retaliatory treatment because of the fact that the Plaintiff himself has been litigating for in order for incarcerated individuals to be provide with the privileges setforth under the HALT LAW and pursuant to Correction law 137. Moreover, Plaintiff asserts that other incarcerated individuals are now getting granted the same privileges which he himself had petitioned for and that the facility is wrongfully refusing to allow for the Plaintiff to enjoy the said privileges as retaliatory treatment for the Plaintiff petitioning to the government for a redress of grievances.

215.    For these said reason Plaintiff has decided to commence with filing a 42 U.S.C. §1983 Civil Action so that he may be provided with the cure and relief he need. Plaintiff asserts that he has exhausted all of his remedies thoroughly and has even attempted to get help by coming to a common ground understanding with the defendants without any justice being rendered. Plaintiff asserts that he had even submitted a motion for a Change of Venue in which he asked for the Onondaga County District Attorney's office to conduct an investigation into the mistreatment and discriminatory treatment being suffered from by the Plaintiff. Plaintiff asserts that he even provided evidence of his mistreatment in the motion papers he also submitted in connection to the two count of promoting prison contraband charges in the 2nd degree brought against the Plaintiff by the defendants. Plaintiff asserts that he is asking for three million dollars as compensation for both the punitive damages wrongfully inflicted upon the Plaintiff and for the refund of all of the financial money removed from his prison account wrongfully. Plaintiff asserts that, in order to save both the court and all parties involved some valuable time, he is again willing to negotiate with the defendants by declaring that he is willing to accept an early settlement plea for nothing less than one million five hundred thousand ($1,500,000.00ᶜ) United States Dollars with the understanding that the Plaintiff will (1) be immediately released from the special housing unit and returned to a general population housing Unit, (2) get provided with double proportion trays (and no Styrofoam trays), (3) an accurate and true copy of the menu of the meals that are being served, (4) transferred to Jamesville so that the Plaintiff does not have to be around any of the defendants whom have a personal problem with the Plaintiff and so that the Plaintiff does not have to interact with any of the Defendants whom have repeatedly continued to violate Plaintiff constitutional rights, (5) continue to be granted of his PRO SE status for all of his civil and criminal cases, (6) for the defendants to uphold the rules and regulation established for Prisoners within the law setforth under Correction Law 137 and to thereafter also create a safer and more adequate living conditions(which will uphold the Human Decency Clauses established under the Eighth Amendment United States Constitutional Rights) for prisoner being housed within the Onondaga County Justice Center, (7) provided with color photographic evidence of the color of the Chair within the 3B Housing Unit, (8) get a chance of being provided with new clothes (white T-shirt, boxers, socks and towels) along with new white sheets and black blankets, and (9)

physical therapy for his fracture right hand and or for a chance to get surgery on his right hand so that the fourth and fifth metal carpal bones in his right hand could get properly fix along with the MCF shaft bone near the Plaintiff's wrist which the defendant further damaged. Plaintiff also thereafter declare that he is ready for trial if the defendants do not want to provide the Plaintiff with this Settlement Deal and thus will thereafter be requesting to be compensated with Five Million Dollars for the Punitive and actual financial damages.

RIGHT OF ACTION

Plaintiff, proceeding Pro Se, complaining of the defendants and alleges as follows:

COUNT ONE: CRUEL AND UNUSUAL PUNISHMENT
EIGHTH AMENDMENT VIOLATION
FOURTEENTH AMENDMENT

AS AND FOR THE FIRST THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE, AGAINST DEFENDANTS CONNER, MARC SARNO, DEMKO, DUSTIN SADDOCK AND FODARO

216.    Defendants Conner (Badge No. 4197) must be held liable for wrongfully disrespecting the Plaintiff and for wrongfully confining the Plaintiff to the Special housing Unit without justifiable cause on the 21st day of November 2023. Defendant Conner's deliberate indifference of Plaintiff's health and safety was further presented when the Defendant blatantly sat by and watched as the Plaintiff was attacked without intervening in any manner. Plaintiff asserts that Defendant Conner's culpable mind state was further revealed by the Incident report he wrote against the Plaintiff which stated that the Plaintiff had gotten into a **mutual combat** with another incarcerated individuals and that this specific language was used as retaliatory for the threats alleged to have been made by the Plaintiff a month prior.

217.    Defendant Marc Sarno must be held liable for wrongfully threatening to kill the Plaintiff and the Plaintiff's sisters, on the 21st day of November 2023. Such comments are unprofessional and are not just inconsistent with the integrity and interest established by the Onondaga County Sheriff's Department but is also thereafter against the law. Plaintiff asserts that he is truly under the assumption that defendant Marc Sarno is intending to kill him and his sister. Plaintiff asserts that he does not feel comfortable around the Defendant and that such words causes the Plaintiff to suffer from PTSD. Plaintiff asserts that the fact that Defendant Marc Sarno had commented that he would "get some Pussy" for another incarcerated individual because the said incarcerated individual attacked the Plaintiff stands as proof of deliberate indifference and the fact that the Defendant thereafter wrote that the Plaintiff participated in a **mutual combat** with another incarcerated individuals shows of the cruel and unusual mind state of the defendant whom had alleged that the Plaintiff had threaten him.

218.    Defendant Demko must be held liable for being deliberate indifferent to the injuries suffered by Plaintiff while the Plaintiff was mechanically restraint (handcuffed) behind his back and was non-combative. Specifically, Defendant Demko was present during the SERT move and was physically present in 29 cell when Deputies were attempting to break the Plaintiff's right hand while the Plaintiff was laying on the mattress on the floor and surrounded by numerous of Deputies, this including Defendant Demko. Defendant's actions prevented the Plaintiff's already fractured right hand from being able to heal properly and thereafter inflicted mental anguish and psychological pain upon the Plaintiff. Defendant's actions and or failure to act stands as a wanton and unnecessary infliction of unprovoked tortful behavior which is inconsistent with the Eighth Amendment cruel and unusual punishment clause of the United states constitution.

219.    Defendant Fodaro must be held liable for being deliberate indifferent to the injuries suffered by Plaintiff while the Plaintiff was mechanically restraint (handcuffed) behind his back and was non-combative. Specifically, Defendant Fodaro was present during the SERT move and was, upon information and belief, physically present in 29 cell when Deputies were attempting to break the Plaintiff's right hand while the Plaintiff was laying on the mattress on the floor surrounded by numerous of Deputies, this including Defendant Fodaro. Defendant's actions prevented the Plaintiff's already fractured right hand from being able to heal properly and thereafter inflicted mental anguish and psychological pain upon the Plaintiff. Defendant's actions and or failure to act stands as a wanton and unnecessary infliction of unprovoked tortful behavior which is inconsistent with the Eighth Amendment cruel and unusual punishment clause of the United states constitution.

220.    Defendant Dustin Saddock must also be held liable for being deliberate indifferent to the injuries suffered by Plaintiff while the Plaintiff was mechanically restraint (handcuffed) behind his back and was non-combative. Specifically, Defendant Saddock was present and in charge of supervising the SERT move and thus, upon information and belief, could have prevented the Plaintiff from suffering injuries and could have even thereafter provided cure to the tortful behavior which he had time to stop prior to the extended amount of time which the Plaintiff was wantonly and unnecessary force to suffer from the said pain.

221.    Plaintiff asserts that Defendant Dustin Saddock's comment about how Plaintiff was "too stupid" to know better shows the Defendants culpable mind state of baiting the Plaintiff into an all-out confrontation and that the defendants actions was trap for justifying wrongfully battering the Plaintiff if the Plaintiff attempted to resist the cruel and unusual punishment that was inflicted upon him.

222.    Plaintiff asserts that Defendant Conner's threat of placing the Plaintiff in the SHU along with Defendant Sarno's actual threat of kill the Plaintiff prior to the assault stands as evidence that the Defendants actions were premeditated.

223.    Plaintiff asserts that the unnecessary use of force was premeditated and was not conducted in a good faith effort to restore order. Plaintiff asserts that the *Hudson* standard applies because the

tort was so cruel and unusual that it is shocking to the mind of a competent but due to the fact that it went against the integrity and interest of the facility's goals and policies.

### AS AND FOR THE SECOND THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE, AGAINST DEFENDANTS TINEO, P. LORENZO AND ALTON APPLES

224.    Plaintiff asserts that Defendant Alton Apples must be held liable for cruel and unusual of specifically searching the plaintiff's cell with the sole purpose of damaging the Plaintiff personal property along with to misplace and confiscate Plaintiff's legal papers wrongfully. Defendant Alton Apples must be held liable for wrongfully threating to fabricate a misbehavior report against the Plaintiff as a result of the Plaintiff grieving about the fact that the defendant's actions wrongfully deprived Plaintiff of essential legal papers.

225.    Defendant Tineo and Sergeant p. Lorenzo must be held liable for endorsing a misbehavior report against the Plaintiff in an attempt of wrongfully covering up for the tortful actions committed by Defendant Alton Apples, and which thereafter wrongfully further confined the Plaintiff in the Special house unit in violation of the Eighth Amendment cruel and unusual clause of the United States Constitution.

226.    Plaintiff asserts the defendants actions accompanied with the fact that he had requested for the facility to PRESERVE VIDEO FOOTAGE & AUDIO RECORDING of the threats and disrespect wrongfully inflicted upon Plaintiff by the defendants' co-workers stands as a form to retaliatory treatment which would compel a competent person and a fair minded jurist to render that the defendants acted in an attempt to inflict psychological trauma upon the Plaintiff and as an attempt of getting rid of the potential documentary evidence which would incriminate their co-workers.

227.    Plaintiff asserts that even though Plaintiff's fourth Amendment right of being free from unreasonable search and seizure are limited while the Plaintiff is being confined within a prison type environment does not mean that such rights are completely stripped from Him and nor does it mean that the Plaintiff can just simply be subject to wantonly and unnecessarily evasion of privacy. Here, Plaintiff asserts that a competent person and a fair minded jurist would still determine that his fourth Amendment right were still violated as a result of being subjected to an unnecessary search and seizure which disguised as a (area "Shakedown") and which evaded the Plaintiff privacy by forcing the Plaintiff to be striped searched unjustifiably. In this case, defendants conspired to inflict fear and psychological pain upon the Plaintiff by immediately doing a "shakedown" after receiving notification of the Plaintiff's request to preserve the video and audio of an incident which capture their co-workers committing tortful and unprofessional action which are not only against the right established within the Eight Amendment Cruel and unusual Punishment Clause but which are also against the law set forth under New York State.

### AS AND FOR THE THIRD THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE, AGAINST DEFENDANTS (SERGEANT) STONE AND "JOHN DOE'

228.    Plaintiff asserts that the "John Does" Defendant whom was assigned as the 3B Pod floor officer on the 19th day of December 2023 must be held liable for fabricating an incident which thereafter resulted in the Plaintiff being wrongfully confined in the Special house Unit for facility rule violation which the Plaintiff did not even commit. Defendant's actions deprived the Plaintiff of liberty within the context of the prison environment and also thereafter the Plaintiff to suffer from emotional and psychological pain as a result of being attack unjustifiable by another incarcerated individual whom was being housed within the housing unit as the Plaintiff. The "John Doe" Defendant's actions are in violation of the Eighth Amendment Cruel and Unusual Punishment clause of the United States Constitution.

229.    Defendant Stone must be held liable for endorsing a misbehavior report which alleged of facts which the defendant knew were false. Defendant's actions are against the right established by the Fourteenth amendment of the United States Constitution. Specifically, the Defendant's actions deprived the Plaintiff of due process and liberty within the context of a prison environment by wrongfully confining the Plaintiff under conditions which are "atypical and significant Hardship". In this case, segregating the Plaintiff in General housing during the Christmas holiday and during the New Year's celebration, along with depriving the Plaintiff of the opportunity of adequate nutrition of food, a warm cell, no music, television, a warm shower are cruel and unusual conditions which no citizen of the United States should be subjected to. These facts when viewed with the fact that Plaintiff was then unnecessarily attacked by another incarcerated individual whom was encouraged by deputies to act upon such violence and then reward for such actions, stands as "typical and significant hardship. Especially since the Plaintiff was thereafter wrongfully subjected to SHU confinement for an act which was forced upon him and which thereafter then triggered for the Plaintiff to suffer from being verbally abuse and emotionally traumatized.

AS AND FOR THE FOURTH THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE, AGAINST DEFENDANTS CASEY MCPARTLAND, DEVIN RESCHKE, DEMKO, ALEXANDER HEBERT, SHAQUILLE HERBERT, DANIEL LAVY, (SERGEANT) BERGMAN AND (DEPUTY) CRUZ

230.    Plaintiff asserts that Defendant Cruz must be held liable for the cruel and unusual punishment wrongfully inflicted upon the Plaintiff on April 21st 2024. Plaintiff asserts that the defendants actions were unprovoked and stand as bias retaliatory treatment. Plaintiff asserts that the defendant should not have maliciously conduct a cell search of the cell assigned to the Plaintiff, and that the defendant should not have wrongfully confiscated any property the property which Defendant Cruz alleged was excessive. Plaintiff asserts that Defendant Cruz should not have thereafter wrongfully place Plaintiff on a 17 hour keeplock sanction after verbally disrespecting the Plaintiff unjustifiably. Plaintiff asserts that Defendant Cruz actions are an abuse of power and are consistent with retaliatory treatment which is against the Eighth Amendment Cruel and Unusual Punishment Clause.

231.    Plaintiff asserts that Defendants Casey McPartland, Devin Reschke and Shaquille Herbert violated his Eighth Amendment Constitutional Right of being free from Cruel and Unusual

Punishment by wrongfully endorsing a fabricated report which thereafter was egregiously used as the accusatory instrument to prosecute criminal charges against the Plaintiff.

232.    Plaintiff asserts that the defendant Daniel Lavy must be held liable for being deliberate indifferent to the cruel and unusual punishment suffer by the Plaintiff. In this case, Plaintiff asserts that Defendant Lavy knew that the information provided within the report was legally insufficient and that there was not any sufficient evidence to support the allegations raised against the Plaintiff. Plaintiff asserts that it is Defendant Lavy's job to conduct an investigation into the video footage and other evidence to determine whether or not the allegations raise are true or not. Plaintiff asserts that Defendant Lavy knows the fact that there are no gray colored chairs in the 3B Housing unit. Plaintiff asserts that Defendant Lavy also knows that defendant Cruz had conduct a cell search two days prior and that the Plaintiff was placed on a 17 Hour disciplinary sanction unjustifiably for having excessive amount of items within his cell and therefore Defendant Lavy thus also knew that it was impossible for the Plaintiff to have been in possession of the contraband as alleged.

233.    Plaintiff asserts that Defendant Casey McPartland thereafter further inflicted cruel and unusual punishment against the Plaintiff by providing perjury testimony at the Plaintiff's Grand Jury proceeding. Plaintiff asserts that Defendant Casey McPartland knows for a certainty that there are no gray colored chairs on the 3B Pod unit and still lied wrongfully inorder to get a prosecution against the Plaintiff.

234.    Plaintiff asserts that Defendant Alexander Hebert further inflicted cruel and Unusual Punishment against the Plaintiff by wrongfully misleading the juror with the testimony that the provided at the Grand Jury proceeding. Specifically, Plaintiff asserts that Grand Jury transcript stated:

- "Q   Did you draw any conclusions as to where this may have come from?
- A   The report - -  as far as the object itself, it's hard to say. The - - the incarcerated have a lot of time to find objects and re-purpose them, so I wouldn't - - be able to say exactly where it would come from or where it came from, broken off from to be used to whittle down to a sharp object."

235.    Plaintiff asserts that Defendant Alexander Hebert did not only wrongfully fail to conduct an investigation in order to determine whether or not the allegations made in "**The report**" were correct (as required by law) but rather instead came up with a theory of the Plaintiff's guilt of possessing the alleged contraband which was presented to the Grand Juror in a manner as an expert witness and which thus wrongfully mislead the Juror into finding the Plaintiff guilty for the offenses charged.

236.    Plaintiff asserts that Defendant Shaquille Herbert also inflicted cruel and unusual Punishment against the Plaintiff by providing misleading information in the Defendants Report which portrayed the image as if some of the chairs on the 3B housing unit could have been damaged and or could have been used as a material to form the contraband, when in all actually the said defendant knew for a fact that the chairs were not damages

and that the color of the material alleged to have been contraband was not the same color as the chairs on the 3B housing Unit.

237.    Plaintiff asserts that Defendant Demko must be held liable for the cruel and unusual punishment inflicted upon the Plaintiff as a result of being part of **the plan** which resulted in the Plaintiff being wrongfully prosecuted for a crime which he did not commit. Plaintiff asserts that he is not able to identify whom placed the contraband on the floor nor is he able to identify how the said object got place on the floor, but does asserts that he did not place the said contraband on the floor and thus there stands a rational probability that one of the defendants and or deputy Morris wrongfully placed the said item there. Plaintiff asserts that the video footage recording also does not provide any clarification as of how and or of whom placed the said object on the floor. Plaintiff asserts that the Grand Jury Transcript provide even more doubt as of how the contraband could have gotten on the floor, by the transcripts stating that:

- "Q what are these two doors we see here on the right-hand side?
- A Those doors would go to the pod next-door, 3A. Central control has to override those or we have t - - we never use them unless a fire drill we have to.
- Q Those are locked?
- A That's correct. They were locked.
- Q What's on the far right here?
- A That part, we can't see. There's those two doors, there's a - - goes into the - - a wall and comes down like this that's like this.
- Q Just a sold wall?
- A Yep."

238.    Plaintiff asserts that there stands a high probability that another deputy whom may have also been part of **the plan** could have being unseen behind the two doors on the far right. Plaintiff asserts that Defendant Demko's prior malicious actions along with his presence during the preplanned fabricated incident charged against the Plaintiff stand as a culpable state of mind which shows that the defendant was deliberate indifferent to the Plaintiff's injuries.

239.    Plaintiff asserts that Defendant Devin Reschke must be held deliberate indifferent for the Cruel and Unusual Punishment inflicted upon the Plaintiff because of the fact that it was originally Defendant Reschke who asserted that an incarcerated individual had implicated that the Plaintiff was in possession of an alleged contraband. However, the Plaintiff shines a light on the fact that Incarcerated individual "Britte" (a Caucasian inmate who was sentence to 8 years) along with Incarcerated individual "O'Neill" had already been placed on keep lock sanctions prior to the alleged incited reported to the defendant. Therefore, Plaintiff is under the assumption that the Defendants used that incident as justification to wrongfully confine the Plaintiff in the Special Housing Unit. Plaintiff asserts that his Fourteenth Amendment Procedure Due Process rights are being violated as a result of the facility and the Onondaga County District Attorney's office wrongfully refusing to allow the Plaintiff to listen to the tape record which they alleged initially gave the defendants justification to invade the Plaintiff's privacy. Plaintiff asserts that there may not even exist

any tape recording and that if that is true then that fact would support his argument that the Defendant wrongfully confined the Plaintiff as retaliatory treatment for the Plaintiff turning on the Sport's television on the 21st day of April 2024. Plaintiff asserts that Defendant Reschke's actions are also poisonous as he intentionally failed to report the information provided to him much sooner. Plaintiff is asking for an Declaratory order which would determine whether or not the defendants are violating the Plaintiff's Procedure Due Process rights by asserting that they have such audio record without providing the Plaintiff of an opportunity to inspect the audio recording. Also Plaintiff is requesting for an Injunction Order for the defendant to provide the Plaintiff and this District Court with Photographs of the chairs on the 3B housing pod so that the Court may determine whether or not the Defendant have indeed committed perjury as herein asserted by the Plaintiff.

240.    Plaintiff asserts that Defendant (sergeant) Bergman must also be held liable for being deliberated indifferent to the cruel and unusual punishment inflicted against the Plaintiff. Plaintiff asserts that Defendant Bergman was required to instruct his inferior detective to make sure to thoroughly conduct an **INVESTIGATION** as required ("OCSO CID Detective Hebert notified **for further investigation**" (as quoted from Defendant Reschke's report**).** Plaintiff also asserts that Defendant Bergman should not have endorse defendant Herbert's accusatory instrument until after Defendant Bergman had conducted an investigation into the matters himself. Plaintiff asserts that the Defendants action wrongfully mislead the Grand Jury Jurors into believing that the Defendant had altered an item (specifically, a "chair") within his housing unit which was then confiscated by the deputies. Plaintiff asserts that he is presently litigating against a criminal charge which is not supported by any form of sufficient evidence because of the fact that defendant Bergman wrongfully failed supervise and investigate into matter which the Defendant is required to do by law as they are within his job description.

### AS AND FOR THE FIFTH THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE, AGAINST DEFENDANTS GERARD WAGNER, WINDEY AND CASEY MCPARTLAND

241.    Plaintiff asserts that defendant Gerard Wagner must be held liable for inflict cruel and unusual punishment upon the Plaintiff. Specifically, Plaintiff asserts that defendant Wagner must be held liable for threatening to kill the Plaintiff while him and Defendant Windey were working and for thereafter also encouraging other incarcerated individuals to harass the Plaintiff. In this case, Plaintiff asserts that defendants Wagner must be held liable for wrongfully encouraging incarcerated individual Roberson (whom was being housed in 28 cell if SHI-3) to throw feces and other unknown unhygienic liquids on the Plaintiff while the Plaintiff was being housed in 29 cell (of SHU-3). Plaintiff asserts that Defendant Wagner would constantly slander the Plaintiff reputation and character by wrongfully talking about the Plaintiff's criminal case in a false manner and by thereafter also wrongfully referencing to the Plaintiff as a sex offender and or speak about the Plaintiff's personal life as if he actually knew the Plaintiff when in all actually he never knew the Plaintiff in regular society and that was just speaking about his Childhood adoption story that was printed in the Syracuse Newspaper article years prior. Plaintiff

asserts that the said torment caused the Plaintiff mental anguish and would thereafter also always wrongfully cause the Plaintiff to constantly get into a verbal disagreement with other incarcerated individuals and that the Defendant would further incite the situation by verbally disrespecting the Plaintiff whenever the Plaintiff would get into verbal disagreements with the incarcerated individuals whom the Defendant was using as a "conduit" to harass the Plaintiff.

242.    Here, Plaintiff asserts, upon information and belief, that Defendant Windey was present when defendant Wagner wrongfully threatened to kill the Plaintiff and thus defendant Windey  must be held liable for being deliberate indifferent to Plaintiff's injuries because the said defendant wrongfully failed to report defendant Wagner's unprofessional remarks as required by law. Plaintiff asserts, with certainty, that defendant Windey was also present (outside of the Law Library room) when , on October 8th 2024, defendant Wagner wrongfully striked the Plaintiff with his left elbow while the non-combative and non-resisting Plaintiff was mechanically restraint and thus was defenseless to the tortful action inflicted upon him.

243.    Plaintiff asserts that Defendant Casey McPartland must be held liable for writing misbehavior reports against the Plaintiff as a form of retaliatory treatment for the Plaintiff writing grievance against the herein said defendants and other deputies within the Onondaga County Justice Center. Plaintiff asserts that Defendant Casey McPartland wrongfully abused his discretion and thereafter intentionally fabricated a misbehavior report on the 21st day of May 2024 for an incident that the Defendant wasn't even present for. Plaintiff asserts that Defendant Casey McPartland also fabricated the misbehavior report inorder to keep the Plaintiff in the Special Housing Unit wrongfully and that he committed such torts with the intention of wrongfully keeping the Plaintiff confined in the Special housing unit.  Plaintiff also asserts that defendant Casey McPartland must also be held liable for inflicting cruel and unusual punishment upon the Plaintiff by fabricating a misbehavior report against the Plaintiff on the 8th day of October 2024 and for commencing with a maliciously intent cell search for the sole purpose of baiting the Plaintiff into a batterment.

244.    Plaintiff asserts that Defendant Casey McPartland always wrongfully covered up for the tortful actions committed by the Deputies and the herein named Defendants regardless of the fact that there existed evidence which clearly reveals that the Deputies were in the wrong. Plaintiff asserts that Defendant Casey McPartland must be held liable for being deliberate indifferent to the injuries suffered by the Plaintiff and that the said Defendant must also be held liable for failing to supervise and discipline his inferior officers as required by law. Plaintiff asserts that defendant Casey McPartland's lack of care for the health and safety of the Plaintiff was evident by the Defendant fabricating a misbehavior report which alleged rule violation which charged that the Plaintiff provided a falsified report to 911. Plaintiff asserts that he did he not provide a falsified report and that defendant Casey McPartland wrongfully filed the misbehavior report against the Plaintiff inorder to cover up for the unlawful actions committed by Defendant Wagner.

AS AND FOR THE SIXTH THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE,
AGAINST DEFENDANTS FODARO, HUJDUR AND DUSTIN SADDOCK,

245.    Plaintiff asserts that defendants Hujdur and Fodaro must be held liable for the cruel and
        unusual punishment wrongfully inflicted upon the Plaintiff on the 13th, 14th and 19th days
        of June 2024. Specifically, Plaintiff asserts that Defendant Fodaro denied the Plaintiff of
        the First Amendment right of using the phone before thereafter wrongfully threatening to
        pepper spray the Plaintiff after first forcing the Plaintiff to sit on his bunk inorder to be
        served with his food. Plaintiff asserts that Defendant Hujdur was present for the abuse and
        was actually the individual whom opened the Plaintiff cell door and placed the Plaintiff
        food on the floor while defendant Fodaro wrongfully pulled out his pepper spray and
        started aiming it at the Plaintiff's face.

246.    Plaintiff asserts that Defendant Dustin Saddock wrongfully ignored the Plaintiff's
        concerns and rather instead wrongfully refused to provide the Plaintiff with a grievance
        before thereafter telling the Plaintiff that he does not care. Plaintiff asserts that Defendant
        Saddock's actions wrongfully encouraged Defendant Hujdur and Fodaro to continue with
        the mistreatment. Plaintiff asserts that Defendant Dustin Saddock therefore must be held
        liable for being deliberate indifferent to the Plaintiff's injuries and for failing to supervise
        and discipline his inferior deputies.

247.    Plaintiff asserts that defendant Hujdur must be held liable for being deliberate indifferent
        to the cruel and unusual punishment wrongfully inflicted upon the Plaintiff; because of
        the fact that he was the one whom open the Plaintiff's cell door while Defendant Fodaro
        threaten to pepper spray the Plaintiff and because he also refused to provide the Plaintiff
        with the opportunity to use the phone even though he was well aware that Defendant
        Fodaro had blatantly deprived the Plaintiff of the phone. Plaintiff asserts that he had even
        brought the issue to Defendant Hujdur's attention without getting any form of cure(and
        that's why he thereafter brought the matter to the defendants' supervisor whom also failed
        to provide any form of assistance) and that the said defendant's culpable state of mind was
        further revealed by the mockery comments said while the two said defendants were
        leaving the Special Housing Unit at the end of their work shift.

248.    Plaintiff asserts that the defendants were intentionally causing him torment because of the
        fact that he kept filing grievance complaint against the deputies for violating his
        constitutional right. Plaintiff asserts that the continuation of mockery and harassment did
        not however deter him from petitioning to the government for redress of grievances but
        rather instead encouraged him to further bring justice to the corrupt actions and polices
        which have become a custom within the Onondaga County Justice Center. Plaintiff asserts
        that Defendant Hujdur's intentional mockery of his grievance complaint issue was
        evidently presented by his actions conducted on the 12th day of July 2024 (see paragraph
        ¶80 (above) of DOC. 1).

AS AND FOR THE SEVENTH THEORY OF THE CASE BY PLAINTIFF, SAIO
BARZEE, AGAINST DEFENDANTS RANDALL SANDERSON, ALTON APPLES,
ETHAN PERRY, FADORO, CONNOR HANAUER, (DEPUTY) BURNS, DUSTIN
SADDOCK, SERGEANT P. PICCIOTTO AND CASEY MCPARTLAND

249.   Plaintiff asserts that Defendant Randall Sanderson, on the 18th day of July 2024, conducted
       a cell search of 29 cell which the defendant knew was assigned to the Plaintiff at the time,
       and which the Defendant intentionally did in order to wrongfully find a reason to simply
       harass the Plaintiff. Plaintiff asserts that the culpable state of mind is proven by the fact
       that (1) Defendant Randall Sanderson confiscated staples from the Plaintiff legal papers
       and then stated that the said staples were contraband, and because (2) Defendant Randall
       Sanderson was well aware that the Plaintiff was helping Nyequest Allen with his 42 U.S.C.
       §1983 Civil Action which also names defendant Randall Sanderson as a Defendant.

250.   Plaintiff asserts that Defendant Dustin Saddock thereafter then wrongfully wrote an
       "Inmate Misbehavior Report" against the Plaintiff for rule violation which Defendant
       Saddock was not present for and which the SHU camera could not substantiate (and or
       "confirm"). Plaintiff asserts that a competent person and a fair minded jurist would
       reasonable determine that Defendant Saddock's actions when viewed with the fact that the
       wrongfully act was conducted immediately after the Plaintiff had filed grievance
       complaints on the defendants for their unprofessional actions would constitute as
       retaliatory treatment.

251.   Plaintiff asserts that the commencement of criminal charges against the Plaintiff for the
       alleged possession of six Motrin thereafter stand as cruel and unusual punishment which
       is retaliatory treatment that wrongfully deprived the Plaintiff of liberty. Plaintiff also
       asserts that the commencement of criminal charges must not only be viewed as retaliatory
       treatment for the Plaintiff continuingly requesting for criminal charges to be prosecuted
       against the deputies within the Onondaga County Justice Center but must also be viewed
       as a violation of Plaintiff's right to Equal Protection of the Law because of the fact that
       the deputies wrongfully used other Sheriff (and or law enforcement) to abuse the authority
       granted to them by the state inorder to intimidate the Plaintiff into not attempting to
       exhaust his rights.

252.   Plaintiff asserts that if that he was again harass wrongfully on the 21st day of July 2024,
       and that the defendants' actions were even more malicious this time. Plaintiff asserts that
       Defendant Fodaro wrongfully attempted to fabricate that the Plaintiff was in possession
       of a dangerous contraband by using a staple from the legal papers provide to him by New
       York State Attorney General Elizabeth Barbanes, and which staff member within the
       Facility allowed to go through the mailroom and then thereafter given to the Plaintiff.

253.   Plaintiff further asserts that the malicious intent of the defendants was presented by the
       fact that the defendants were upset with the Plaintiff for telling them not to batter another
       incarcerated individual whom had just been moved to the Special Housing Unit. Plaintiff
       assert that a competent person and a fair minded jurist would determine, upon sound

reasoning, that the Defendants actions stand as retaliatory treatment which wrongfully inflicted cruel and unusual punishment against the Plaintiff. Plaintiff assert that Defendant Dustin Saddock did not only again fail to Supervise and discipline his inferior deputies but rather instead participated in the wrongdoing and thus fuel and incited the Inferior Deputies to act in a malicious manner that continued to violate the Plaintiff's constitutional right of being provided with human decency even within the context of a prison environment.

254.    Plaintiff asserts that Defendant Alton Apples wrongful intention of batter the Plaintiff is cruel and unusual punishment that is in violation of the Plaintiff right setforth under the Eighth Amendment of the United Stated Constitution and section five of Article one (which is entitled as "The Bill of Right") established within the New York State Constitution. Plaintiff asserts that Ethan Perry Must also be held liable for being deliberate indifferent to the cruel and unusual punishment wrongfully inflicted upon the Plaintiff.

255.    Plaintiff asserts that Defendant Casey McPartland further violated the Plaintiff's right of being free from cruel and unusual punishment by the said defendant thereafter wrongfully writing the Plaintiff a misbehavior report for allegations which alleged that the deputies confiscated contraband from the Plaintiff property but which he never confiscated himself and thus could not have reasonably substantiated that the allegations made by his inferior officers were true. Plaintiff asserts that the fact that the Defendant had requested for the Plaintiff to move to the Four-man unit (which Plaintiff asserts is an area used to house incarcerated individual that the deputies do not like) show malicious intent and a strong probability that the defendant wrote the misbehavior report as a form of retaliatory treatment.

256.    Plaintiff asserts that it is cruel and unusual punishment for the facility to file criminal charges against the Plaintiff in connection to the misbehavior report written by Defendant Casey McPartland. In this case, Plaintiff asserts that Defendant Casey McPartland failed to demonstrate of how it could have been possible for him to have confirmed that the alleged contraband was actually in the Plaintiff's property. Moreover, Plaintiff asserts that he should have never been initially required to move from 29 cell to begin and that the fact that defendant McPartland had a verbal disagreement with the Plaintiff is not justification to move the Plaintiff to another housing Unit which thereafter further deprived the Plaintiff of human decency. Therefore, Plaintiff asserts that a competent person and a fair minded jurist would reasonably determine that the Defendants' were wrongfully punishing the plaintiff in a cruel and unusual manner because of the fact that the Plaintiff had been filing grievances about being wrongfully mistreated and about being wrongfully confined in the special housing unit.

257.    Plaintiff asserts that  Defendant Connor Hanauer must also be held liable for being deliberate indifferent to the wrongful torment inflicted upon the Plaintiff by participating in the cell searches, and by failing to report of the wrongful actions being applied wantonly and unnecessary. Plaintiff asserts that Defendant Connor Hanauer worked on numerous of the day when the defendants would verbally harass the Plaintiff and or would encourage other incarcerated individuals to verbally and physically harass the Plaintiff while the

Plaintiff was being housed within Special Housing Unit 3. Plaintiff further asserts that defendant Hanauer would laugh along with the defendants and other incarcerated individuals. Plaintiff asserts that Defendant Hanauer would also provide the Plaintiff with small trays which the defendant knew had smaller proportion amount of food compared to the other facility trays.

258. Plaintiff asserts that Defendant Ethan Perry must be held liable for inflicting cruel and unusual punishment upon the Plaintiff by encourages other incarcerated individuals to verbally abuse the Plaintiff and for Slander the Plaintiff character in a wrongful defamatory manner that cause the Plaintiff mental anguish. Plaintiff asserts that Defendant Ethan Perry's father Eugene Perry Junior works as a Court transporting officer and thus is provided information about the Plaintiff criminal case either directly and or by way of endorsement from other deputies. Therefore, a competent person and a fair minded jurist would determine, upon sound reasoning, that information about the Plaintiff's criminal case is easily accessible for Ethan Perry to be informed of and that it is rational to conclude that Defendant Ethan Perry participated in the wrongful slander of the Plaintiff reputation and defamation of character. Plaintiff asserts that Defendant Ethan Perry and Defendant Burns must be held liable for the mistreatment inflicted upon the Plaintiff when the two said defendant repeatedly kicked the Plaintiff's arm over and over again and that their Area supervisor (defendant P. Picciotto) must also be held liable for failing to correct the harmful mistake wrongfully inflicted upon the Plaintiff.

AS AND FOR THE EIGHTH THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE, AGAINST DEFENDANTS DANIEL GRATIEN, J. LANTRY, MCLAUGHLIN, KEVIN KOEHLER AND M. CULLEN

259. Plaintiff asserts that Defendant Daniel Gratien must be held liable for being deliberate indifferent to the cruel and unusual punishment wrongfully inflicted upon Plaintiff. Specifically, Plaintiff asserts that the actions and comments said by defendant Gratien on the 25th day of September 2024 was a clear indication that the defendant was mental aware of all off the other mistreatment wrongfully inflicted upon the Plaintiff but failed to not only provide cure but thereafter participated in the tortful actions by slandering the Plaintiff's character and by providing false information about the Plaintiff's criminal case to other incarcerated individuals in hope of getting the Plaintiff battered and or in an attempt of depriving the Plaintiff of a social life.

260. Plaintiff asserts that Defendant J. Lantry must get held liable for being deliberate indifferent to the cruel and unusual punishment wrongfully inflicted upon the Plaintiff. Plaintiff asserts that defendant J. Lantry served the Plaintiff a Styrofoam tray which had unknown substance within the food and that the defendant even allowed for defendant Wagner to violate the Plaintiff whenever they would work the B Watch Shift together. Plaintiff also asserts that defendant J. Lantry must also be held liable for being deliberate indifferent to the injuries suffered by the Plaintiff because of the fact that the said defendant repeatedly stated that the Plaintiff could not get thing his way because it was not burger king and thus shows that the Defendant was well aware of the false rumors being spread on the Plaintiff character.

261.    Plaintiff asserts that Defendant McLaughlin must  be held liable for being deliberate indifferent to the cruel and unusual punishment wrongfully inflicted upon Plaintiff. Plaintiff asserts that Defendant McLaughlin would constantly mock the plaintiff with homosexual jokes and also wrongfully failed to report of the verbal abuse being maliciously inflicted upon the Plaintiff. Plaintiff asserts that Defendant McLaughlin must also be held liable for failing to report of the sexual harassment being suffered by the Plaintiff and that the defendants actions are an indication that the defendant knew of other tortful actions but simply refused to provide cure. Plaintiff also asserts that Defendant McLaughlin would intentionally fail to provide the Plaintiff with a new jumpsuit and of other clothing materials which are easily available to obtains and supple. Moreover, The Plaintiff asserts that Defendant McLaughlin must be held liable for cruel and unusual punishment wrongfully inflicted upon the Plaintiff because of the fact that the said Defendant would give the Plaintiff Styrofoam trays which have smaller proportion food than the other trays.

262.    Plaintiff asserts that Defendant Kevin Koehler must be held liable for being deliberate indifferent to the cruel and unusual punishment being wrongfully inflicted upon the Plaintiff. Plaintiff asserts that Defendant Koehler was well aware of the tortful actions wrongfully being inflicted upon the Plaintiff but failed to provide cure. Plaintiff asserts that defendant Kevin Koehler also failed to provide clean clothes and or a jumpsuit to the Plaintiff when the Plaintiff asked for the said materials. Also Plaintiff asserts that Defendant Kevin Koehler must be held liable for the cruel and unusual punishment wrongfully inflicted upon the Plaintiff due to the fact that Defendant Koehler did not only provide the Plaintiff with Styrofoam trays with had smaller proportion food than other trays but because of the fact that the said defendant would also tell the nurse that the Plaintiff was shorter and or weighed less than he did whenever it came time for the nurses to weight the Plaintiff.

263.    Plaintiff asserts that defendant M. Cullen would constantly slander the Plaintiff character to other incarcerated individuals being housed within the Special Housing Unit and that the defendant would also intentionally starve the Plaintiff by providing the Plaintiff with Styrofoam trays which the defendant knew were of smaller proportion than other trays. Plaintiff asserts that the defendant wanted to see the Plaintiff starve so bad that one day the Defendant LITERALLY ran and jumped on the slot of the Plaintiff's cell door in order to prevent the Plaintiff from getting extra proportion of food and this was after the hungry Plaintiff had figured out a way to bring the tray cart to his cell and was about to get another tray. Plaintiff asserts that the defendant knew of the torment and harassment being wrongfully inflicted upon the Plaintiff but didn't care to report nor provide cure.

## AS AND FOR THE NINETH THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE, AGAINST DEFENDANTS UNKNOWN FOOD SERVICE COMPANY, TOBIAS SHELLEY, NATHAN HAWKER

264.    Plaintiff asserts that incarcerated individual within the Onondaga County Justice Center are wrongfully being starved and that the food proportions do not meet the minimum

standards setforth by the law and which are not adequate nor calorie satisfactory for the incarcerated individuals. Plaintiff asserts that the Defendants have failed to provide incarcerated individuals with a menu and or with the ability of knowing the calorie intake because of the fact that the defendant knows that incarcerated individuals are wrongfully being deprived of adequate food proportions. Plaintiff asserts that the "Unknown Food Service Company" has been provided food to incarcerated individuals which have been violating the Muslims of their religious right to participate in their religion by not eating pork item and or which does not consist of the Jewish and Rastafarian belief of being provided with food that is sealed, hot meals that are blessed by the Rabbi within the local Onondaga County Community. Plaintiff asserts the company defendant in its official capacity has a contract which asserts that the Incarcerated individuals will get provided with sanitary food and of adequate proportions which meet the standards set forth by the Law.

265.   In this case, Plaintiff asserts that the "Unknown Food Service Company" Defendant ALONG WITH DEFENDANTS TOBIAS SHELLEY AND NATHAN HAWKER can conduct a survey which will reveal that incarcerated individuals whom are force to only eat three meals a day that are being provided by the "unknown Food Service Company" are losing excessive amount of weight and are thus also malnourished. Plaintiff asserts that defendants Tobias Shelley and Nathan Hawker have wrongfully allowed their subordinated whom are responsible for maintaining and supervising the food service operations within the Onondaga County Justice Center facility to fail to adequately wash the plastic trays and or provide new plastic trays for incarcerated individual to use and that the facility has rather instead attempted to use Styrofoam trays which are (1) wrongfully depriving the Plaintiff and other incarcerated individuals with adequate proportions of food and which have thereafter also give the defendant the opportunity of removing items from the trays which are going unnoticed by the cameras.

### AS AND FOR THE TENTH THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE, AGAINST DEFENDANTS YALANDA CANTY, TOBIAS SHELLEY AND NATHAN HAWKER

266.   Plaintiff assert that Defendant Yolanda Canty has been deliberate indifferent to the cruel and unusual punishment, discriminatory treatment and injuries wrongfully suffered by the Plaintiff. Specifically, Plaintiff asserts that defendant Yolanda Canty has had acknowledgment which show that the Onondaga County Justice Center has repeatedly been violating incarcerated individuals constitutional rights because of the fact that the facility has wrongfully failed to uphold the HALT LAW. In this case, Plaintiff asserts that he presented a letter which explains of this fact and also spoke with represented "Paul" and "Rich" in order to inform the said defendants of the wrongful mistreatment being inflicted upon the Plaintiff on a daily basis.

267.   Moreover, Plaintiff asserts that it is defendant Yolanda Canty's responsibility to make sure that every local correctional facility along with every other correctional facility within New York State has adapted the new laws and rules established under Correction Law

137(5) and (6), and which applies to Local Correctional Facilities through Correction Law 500-k.

268.   Plaintiff asserts that he is being wrongfully punished as a result of bringing this fact to the Defendants' attention. Plaintiff asserts that it is the defendant responsibility as supervisors to make sure that the Onondaga County Justice Center meet the standards that have been set forth up Correction Law 137. Plaintiff asserts that the defendant must therefore be held liable for being deliberate indifferent to the cruel and unusual punishment being inflicted upon incarcerated individuals because of the fact that Correction Law 137 has been in effect for over three years now (became effective August 2nd 2021), and thus, the defendants cannot simply state that they were not aware of the law change.

COUNT TWO: WRONGFUL CONFINEMENT
& DUE PROCESS VIOLATION
EIGHTH AMENDMENT VIOLATION
FOURTEENTH AMENDENDMENT

AS AND FOR THE ELEVENTH THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE, AGAINST DEFENDANTS KOLAKOWSKI, JOHN S. DRAPIKOWSKI AND NATHAN HAWKER

269.   Defendant Kolakowski must be held liable for violating the Plaintiff's fourteenth Amendment due process procedural rights. Specifically, Defendant Kolakowski wrongfully denied the Plaintiff of adequate assistance along with coerced the Plaintiff to pled guilty. The defendant further deprived the Plaintiff of presenting mitigating circumstantial evidence which would have revealed that it was not the Plaintiff whom initiated the altercation that occurred on the 21st day of November 2023 and that it was actually the Plaintiff whom was being threatened unjustifiably by Defendant Sarno.

270.   Defendant Kolakowski further deprived the Plaintiff of his right to have adequate due process by (1) not commencing any Disciplinary Hearing procedure within the five day limitation established within the New York State Minimum Standards and Regulations, (2) wrongfully denying the Plaintiff of his opportunity to call witnesses, (3) Wrongfully denying the Plaintiff of his opportunity to get relevant documentary evidence along with other substantial video and audio evidence on his behalf, (4) wrongfully denying the Plaintiff of the opportunity of have assistance of any form and (5) by wrongfully preventing the Plaintiff from being able to adequately speak on the record during the Disciplinary Hearing proceeding that was conducted on the 30th day of June 2024; and by thereafter refusing to law the Plaintiff to participate any further in the Disciplinary Hearing proceeding by refusing to all for the said Plaintiff to be Present during the commencement of the Disciplinary Hearing procedures.

271.   Both Defendants John S. Drapikowski and Nathan Hawker must be held liable as of being the Chief Administration Officers whom wrongfully allowed for the unprofessional and tortful confinement of the Plaintiff to continue even though they were aware of the Constitutional Violation being wrongfully inflicted upon the Plaintiff.

The Minimum Standers and Regulations for New York State Local Correctional Rules has defined *The Chief Administrative Officer* to mean the highest-ranking facility official present during the time period in which a determination must be rendered. Both of Defendant meet part of this criteria because they hold the Position as Chief of the Custody Department for the Onondaga County Sheriff's Office and are also in charge of supervising and oversee the Disciplinary Hearing appeal process. Therefore, a competent person would reason that Defendants hold the responsibility of reviewing the **administrative confinement within 24 hours of such confinement in order to determine if continued confinement is warranted, and thereafter at intervals not to exceed seven (7) days.** A competent person would rationally reason that the Plaintiff was wrongfully confined in violation of the rule and regulations setforth by the New York Stated Minimum Standards and Regulations and that the Plaintiff also suffered from a violation of his Fourteenth amendment due process procedural right by Defendant Kolakowski conducting a bias and non-fair Disciplinary Hearing procedure.

272.    The appeal procedures setforth that: "(a) The inmate shall have the right to appeal the hearing officer's disposition and any sanction to the chief administrative officer. Such appeal shall be submitted in writing two business days of the inmate's receipt of the disposition, specifying the grounds for the appeal. (b) All appeals shall be reviewed and decided within five business days after receipt and each inmate shall be notified in writing of the results. (c) The chief administrative office may reduce or suspend all or part of the sanction, but not increase it."

273.    Plaintiff asserts that Defendant Kolakowski wrongfully deprived the Plaintiff of his right to appeal the defendant's disciplinary sanctions by the facility intentionally depriving the plaintiff of due diligence by wrongfully providing the Plaintiff with the copy of the decision notice papers on the a day after the time for which the Plaintiff was authorized to Appeal (see Paragraph ¶ 115 of this Dkt. No. (Doc 1)). Plaintiff asserts that Defendant Kolakowski's actions are prejudicial and must be viewed as of being in violation of Plaintiff's right to be free from cruel and unusual punishment. Specifically, Plaintiff asserts that there is not any substantial evidence which implicates that the Plaintiff acted in any wrongdoing manner and so the wrongful confinement of the Plaintiff in the Special Housing Unit after a biasly and improperly conducted Disciplinary Hearing Procedure stand as a clear violation of plaintiff's United States Constitutional Rights.

274.    Plaintiff asserts that defendants John Drapikowski and Nathan Hawker thereafter wrongfully also failed to provide the Plaintiff with a written explanation **the specific facts and reasons underlying the determination** for the continuation of Plaintiff confinement in a segregated confinement unit. Plaintiff asserts that Defendant John Drapikowski wrongfully agreed with the conclusory determination render by defendant Kolakowski and therefore wrongfully continued to confine the Plaintiff in the Special Housing Unite beyond the time limitation authorized by the New York State Minimum Standards and Regulations for Local Correctional Facilities; which setforth that:

5) Confinement to a cell, room; or in Special housing, as that term is defined in section 7013.2(h) of this Title, for a period consistent with the facility rules of conduct for the

particular offense(s), subject to the provisions of Part 7-75, 7076 and 7077 of this Title, provided that:

    i.   No incarcerated individual of a special population may be sanctioned to segregated confinement;

    ii.   Except as authorized by subparagraph (iii) of this paragraph, **an incarcerated individual shall only be sanctioned to segregated confinement for up to three (3) consecutive days, and no Longer than six (6) days in any thirty (30) day period.**

    iii.   An incarcerated individual may be sanctioned to segregated confinement beyond the limitations of subparagraph (ii) of this paragraph or, in a facility with a maximum facility capacity exceeding five hundred (500), in a residential rehabilitation unit only if the disposition contains a finding that the individual committed a violent felony act, and if the **chief administrative officer determines in writing, based on specific objective criteria, the act was so heinous or destructive that placement of the individual in general population housing creates a significant risk of imminent serious physical injury to staff or other incarcerated persons, and creates an unreasonable risk to the security of the facility; and**

    iv.   For the purpose of subparagraph (iii) of this paragraph, the violent felony act of attempting to cause a serious disturbance or to escape **shall only be determined to have occurred if there is a clear finding that the incarcerated individual had the intent to cause a serious disturbance of the intent to escape and had completed significant acts in the advancement of the attempt to create a serious disturbance or escape**. Evidence of withdrawal or abandonment of a plan to cause a serious disturbance or to escape shall negate a finding of intent;

    6)   loss of a specific period of good behavior allowance, subject to restoration pursuant to applicable laws and regulations; and/or

    7)   loss of up to one hour of weekly visitation for a period consistent with the facility rules of inmate conduct for the particular offense.

275.   Plaintiff asserts that he had wrote numerous of grievances about the wrongful confinement and had even file an Article 78 which requested for judicial intervention so that the Plaintiff could get provided with the relief needed in curing the mistreatment wrongfully being inflicted against him. Plaintiff asserts that he had also provided a copy of the said Petition papers to the Human Rights Office so that he could get provided with the adequate assistance needed in getting the notification brought to the attention of the Chief Administration Officer's attention. Thereafter, Plaintiff asserts that he personally spoke with Defendant Nathan Hawker while the Plaintiff was wrongfully being housed within 23 cell of SHU-2 and was still not provided with the adequate assistance needed. Plaintiff asserts that it is a mandate and not a discretionary function for the Defendants to uphold the New York State Minimum Standards and Regulations. Plaintiff asserts that the Defendants actions must therefore be construed as of violation the Plaintiff's Fourteenth Amendment United States Constitutional right of being provided with adequate Procedure Due Process and of being treated in a fair and nondiscriminatory manner as setforth by the Equal Protection Clause.

COUNT THREE: DISCRIMINATORY TREATMENT
& DUE PROCESS VIOLATION
EIGHTH AMENDMENT VIOLATION
FOURTEENTH AMENDENDMENT

AS AND FOR THE TWELFTH THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE,
AGAINST DEFENDANTS KOLAKOWSKI, JUSTIN LEUBNER, DAVID SQUAIRS,
LIEUTENANT WOODS, DEVIN RESCHKE, "JOHN DOE" LIEUTENANT, ALEXANDER
HEBERT, R. DOBROWOLSKI, JAMMIE BLUMER, SERGEANT BERGMAN AND THE
DSBA UNION

276.   Plaintiff asserts that Defendants Justin Leubner violated the Plaintiff Fourteenth Amendment
United Stated Constitutional right of being provided with equal protection of the law by
wrongfully depriving the Plaintiff of the opportunity of getting adequate pro se legal assistance.
In this case Plaintiff asserts that the Plaintiff only had one sheet of paper in the binder available
to pro se incarcerated individuals and thus the Plaintiff is still not certain of what other privileges
that he may be able to obtain in connection to his pro se status. Plaintiff asserts that defendant
Justin Leubner also wrongfully failed to grant the Plaintiff of his pro se status when the Plaintiff
request for such right while the Plaintiff was in the process of submitting his Habeas Corpus
Traverse Motion and rather instead informed the Plaintiff that the Plaintiff is only considered pro
se if he goes pro se for his pending criminal case. Thereafter, Defendant Justin Leubner also
wrongfully deprived the Plaintiff of his Pro Se Status during every other stage of his still Pending
42 U.S.C. §1983 lawsuit within the Southern District Court and this is even after the Court had
called the facility and held a conference hearing and even after a representative for the New York
State Attorney General's Office had went to the Onondaga County Justice Center Facility
inorder to do a photo identification process inorder to figure out of the Plaintiff could identify
any of the people in the said photographs as the potential John Doe defendants which Plaintiff
had named in hi lawsuit within the Southern District. Plaintiff asserts that Defendant Justin
Leubner also failed to make an proper inquiry about the concerns pertaining to the Plaintiff's
incoming and outgoing legal mail. Plaintiff asserts that defendant Justin Leubner must be held
liable for being deliberate indifferent to the discriminatory treatment wrongfully inflicted upon
the Plaintiff because of the fact that the Defendant knowingly even went to the court in order to
unjustifiable and illegally request for the County Court Judge to deprive the Plaintiff of his
constitutional right of petitioning to the government for a redress of grievance. Plaintiff asserts
that the defendant's culpable mind state is evident from the fact that he is in charge of
supervising the mailroom and the grievance complaints. And thus a competent person and a fair
minded jurist would determine, upon sound reasoning, that the defendant's act of getting the
Court to wrongfully stripe the Plaintiff of the phone so that the Plaintiff can't reach out to outside
agency about his mistreatment is cruel and unusual punishment that discriminates against the
Plaintiff wrongfully.

277.   Plaintiff asserts that defendant Kolakowski must also be held liable for being deliberate
indifferent to the cruel and unusual punishment and of the discriminatory treatment wrongfully
inflicted upon the Plaintiff. Specifically, Plaintiff asserts that Defendant Kolakowski
intentionally sentence the Plaintiff to excess amount of time in the Special Housing Unit and
then wrongfully kept depriving the Plaintiff of an opportunity of have a fair and impartial

Disciplinary hearing. Plaintiff further asserts that Defendant Kolakowski was present when defendant was depriving the Plaintiff of adequate Pro Se privileges but failed to speak up and inform the Plaintiff about other right that are entitled to the Plaintiff. Moreover, Plaintiff also asserts that Defendant Kolakowski was also present in the courtroom when the court announce that they were unconstitutionally depriving the Plaintiff of his right to petition to the government for a redress of grievances and that the Defendant was also present when the defendant Justin Leubner thereafter on the 4th day of October went to the Plaintiff cell door and further deprived the Plaintiff of his constitutional right by asking for a list of number before then wrongfully rushing the Plaintiff to give him a list of number because defendant Justin Leubner was pretending like he did not have the Patience of standing infront of the Plaintiff cell door while the Plaintiff found his phone list and while the Plaintiff thereafter decided which number were important to place on the list of the that the facility deemed to be relevant.

278. Plaintiff asserts that Defendants Justin Leubner, David Squairs, a "JOHN DOE" lieutenant Defendant and Lieutenant woods must also be held liable for being deliberate indifferent to the discriminatory treatment wrongfully inflicted upon the Plaintiff because it is within their responsibilities as Grievance Committee supervisors to investigate and provide cure to the injuries and torment wrongfully being inflicted upon the Plaintiff and other incarcerated individuals within the Onondaga County Justice Center. Plaintiff asserts that the said defendant would wrongfully justifiable the tortful actions committed by the defendant inferior deputies and would disregard that the fact that the defendants actions were in complete violation of the rules and regulations established within the New York State Minimum Standards and regulations for Local Correctional facilities. Plaintiff asserts that his grand jury minutes indicate that staff member working within the Onondaga County Justice Center facility are under the knowledge and understanding that the Onondaga County Justice Center cameras are in the process of getting reconstructed because they are out of date and inadequate. Therefore, Defendant David Squairs and Lieutenant wood must be held liable for the cruel and unusual punishment being wrongfully inflicted upon the Plaintiff because they knew that the defendant and other deputies would intentionally fabricate matters to them and would still thereafter provide fabricated reason for the wrongfully actions committed by the defendant and other deputies. Plaintiff asserts that a competent person and a fair minded jurist would conclude that the Defendant David Squairs and Lieutenant Woods justified the defendants and other deputies actions in order to cover up for the mistakes and tortful actions committed by their inferior deputies and staff members.

279. Plaintiff asserts that Defendant Jammie Blumer, R. Dobrowolski, Devin Reschke, Alexander Hebert, and Sergeant Bergman must be held liable for being deliberate indifferent to the cruel and unusual punishment and discriminatory treatment wrongfully inflicted upon the Plaintiff. In the case, Plaintiff asserts that the defendant failed to conduct an investigation into the matters being complained about by the Plaintiff. Plaintiff asserts that he spoke direct to Alexander Hebert on numerous of occasion about his mistreatment at which time defendant Hebert would indicate that he was not the right personnel to speak to but would wrongfully fail to inform the Plaintiff about who the right person it was to speak to and instead misdirected the Plaintiff for months at a time. Plaintiff asserts that Defendant Alexander Hebert wrongfully provide the Internal Affairs number after the defendant first gave the Plaintiff notice that the Deputies were file additional criminal charges against the Plaintiff for alleged possession of Motrin and or Ibuprofen medication. Plaintiff asserts that Defendant Hebert had asked for the facility to prevent

the Plaintiff (and presumably other incarcerated individuals) from being able to call the Criminal Investigation Number because of the fact that the Plaintiff use to call CID and complain about how the deputies were mistreating him and would thereafter request for criminal charges to be prosecuted against the deputies for the wrongful actions.

280. Plaintiff asserts that Devin Reschke must be held liable for being deliberate indifferent to the cruel and unusual punishment and discriminatory treatment wrongfully inflicted upon the Plaintiff. Specifically, Plaintiff asserts that Defendant Devin Reschke refused to commence with criminal investigation and or notify the right personnel in charge of such investigation after being notified by Defendant Nathan Hawker (as verbally stated to the Plaintiff by Defendant Hawker) and after speaking on the phone to the Plaintiff. Moreover, Plaintiff asserts that defendant Reschke's culpable state of mind is evident by the lack of care which was clearly presented by the mockery comment used during their conversation and because of the fact that defendant still refused to commence with a criminal investigation and or notify the right staff personnel about the matter. Plaintiff asserts that the Defendant denied his responsibilities as a intelligence office for the Onondaga County Justice Center deputies and repeatedly kept referring to himself as a Jailer on during their second conversation on the 16th day of October 2024 before thereafter cutting the Plaintiff short every time that the Plaintiff attempted to bring other matters of mistreatment to the defendant's attention.

281. Plaintiff asserts that Defendant Jammie Blumer and R. Dobrowolski must be held liable for being deliberate indifference to the cruel and unusual punishment and discriminatory wrongfully suffered by the Plaintiff. Plaintiff asserts that the two said defendant are in charge of overseeing and supervising the Internal Affairs department of the Onondaga County Justice Center. Plaintiff asserts that he called the Internal Affairs phone number on numerous of occasions in order to complain about his mistreatment without getting any form of cure. Plaintiff asserts that he was only able spoke to an Internal Affairs representive (Sergeant Stark) one time out of all of the times that the Plaintiff called their department. Plaintiff asserts that the only reason that he was able to speak with Sergeant Stark was because sergeant Stark asserted that the Commission of Correction had specifically instructed the Internal Affairs department to conduct an investigation into my mistreatment and to provide a report of the result of their investigation by the 29th day of October 2024. Plaintiff also asserts that sergeant Stark had informed me that their office does not have any complaints nor complies of my grievance complaints.  Beside that one phone conversation Plaintiff asserts that he continues to get mistreated and that he actually got physically assault by Defendant Gerard Wagner after speaking with Sergeant Stark. Plaintiff asserts that Defendant Jammies Blumer and R. Dobrowolski are well aware of the mistreatment being inflicted upon incarcerated individuals both within the Onondaga County Justice Center and within Jamesville Correctional facility which is also own and operated by the Onondaga County Sheriff's office but that the defendant fail to properly supervise and discipline the deputies whom have continued to severely batter incarcerated individuals (Elijah Vrealand (whose defendant are Dustin Saddock, Fodaro, Alton Apples and Hujdur), Nyequest Allen (twice)(whose defendants are Alton Apples, Randall Sanderson, and Matthew Murphy), Jamal Works (whose defendants are Alton Apples and etc.),  Willie Curtis, Ozell Stanley (Defendant Sanderson and etc.) and the list goes on). Defendant Jammie Blumer and R. Dobrowolski are wrongfully **exonerating** the defendants of wrongdoing even though they have evidence that show that the said defendants are not only guilty of the tortful actions alleged but should now be

working within as deputies because they do not know how to conduct themselves in a professional manner and are rather instead violating the law.

282.   The herein named defendants are wrongfully allowing for the discriminatory treatment and cruel and unusual punishment that is being inflicted upon the Plaintiff and other incarcerated individual to be a normal custom within the Onondaga County Justice Center and thus are continuing to put the Plaintiff health and safety at risk as well as other incarcerated individuals. The defendant negligence is daring the defendants to act with the knowledge that there will not be any form of repercussion for their behavior.

283.   Plaintiff asserts that the DSBA UNION must be held liable for the cruel and unusual punishment along with the discriminatory treatment being wrongfully inflicted upon the Plaintiff and other incarcerated individuals within the Onondaga County Justice Center stemming from the fact that it is their responsibility to train, supervise and discipline the Deputies (and herein named Defendants) whom are in charge of overseeing the daily activities within the said local Correctional facility. Plaintiff has submitted substantial documentary proof which stands as supportive evidence that further reveals of the discriminatory and bias nature of the DSBA UNION operations and which also show of how the said DSBA UNION is acting deliberate indifferent to the injuries being suffered by incarcerated individuals. Plaint asserts that the evidence is obtain from the Internal Affairs reports (case number 24-072) in connection to an investigation conduct about the malicious batterment inflicted upon incarcerate individual Nyequest Allen( Plaintiff is Nyequest Allen's "Power of Attorney" and or "Agent"). The Report reveals that the Onondaga County Sheriff's Office had clear proof of both illegal criminal activity along with constitutional violations but wrongfully neglected to provide the cure required by law and thus supported the cruel and unusual punishment inflicted upon Nyequest Allen. Plaintiff asserts that DSBA UNION representive were present throughout the entire investigation and that unprofessional suggestion and inadequate investigation method were applied both on the record and off of the record in relation to the investigation conducted. Plaintiff asserts that the Defendants who battered defendant Nyquest Allen thereafter have battered other incarcerated individuals as well as continue to wrongfully harass the Plaintiff for litigating civil matters for the benefit of both Nyequest Allen and other incarcerated individuals dealing with the same and or similar issues.

284.   Plaintiff asserts that DSBA UNION has thus incited and or fuel the mistreatment by showing the Defendant who are a direct reflection of the criminal judicial system as they are representatives of the Onondaga County Sheriff's Office that they may violate the law, as well as the rights of citizen (for detainees are still entitled to many of the right guaranteed for regular citizen within regular citizen because the United States Constitution has setforth that every person and Citizens of the United States is Innocent until proven guilty) without any form of punishment, discipline or repercussion being rendered against them for their tortful actions.  Plaintiff asserts that the DSBA UNION is thus wrongfully promoting the ideology which encourage for the Onondaga County Sheriff's Office to convince its employees (Deputies working within the Onondaga County Justice Center) to believe that they are above the law.

COUNT FOUR: DISCRIMINATORY TREATMENT
& DUE PROCESS VIOLATION
EIGHTH AMENDMENT VIOLATION
FOURTEENTH AMENDENDMENT

AS AND FOR THE THIRTEENTH THEORY OF THE CASE BY PLAINTIFF, SAIO
BARZEE, AGAINST DEFENDANTS PATRICK RUSSEL BLOOD (ESQ.), THEODORE
LIMPERT, ROBERT MORAN (ESQ.) AND CAROLINE H. MCGRATH (STENOGRAPHER)

285.   Plaintiff asserts that Defendant Caroline H. McGrath must be held liable for being deliberate
       indifferent to the Procedural Due Process violations wrongfully inflicted upon the Plaintiff by the
       said defendant wrongfully neglecting to preform he duties correctly and in an efficient manner.
       Specifically Plaintiff assert that Defendant Caroline H. McGrath, as a stenographer) wrongfully
       failed to type up a truthful transcript of the Grand Jury Minutes and that the defendants actions
       are prejudicial the Plaintiff's criminal case because they deprive the Plaintiff of adequate Due
       Process. Plaintiff asserts that the Defendant intentionally failed to type up the prosecutorial
       misconducts committed by Defendant Patrick Russell Blood and thus wrongfully deprives the
       Plaintiff of the Opportunity of presenting sufficient evidence of the harmful mistakes which
       render a reversal of the indictment pending against the Plaintiff.

286.   Plaintiff asserts that Defendant Patrick Russell Blood (Esq.) knows that the transcript minutes
       presented by defendant Caroline H. McGrath are inadequate and not truthful but still provided
       them to the Plaintiff, which further shows of the Prosecutor's malicious intent of simply getting a
       convict rather than upholding justice as required by the special responsibilities giving to a
       prosecutor.

287.   Plaintiff asserts that Chief Assistant District Attorney Robert Moran (Esq.) wrongfully failed to
       correct the harmful error made by Defendant Caroline H. McGrath. Plaintiff asserts that
       defendant Robert Moran is well aware of the prosecutorial misconducts committed by Defendant
       Patrick Russell blood and thus knew for a certainty that the Grand Jury Transcripts with
       depriving the Plaintiff of his right to a fair and not partial judicial system.

288.   Plaintiff asserts that the defendants actions stand as a form of discriminatory treatment that
       wrongfully deprives the plaintiff of his right to due process. Plaintiff asserts that integrity of the
       rest of Grand Jury transcript are thus at a further likelihood of being not credible as a result of the
       errors which Plaintiff asserts that he personally noticed because he had been present at the grand
       Jury Proceeding and because of the fact that he had typed up the Grand Jury proceeding from his
       recollection of events that occurred as soon as practicable but way prior to being provide with
       "The People's" version of the Grand Jury transcripts which were written by Defendant Caroline
       H. McGrath.

289.   Plaintiff asserts that defendant Casey McPartland's perjury testimony at the Grand Jury
       Proceeding, along with the Prosecutorial misconducts committed by Defendant Patrick Russell
       Blood when compared with the Due Process Violations wrongfully inflicted upon the Plaintiff by
       Defendant Caroline H. McGrath and view with the fact that Defendant Justin Leubner and
       Defendant Kolakowski wrongfully reached out to Defendant Theodore Limpert in order to

wrongfully deprive the Plaintiff of his right to petition to the government for a redress of grievances stand as combined circumstantial evidence which clearly show that the Plaintiff is wrongfully being deprived of due process and thus is a clear indication that the Plaintiff's Fourteenth Amendment Constitutional Rights are being violated wrongfully.

COUNT FIVE: FAILURE TO TRAIN, DISCIPLINE, HIRE AND SUPERVISE EIGHTH AMENDMENT VIOLATION & FOURTEENTH AMENDMENT VIOLATION (N.Y.S. CONST. "BILL OF RIGHTS") ARTICLE ONE, SECTION FIVE VIOLATION

AS AND FOR THE FOURTEENTH THEORY OF THE CASE BY PLAINTIFF, SAIO BARZEE, AGAINST DEFENDANTS JOHN S. DRAPIKOWSKI, NATHAN HAWKER, TOBIAS SHELLEY AND THE DSBA UNION

290.   Plaintiff asserts that Defendant John S. Drapikowski must be held liable for being deliberate indifferent to both the cruel and unusual Punishment and discriminatory treatment wrongfully inflicted upon Plaintiff. In this case, Plaintiff asserts that defendant Drapikowski wrongfully failed to discipline and supervise the inferior deputies working within the Onondaga County Justice Center and that the said defendant instead allowed for the Deputies to wrongfully continue to inflict psychological torment and physical abuse upon incarcerated individuals within the said local facility. Plaintiff asserts that Defendant Tobias Shelley wrongfully failed to discipline defendant John S. Drapikowski and rather instead just simply gave the said defendant the responsibility of overseeing the Jamesville Correctional Facility after questions about the Defendants capability of adequately supervising the operations of the Onondaga County Justice Center were raised.

291.   Plaintiff asserts that Nathan Hawker has not changed the wrongful customs and illegally conducted procedures being applied within the Onondaga County Justice Center after defendant John S. Drapikowski was removed from the responsibility of supervising and overseeing the daily operations of the Onondaga County Justice Center. Plaintiff asserts that Defendants Nathan Hawkers continued negligence and Defendant Tobias Shelley's lack of further inquiry into the concerns and tortful actions being wrongfully inflicted in the Onondaga County Justice Center stand as evidence that the defendants simply applied a "Code Blue" scheme (meaning they simply portrayed the wrongful image as if the defendants had provided cure to the injuries inflicted wrongfully upon the incarcerated individuals, only for the purpose of satisfying the media, and society when in all actually no real justice has been rendered which cures the tortful behaviors being wrongfully applied every days within the Onondaga County Justice Center) inorder to let the unwanted attention die down a little bit before allowing for their deputies (and employees) to return back to their regular unprofessional and tortful customs to be put back into operations.

292.   Plaintiff asserts that Tobias Shelley must be held liable (within his "Individual capacity") for being deliberate indifferent to the cruel and unusual punishment and discriminatory treatment being inflicted upon Plaintiff because of the fact that the Plaintiff had personally wrote to the defendant twice, and had even left a voice mail recording of his concerns on the Phone directly operated by Defendant Tobias Shelley without getting any form of cure, but was rather instead deprived of his constitutional right to petition to the government for a redress of grievance by the

Defendant's employees whom reached out to defendant Theodore Limpert and wrongfully got the County Court Judge to stripe the Plaintiff of his constitutional right. Plaintiff asserts that Defendant Tobias Shelley has been well informed about the Unprofessional and illegal activities that have been occurring within the Onondaga County Justice Center but that the Defendant has neglected to adequately provide any form of justifiable and reasonable cure. Plaintiff asserts that the News media has constantly reported of the abuse and mistreatment wrongfully inflicted upon the Plaintiff without the defendant firing any of the wrongdoers. Plaintiff asserts that Defendant Tobias Shelley is also well aware of the fact that the Defendants' have wrongfully attempted to previously prevent the Defendant from being able to know of the tortful actions (as noted in the Newspaper Article published when Ozell Stanley was wrongfully battered severely by deputies) and that the defendant hasn't set in stone an enforcement of an adequate grievance committee and for the Internal Affairs office to be more active and alert to the mistreatment complained about by incarcerated individuals being housed within the Onondaga County Justice Center.

293.    Plaintiff asserts that Defendant Tobias Shelley's refusal to provide reasonable remedy to the constitutional injuries suffered by the Plaintiff and other incarcerated individuals stands as proof of the Defendant's culpable state of mind in being deliberate indifferent to the cruel and unusual punishment inflicted upon the Plaintiff and other incarcerated individuals. Plaintiff asserts that the defendant has the responsibility to fire, suspend, mandate retraining, anger management, and or rehabilitation programs that will put an end to the tortful actions wrongfully inflicted upon the Plaintiff. Moreover, the Plaintiff asserts that the defendant could and demote (downgrade) and or put fines on the Sergeants, Lieutenants, Captains and chiefs for the negligence in supervising and disciplining their subordinates. Plaintiff assert that defendant Tobias Shelley's failure of discipline his employees and subordinates are reflected in the Tortful actions that continue to occur within the Onondaga County Justice Center. Also Plaintiff asserts that Defendant Tobias Shelley has failed to uphold his promise which he declared after the Ozell Stanley assault. Specifically Plaintiff asserts that New reporter Emma Misiaszek reported on Tuesday, February 20th 2024 at 3:39 PM EST (Under the New Article entitled as "Onondaga Co. Sheriff's Office clears deputies of assault after inmate's beating claim") that Defendant Tobias Shelley had stated:

**"In response to this incident, Shelley said that the office would look into securing body cams for deputies at the Justice Center after a spokesperson for the office told CNY Central in January that the responding deputies did not have body cams.**

**"We will get the funding for more cameras and get them on the deputies on fifth floor, because had there been a camera involved, this wouldn't be an issue. We wouldn't even be having this conversation"'**

294.    Plaintiff would also like to highlight the fact that Civil Rights attorney Norman Deep even asserted, under the New Article heading of **"Sheriff Shelley says there is no video of alleged 'beating' inside downtown jail",** that he was **"highly critical of law enforcement effectively investigating themselves"** by stating: **"In my entire career, and I'm 78 years old, I have never seen them (police) say 'yea this guy is guilty and abused this inmate'".**

295.    Plaintiff asserts that Defendant Tobias Shelley must be held liable for being deliberate indifferent of the cruel and unusual punishment wrongfully being inflicted upon the Plaintiff and other incarcerated individuals within the Onondaga County Justice Center. Plaintiff asserts that it is a known fact that the cameras are inadequate and or inoperable but that the Defendant has still failed to uphold his promise of fixing the inadequate supervising ability of the facility. Moreover, Plaintiff asserts that Defendant Casey McPartland even further proved this notion by testifying about the lack of camera surveillance available within the Onondaga County Justice Center and that Defendant Provided this testimony under oath of penalty of perjury at the Plaintiff's Grand Jury proceeding conducted on the 12th day of September 2024 (see the grand Jury Minutes submitted along with this complaint for verification).

296.    Therefore Plaintiff asserts that Defendant Tobias Shelley must be held liable for failing to Train, Hire, Supervise and discipline the subordinate Deputies working within the Onondaga County Justice Center. Plaintiff asserts that the Defendant has wrongfully disregard evidence of the Deputies wrongdoing and instead as attempted to cover up the defendants wrongdoing. Plaintiff asserts that the defendants actions as evidence of criminal activities which are against the law. Plaintiff asserts that the defendants are supposed to be fired after killing and or severely battering incarcerated individuals unjustifiably. Moreover, upon information and belief, the Plaintiff asserts that Defendant Tobias Shelley wrongfully mislead the public and the news reporter by asserts that the Ozell Stanley incident occurred in the housing unit of 5A because 5A is not the housing unit for mental health active incarcerated individuals. Plaintiff asserts that 5C is the Housing Unit for incarcerated individuals with serious and or severe mental health issues. Plaintiff further asserts that 5A still has not been thoroughly equipped with surveillance cameras and that 5C is still an area Deputies use to assault and batter incarcerated individuals under the false pretense that they are suicidal. Plaintiff asserts that deputies severely batter and assault incarcerated individuals and then justify the excessive use of force by declaring that the incarcerated individuals were attempting to hurt themselves and or hurting one of their staff member. On the other hand, Plaintiff asserts that, if true, then it shows of the fact that the ("OCJC") Facility has wrongfully made it a custom of housing incarcerated individual in Housing Units that they do not belong in and thus supports the facts raised herein by Plaintiff.

297.    The DSBA UNION must be held liable for failing to train, supervise and discipline the Onondaga County Justice Center Deputies (and the herein named Defendants) for the reasons setforth within paragraphs ¶ 281 and ¶ 282, and because of the fact that the said Union has wrongfully failed to cure the continuation of unprofessional actions and constitutional torts being wrongfully committed by the defendants and or Deputies. Plaintiff asserts that the DSBA UNION has wrongfully failed to provide cure to the injuries being suffered by the Plaintiff and other incarcerated individuals within the Onondaga County Justice Center. Plaintiff asserts that the DSBA UNION is supposed to fire members which the DSBA UNION knows have committed illegal activities and or acted in a manner which violated the laws established for incarcerated individuals under Correction Law 137 (5) And (6). Plaintiff asserts that the continuation of illegal activity is clear evidence that the DSBA UNION has failed to Hire, Train, Discipline and Supervise its employees. Plaintiff also asserts that Defendant Tobias Shelley and the DSBA UNION has failed to provide the funds needed to bring body cameras and adequate facility audio and video footage recording and or cameras throughout the facility and thus have

failed to adequately establish customs and policies which will hold the Deputies and Defendants accountable for their actions.

## INJURIES

298. Plaintiff asserts that not only is he suffering from extreme emotional and psychological pain as a result of the unjustifiable slander of his character but that the abusive torment and wrongful verbal defamation of the Plaintiff's reputation has deprived the Plaintiff of social life and has wantonly and unnecessarily created tension between Plaintiff and some of the Plaintiff's prior friends and thus has discorded some friendships. Plaintiff asserts that he has been wrongfully deprived of the ability of being able to socialize with rational people and of social life by being wrongfully isolated in the Special Housing Unit (where he has not been provided with the ability to listen music or watch TV shows, sports and or read about the news, sports or social events that are occurring in regular society). Plaintiff asserts that he is further being deprived of socialization by wrongfully being subjected to further isolation as a result of being housed in the four-man unit where it is only the Plaintiff, Incarcerated individual Nyequest Allen and other incarcerate individual (Bryan Washington) whom is suffering from severe mental health problems.

299. Plaintiff asserts that this type of isolation is what the New York State HALT LAW along with the rights established under Correction Law 137 (6) were put in place to prevent. Plaintiff asserts that the confinement conditions inflicted upon him are "atypical and significant hardship" compare to the living conditions available to other incarcerated individual within the Onondaga County Justice Center and are also considered "atypical and significant hardship" because of the fact that the said condition are what the new law were put in place to stop as a result of realizing of the consequential damages that they have on the minds and emotions of incarcerated individuals whom are wrongfully subjected to such wantonly and unnecessary isolation.

300. Plaintiff asserts that he has lost excessive amount of weight while being wrongfully confined in the Special Housing Unit and has been forced to deal with inhumane living conditions which were cruelly inflicted upon plaintiff in a wantonly and unnecessary malicious manner. Plaintiff asserts that he has wrongfully subjected to wearing sock, T-shirts and boxers which still have the appearance of looking dirty even after the Plaintiff hand washes the clothes himself and has wrongfully been subject to having to wear these said clothes for months at a time. Plaintiff asserts that he was wrongfully confined in a feces infested cell which still smelled like feces even after the Plaintiff had cleaned the cell on numerous of occasions and which still had dried up feces in the crest of the cell's floor, door and corner of the cell's walls. Plaintiff asserts that he was wrongfully subjected to being housed in cells which intentionally blows out extremely cold air and this was while the Plaintiff did not as of yet have a thermal top and bottoms. Plaintiff asserts that he has been denied of the opportunity of getting physical therapy for his right hand as requested and that the medical department knows that the Plaintiff's right hand did not heal properly but refuse to provide and or reached out to any form of outside medical department for further evaluation to be conducted in order to determine if other remedies of cure are available for the Plaintiff's injury.

301. Plaintiff asserts that he has been wrongfully forced to eat food which looked, smelled and were definitely unhygienic and or had been tamper with unknown hazardous substances. Plaintiff

asserts that he has wrongfully been subjected to smaller proportion of food and has even been deprive of the right to get a double proportion and or a high protein/high calorie diet (plaintiff asserts that right now he weighs either way less if not than the same exact amount of weight as he did when he was getting provided with a high protein/high calorie diet, but that the facility refuses to provide a medical diet for the Plaintiff). Plaintiff asserts that he is getting "soft trays" diets (which consist of Styrofoam trays), unjustifiable, even though he does not refused to give back the trays and has to actually constantly remind the deputies to collect the trays. Plaintiff asserts that all of his bones crack every time he does any form of physical activities and that his muscles are fatigued and that he feels week and malnourished.

302.    Plaintiff asserts that he has been written numerous of misbehavior report which fabricate event that further stop the Plaintiff from escaping the cruel and unusual living conditions wrongfully inflicted upon Plaintiff as malicious punishment. Plaintiff thereafter asserts that he has also been fined 25$ dollars on numerous of occasion and thus has been stripped of the opportunity of making commissary purchases which could have been used to buy legal supplies and hygiene products. Plaintiff asserts that he has wrongfully been subject to unnecessary fear for his health and safety as a result of the tortful actions unjustifiably and unreasonably inflicted upon him wrongfully by the same people assigned to supervise and watch him while he is being housed in the local correctional facility. Plaintiff asserts that he has been verbally torment and physically assaulted by the People who are in-charge of providing him protection and that other incarcerated individuals have been wrongfully encouraged to continue with the torment and abuse on the behalf of the defendant.

303.    Plaintiff asserts that he was criminally prosecuted as a result of the perjury testimony provided by the defendants (detrimentally by Casey McPartland) and that one of the said charges is still currently pending within the Onondaga County Court (under Indictment number 2024-0609-1). Plaintiff asserts that a competent person and a fair minded jurist would determine, upon sound reasoning, that defendants actions are a clear indication of retaliatory treatment.

VI.                                  PRAYOR OF RELIEF

304.    Plaintiff is requesting for the compensation of $ Five Million United States Dollars ($5,000,000.00$^c$ U.S. Dollars) as a result of the slander and defamation of his character and as compensation for the punitive damages being wrongfully inflicted and suffered by the Plaintiff. Plaintiff is also requesting for damages for being wrongfully confined in "atypical and significant hardship" conditions unjustifiably. Plaintiff is also requesting to be compensated for the amount of money that he had lost due to the misbehavior ticket fees rendered unjustifiably. Plaintiff is requesting to be compensated for the Psychological pain and emotional distress that was wrongfully suffered by him and which is still being willing suffered by the plaintiff. Plaintiff is requesting to be compensated for the intention infliction of torment and abusive which has constantly caused for the Plaintiff to be in fear for his safety, and which has caused to Plaintiff to believe that the Deputies will reach out to an encourage their Sheriff Police officer friends to wrongfully harass and torment the Plaintiff upon his released from incarceration. Plaintiff assert that he is requesting for compensation the punitive damaged wrongfully inflicted upon him by the defendants wrongfully violating his food on numerous of occasions.

305.    Furthermore, Plaintiff herein assert that he is requesting for an Injunction Order, Pursuant to Rule 65 of the Fed. R. Civ. P., which compels Defendant Yolanda Canty, Nathan Hawker, John S. Drapikowski and Defendant Tobias Shelley (within his "Official" capacity) to uphold the Laws setforth for every other Local Correctional Facility being operated within New York State. Plaintiff asserts that it is Defendant Yolanda Canty's responsibility to make sure that every Correctional facility within New York state meet the criterias and standards setforth by Correction Law 137.

306.    Plaintiff asserts that he is requesting for an Injunction Order, Pursuant to Rule 65 of the Fed. R. Civ. P., which compels Defendant Yolanda Canty to mandate for Tobias Shelley and Nathan Hawker to Immediately remove the Plaintiff from the special housing unit and to be thereafter allow for the Plaintiff to be housed in general population as a result of already being wrongfully confined in the SHU for the last six months straight. Plaintiff asserts he is also requesting for Yolanda Canty to mandate for Tobias Shelley to make frequent tours within Onondaga County Justice Center and to thereafter give the Plaintiff an opportunity to Speak with the Defendant about his mistreatment and of the types of resolutions being requested by the Plaintiff.

307.    Plaintiff asserts that he is requesting for an Injunction Order, Pursuant to Rule 65 of the Fed. R. Civ. P., which compels Defendant Yolanda Canty to mandate for Tobias Shelley and Nathan Hawker to (1) allow for all incarcerated individuals being housed within the Special Housing Unit to be able to use the facility Tablets while in the SHU so that they can listen to music, sports, playing games, watch movies, *do quick and effective legal research and use the phone to be able to call and be connected with their family, friends and loved ones, and in order for incarcerated individuals to be provided with adequate forms of social entertainment which will keep incarcerated individuals from suffering from mental health issues while being confined in the SHU for an excessive amount of time; (2) to be able to order food items from Commissary while in a segregated housing Unit; (3) to be able to wear their own personal shoes, socks and to be able to obtain all of their personal items while in the SHU; (4) Plaintiff is also requesting for Defendant Yolanda Canty to mandate for Tobias Shelley and Nathan Hawker to allow for incarcerated individuals being housed in a "Step Down Unit/RRU Housing Unit" similar to the environment setforth in 2C (along with the incarcerated individuals being house in the General Housing Unit) to be able to use the facility Tablets while in their housing units so that they can listen to music, sports, playing games, watch movies, *do quick and effective legal research and use the phone to be able to call and be connected with their family, friends and loved ones and be provided with adequate forms of social entertainment which will keep incarcerated individuals from suffering from mental health issues while being confined under disciplinary sanction on 2C and within the General Housing Unit for an excessive amount of time,(4) to be able to order food items from Commissary while in a "Step Down Unit/RRU Housing Unit" similar to the environment setforth in 2C (along with the incarcerated individuals being house in the General Housing Unit), and (5) be able to wear their own personal shoes, socks and to be able to obtain all of their personal items while in being confined under disciplinary sanction on 2C and within the General Housing Unit.

308.    Plaintiff asserts that he is requesting that Defendant Tobias Shelley "Show Cause" of why this Court should not render a declaratory judgment, Pursuant to Rule 53 of the Fed. R. Civ. P., that

states that the Onondaga County Justice Center in wrongfully violating the New York State Minimum Standards and regulations as is setforth by 9 NYCRR 7001 et seq. and of the rules and regulations set in stone for incarcerated individuals under Correction Law 137(5) and (6) and which applies to local correctional facilities pursuant to Correction law 500-k. Plaintiff asserts that the standards setforth under the New York State Correction Laws are supported by the Eighth Amendment United States Constitutional rights which provide that incarcerated individuals are still entitled to "Human Decency" and that Cruel and Unusual punishment is prohibited. Plaintiff therefore also asserts that the Eighth Amendment Constitutional rights apply to the state through the Fourteenth Amendment Due Process Clause.

309.    Furthermore, Plaintiff herein assert that he is requesting for an Injunction Order, Pursuant to Rule 65 of the Fed. R. Civ. P., which compels Defendant Tobias Shelley (within his "Official" capacity) to uphold the Laws setforth for every other Local Correctional Facility being operated within New York State. Plaintiff asserts that he is requesting that Defendant Tobias Shelley "Show Cause" of why this Court should not render a declaratory judgment, Pursuant to Rule 53 of the Fed. R. Civ. P., that states that the Onondaga County Justice Center in wrongfully violating the New York State Minimum Standards and regulations as is setforth by 9 NYCRR 7001 et seq. and of the rules and regulations set in stone for incarcerated individuals under Correction Law 137(5) and (6) and which applies to local correctional facilities pursuant to Correction law 500-k. Plaintiff asserts that the standards setforth under the New York State Correction Laws are supported by the Eighth Amendment United States Constitutional rights which provide that incarcerated individuals are still entitled to "Human Decency" and that Cruel and Unusual punishment is prohibited. Plaintiff therefore also asserts that the Eighth Amendment Constitutional rights apply to the state through the Fourteenth Amendment Due Process Clause.

310.    Plaintiff asserts that he is requesting for an Injunction Order, Pursuant to Rule 65 of the Fed. R. Civ. P., which compels Defendant Nathan Hawker to enforce his subordinates to provide incarcerated individuals with adequate clothing(orange sneakers, t-shirts, boxers, socks and etc), free weekly legal materials (**manila envelope** (for legal mailing) along with regular envelope, **Carbon Paper**, <u>**Certified mail return receipt forms**</u> (because incarcerated individual need this to commence with state tort claims and to be able to verify that their mail is adequately being delivered within a reasonable timeframe), more advance law books), and legal assistance (an opportunity to get pro se Assistance for both criminal and civil litigation purpose—right now the facility only acknowledge Pro Se status to incarcerated individuals whom are Pro Se for their pending Criminal Cases which there are detained for only), provide incarcerated individual with pillows (cause Plaintiff is suffering from neck injuries from trying to use in clothes as a blanket), provide incarcerated individuals with the opportunity of exchanging their blankets and sheets on a weekly basis, Provide the incarcerated individuals with tablets while being housed within the Special Housing Unit, remove the Plaintiff and other similar incarcerated individuals from the Special housing Unit who have been in the Said Special Housing Unit beyond the time limitations authorized by correction law 137 (6) and section §706.7 of the N.Y.S. Minimum Standards and Regulations.

311.    Plaintiff assert that he is requesting for the "unknown food service Company" that presently has a contract with the Onondaga County Sheriff's Office and which with the Onondaga County Justice Center, to provide the Plaintiff and the Court with a copy of its "**menu**" of all of the

meals served daily throughout the week and or weeks, and of the calorie intake each meal provide for incarcerated individuals (because the facility keeps wrongfully informing the Plaintiff that there is no menu). Plaintiff is also asking for an Injunction Order to be rendered which thereafter instructs for the "unknown food service company" Defendant to provide the incarcerated individuals with adequate proportions of food so that incarcerated individuals will stop losing weight at such rapid and unhealthy rates. Plaintiff also ask that the facility staff member in charge of serving the food start utilizing cleaner and healthier ways of servicing food and cleaning the messhall trays and utensils that are being used on a daily basis by incarcerated individuals. Plaintiff asserts that the facility just serves two thin slices of bologna and cold "American" cheese slices on Monday, Wednesday, Friday, Saturday and sometimes on Sunday lunch meals every week. However, Plaintiff asserts that the dinner meals that follow the small proportionate lunch meals do not adequately provide adequate calorie intake amounts for incarcerated individuals.

312. Plaintiff asserts that he is requesting for an Injunction Order, Pursuant to Rule 65 of the Fed. R. Civ. P., which compels Defendant Tobias Shelley to commence with criminal prosecution against the Deputies and Defendants who have wrongfully continued to harass the Plaintiff and whom have assaulted the Plaintiff, slander the Plaintiff character and reputation and whom have thereafter also assaulted and battered other incarcerated individuals wrongfully. Plaintiff asserts that he would like to be provided with a copy of any accusatory instrument filed in relation to his request for the commencement of criminal charge to be prosecuted and that this District Court also be provided with the opportunity to inspect such accusatory instrument. Plaintiff asserts that he is asking for this District Court to prosecute the defendants pursuant to 18 U.S.C. §242 for committing criminal acts which are inconsistent with the laws establish within the New York States Penal Law Chapter, and which are a clear violation of the Plaintiff's constitutional rights, if Defendant Tobias Shelley wrongfully fails to commence with criminal charges. Plaintiff asserts that "a special statue defines the power of individual justices to arrest and imprison or release offenders against the laws of the United States. 18 U.S.C.A. §3041. This provision traces back to section 33 of the first Judiciary Act. Act of Sept. 24, 1789, C.20, 1 Stat. 73,91."

313. Plaintiff is asking for Defendant Patrick Russell blood to properly review his change of venue motion and to thereafter adequately bring the adequate relief needed in connection to the facts raised herein. Plaintiff is requesting to be provided with the discovery material which he has been requesting for repeatedly for the last several weeks. Specifically Plaintiff would like to be provided with the opportunity to inspect the video recording obtained in connection to the 3B floor camera surveillance evidence of the interaction capture during when the deputies placed mechanical restraints on the Plaintiff's wrist. Plaintiff is also requesting for this District Court to mandate for Assistant District Attorney Patrick Russell Blood and Tobias Shelley to allow for the Plaintiff to be provided with a colored Photographic copy of what the chairs (which Plaintiff knows are tan colored chairs) look like on 3B housing Unit so that he may use the said evidence to exonerate himself of any wrongdoing.

314. Plaintiff asserts that he is requesting that Defendant Tobias Shelley "Show Cause" of why this Court should not render a declaratory judgment, Pursuant to Rule 53 of the Fed. R. Civ. P., that states that the defendants have violated the Plaintiff's constitutionally protected First Amendment right by using the criminal court system as a vehicle in depriving the Plaintiff of his

guaranteed right of being able to petition to the government for a redress of grievance. Plaintiff assert that he is requesting that Defendant Tobias Shelley "Show Cause" of why this Court should not render a declaratory judgment, Pursuant to Rule 53 of the Fed. R. Civ. P., that states that the defendants have intentionally violated the Plaintiff's constitutionally protected First Amendment right so that the Plaintiff could not complain about the way that the defendants have been mistreating the Plaintiff and that the defendant's subordinates fabricated reports to law enforcement so that they could cover up for the illegal and unconstitutional behavior wrongfully imposed upon the Plaintiff. Plaintiff asserts that he is requesting that Defendant Tobias Shelley "Show Cause" of why this District Court should not render a declaratory judgment, Pursuant to Rule 53 of the Fed. R. Civ. P., that states that the defendants acknowledge their guilt of wrongdoing by not conducting a Formal Disciplinary Hearing within the local Correctional facility about the matters asserted by the Plaintiff to the 911 operator, and that the defendants therefore committed perjury as declared by the Plaintiff.

315.    Furthermore, Plaintiff herein assert that he is requesting for an Injunction Order, Pursuant to Rule 65 of the Fed. R. Civ. P., which compels Defendant Tobias Shelley, Nathan Hawker, Justin Leubner, Defendant Kolakowski, Patrick Russell Blood and defendant Theodore Limpert to remove all of the restriction wrongfully being placed on the Plaintiff Pro Se Status and Pro Se Privileges and to also thereafter provide the Plaintiff with the opportunity of getting internet access so that the Plaintiff could look up criminal and Civil case cites and go to law website which will adequate teach Plaintiff of how to litigate properly in both criminal and case court proceedings; and so that the Plaintiff could adequately prepare for his pending criminal case. Plaintiff asserts, upon information and believe, that internet access is a privilege that other pro se incarcerated individuals have been able to obtain and utilize in preparing for their criminal defense and thus being deprived of such right stands as discriminatory treatment in violation of the Fourteenth Amendment Equal Protection Clause.

316.    Furthermore, Plaintiff herein assert that he is requesting for an Injunction Order, Pursuant to Rule 65 of the Fed. R. Civ. P., which compels Defendant Tobias Shelley to install new adequate and properly function audio and video surveillance cameras all throughout the Onondaga County Justice Center as promised to the Public by Defendant Tobias Shelley and as required to adequately maintain and supervise the Defendant's subordinates working within the local Correctional facility and to uphold a good orderly operating facility. Plaintiff is also requesting that this District court render an injunction order that compels Defendant Tobias Shelley to have the Defendants and deputies whom have a history of using excessive force to wear body cameras whenever they are at work within the Onondaga County Justice Center.

317.    Furthermore, Plaintiff herein assert that he is requesting for an Injunction Order, Pursuant to Rule 65 of the Fed. R. Civ. P., and a Preliminary Injunction Temporarily Restraint (TRO) Order which compels Defendant Tobias Shelley to mandate the defendants and all other subordinates to: (1) restrain from the continuance calculated harassment (malicious cell search, violation of food, verbal slander and verbal abuse, etc.) and mistreatment of the Plaintiff,  (2) restrain from wrongfully battering the Plaintiff in retaliation for the Plaintiff commencing with this 42 U.S.C. §1983, (3) restrain from depriving the Plaintiff of the relief request herein (adequate proportion of food, adequate law library, adequate clothing, adequate living conditions, and adequate health care), (4) restrain from further denying the Plaintiff of his Pro Se Status privileges in retaliation

for the plaintiff commencing with this 42 U.S.C. §1983, (5) restrain from any other and further forms of mistreatment in relation to the facts asserted herein.

VII.                    PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below the Pro Se Plaintiff, Saio Barzee (ICN No. 11001866), certify to the best of
his knowledge, upon information and belief, that (1) the Complaint is not being presented for an
improper purpose (such as harass, cause unnecessary delay, or needlessly increase the cost of
litigation); (2) the Claims are supported by existing law or by a nonfrivolous argument to change
existing law ; (3) the factual contentions have evidentiary support or, if specifically so identified,
will likely have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal Rules of
Civil Procedure 11. Also Plaintiff asserts that he has provided this Court with a copy of the
Grand Jury transcripts (pertaining to Ind. NO. 2024-0609-1), and of the transcripts which
Plaintiff had typed up prior to being provided with a copy of the Grand Jury Transcripts. Also
note that Annexed with the Complaint are numerous pages of Inmate Misbehavior reports,
grievances, Court Orders,  Plaintiff Article 78 motion papers and the Courts decision, and
relevant legal papers (pro se papers signed by Plaintiff and etc.) that are in connection with the
Discriminatory treatment and which show proof of the cruel and unusual punishment wrongfully
inflicted upon Plaintiff.

Plaintiff understands that if he files three or more cases while he is a prisoner that are dismissed
as frivolous, malicious, or for failure to state a claim, that Plaintiff may be denied in forma
pauperis status in future cases.

Plaintiff also understands that prisoners must exhaust administrative procedures before filing a
action in Federal Court about prison conditions, 42 U.S.C. §1997(e)(a), and that his case may be
dismissed if he has not exhausted administrative remedies as required,

Plaintiff agrees to provide the clerk's office with any change to his address. Plaintiff understands
that his failure to keep a current address on file with the clerk's office may result in the dismissal
of his case.

                                   Respectfully submitted,

                                              _Saio Barzee_ (*SB-Z)
                                       Saio Barzee, Pro Se Plaintiff
                                            ICN No. 11001866
                                       Onondaga County Justice Center
                                    Incarcerated Individual Correspondence
                                           555 South State Street
                                         Syracuse, New York 13202-2104

Pursuant to 28 U.S.C. §1746, It is declared under penalty of perjury that the foregoing is true and
correct. Date on which PLAINTIFF is delivering this Complaint to prison authorities for mailing
is:

DATED: _Tuesday, November 5th, 2024_
              SYRACUSE, NEW YORK                        _Saio Barzee_ (*SB-Z)
                                                     Saio Barzee, Pro Se Plaintiff

## DECLARATION OF SERVICE

I, Saia Barzee [ICN No. 1100 1866], declare under penalty of perjury that I mailed my papers (Civil Action Complaint (116 pages in total), plus Supporting Exhibits, entitled and numbered at the bottom of the pages as "E-1" through "E-195") to the Northern District Court inorder to commence with my Civil complaint against Tobias Shelley and his subordinates. I declare pursuant to 28 U.S.C. §1746; 18 U.S.C. §1621 that I mailed the said papers in four different manilla envelopes, which were properly addressed and stamped with ten stamps (so that the postage fees could properly get paid); and that on Tuesday the 5th day of November 2024, I gave the envelopes to the Deputy working the C watch to A watch shift to place in the facility mailbox so that my Civil action Complaint could get mailed to the United States District Court located at 100 South Clinton Street, Syracuse, New York 13202.

Saia Barzee (*SBZ)

*Plaintiff also properly filed for an IFP application and submitted monthly statements, account balances and an authorization form signed. THE IFP papers are annexed with the second half of Plaintiff's civil complaint

Saia Barzee, ICN No. 1100 1866
PRO SE PLAINTIFF
Onondaga County Justice Center
555 South State Street
Syracuse, New York 13202

PLEASE BE ADVISED that each envelope has my right hand thumb print and that I truely and correctly declare under penalty of perjury that this I submitted the mail to be mailed out on the above said date. I will get this paper notarized later on so that I can then send a copy of this paper to the Court as my proof of service.

Form Loc A-3-1